

Feb 3 2006
2:55PM

IN THE CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA

|  |  |  |
|---|---|---|
| STATE OF ALABAMA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV-05-219 |
| | ) | |
| ABBOTT LABORATORIES, INC., et al., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |
| | ) | |

### ANSWER OF DEFENDANTS BOEHRINGER INGELHEIM CORPORATION, BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., AND ROXANE LABORATORIES, INC. (NOW NAMED BOEHRINGER INGELHEIM ROXANE, INC.) TO THE STATE OF ALABAMA'S SECOND AMENDED COMPLAINT

Defendants Boehringer Ingelheim Corporation ("BIC"), Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI"), and Boehringer Ingelheim Roxane, Inc. ("BIRI"), f/k/a Roxane Laboratories, Inc. (together, the "Boehringer Defendants"), answer the numbered paragraphs of Plaintiff's Second Amended Complaint (the "Complaint") as follows:

### INTRODUCTION

1.    The Defendants have engaged in false, misleading, wanton, unfair, and deceptive acts and practices in the pricing and marketing of their prescription drug products.  The Defendants' fraudulent pricing and marketing of their prescription drugs have impacted elderly, disabled, and poor Alabama citizens covered by the State's Medicaid program ("Alabama Medicaid") by causing the Alabama Medicaid Agency to pay grossly excessive prices for the Defendants' prescription drugs.

**ANSWER:    The Boehringer Defendants deny each and every allegation set forth in paragraph 1 of the Complaint insofar as they pertain to them, and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations therein.    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1 pertaining to other Defendants, and therefore deny these allegations.**

2.    Fair and honest drug pricing is a matter of great importance to the State and its citizens.  Expenditures by tbe State and its agencies for prescription drug reimbursement have increased dramatically in the past several years as a result, in part, of Defendants' fraudulent pricing scheme.  Each year Alabama

1

spends hundreds of millions of dollars on prescription drugs under the Alabama Medicaid program. In 2004 alone, Alabama Medicaid spent almost $600 million on prescription drugs. Since 1990, Alabama Medicaid prescription drug expenditures have increased tenfold. This exponential increase in prescription drug costs in recent years has contributed to a health care funding crisis within the State that requires action to ensure fair dealing between the Defendants and the State and its agencies.

**ANSWER:** **The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 2 of the Complaint, except they deny the existence of a fraudulent pricing scheme and that the Boehringer Defendants are or have been involved in such a scheme. The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2 pertaining to other Defendants, and therefore deny these allegations.**

3.     The State is accountable to its citizens and taxpayers for how it spends limited State resources, and it is obligated to pursue any party whose unlawful conduct has led to the overspending of State funds, Consequently, the State, by and through its Attorney General, brings this action to recover amounts overpaid for prescription drugs by Alabama Medicaid, including pharmacy dispensed drugs and co-payments for drugs covered by Medicare, as a result of the fraudulent and wanton conduct of Defendants. The State further seeks to prohibit and permanently enjoin Defendants from continuing to perpetrate their drug-pricing scheme, to require Defendants to publicly disclose true drug prices, and to require Defendants to account for and disgorge all profits obtained by Defendants as a result of their improper and unlawful actions.

**ANSWER:** **The Boehringer Defendants admit that the State of Alabama purports to bring this action by and through its Attorney General, but deny that there is any legal basis on which to permit the State to do so. The Boehringer Defendants further deny that they engaged in any "fraudulent and wanton conduct," deny the existence of any "drug-pricing scheme," deny that they are or have been involved in any such scheme, and deny that they have obtained any profits as a result of any such scheme or alleged improper actions. The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 3 of the Complaint. The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3 pertaining to other Defendants, and therefore deny these allegations.**

4.     This lawsuit seeks legal and equitable redress for the fraudulent and wanton marketing and pricing conduct of Defendants, who have profited from their wrongful acts and practices at the expense of the State,

**ANSWER:** **The Boehringer Defendants admit that the State of Alabama purports to seek legal and equitable redress, but deny there is any legal basis on which to**

2

permit it to do so. The Boehringer Defendants deny that they engaged in any "fraudulent and wanton marketing and pricing conduct," deny that they obtained any profits as a result of such alleged conduct. The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 4. The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4 pertaining to other Defendants, and therefore deny these allegations.

## PARTIES

5.      Plaintiff is the State of Alabama. The State brings this action in its capacity as sovereign and on behalf of the Alabama Medicaid Agency.

**ANSWER:    The Boehringer Defendants admit that the State of Alabama purports to bring this action in its capacity as sovereign and on behalf of the Alabama Medicaid Agency.**

6.      The Attorney General, as chief law officer of the State of Alabama pursuant to Alabama Code § 36-15-12, is statutorily authorized to initiate and maintain this action.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 6 of the Complaint and further respectfully refers the Court to Alabama Code § 36-15-12 for a full and complete reading of its provisions.**

### Defendant Abbott

7.      Defendant Abbott Laboratories, Inc. ("Abbott") is a Delaware corporation with its principal place of business located at 100 Abbott Park Road, Abbott Park, IL 60064. Ross Products is a division of Abbott. Abbott is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Abbott and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 7 of the Complaint.**

### Defendant Alcon

8.      Defendant Alcon Laboratories, Inc. ("Alcon") is a Delaware corporation with its principal place of business located at 6201 S. Freeway (Tl-3), Fort Worth, TX 76134-2099, Alcon is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by

3

state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Alcon and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:** **The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 8 of the Complaint.**

### Defendant Allergan

9.     Defendant Allergan, Inc. ("Allergan") is a Delaware corporation with its principal place of business located at 2525 Dupont Drive, Irvine, CA 92612. Allergan is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Allergan and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:** **The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 9 of the Complaint.**

### The Alpharma Defendants

10.     Defendant Alpharma, Inc, ("Alpharma") is a Delaware corporation with its principal place of business located at One Executive Drive, Fort Lee, NJ 07024-1399.

**ANSWER:** **The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 10 of the Complaint.**

11.     Defendant Purepac Pharmaceutical Co. ("Purepac"), a wholly-owned subsidiary of Alpharma, is a Delaware corporation with its principal place of business located at 14 Commerce Drive, Suite 301, Cranford, NJ 07016.

**ANSWER:** **The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 11 of the Complaint.**

12.     Alpharma and Purepac (collectively, the "Alpharma Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide, Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the Alpharma Defendants and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

K&E 10929997.6

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 12 of the Complaint.**

<u>The Amgen Defendants</u>

13.    Defendant Amgen, Inc. ("Amgen") is a Delaware corporation with its principal place of business located at One Amgen Center Drive, Thousand Oaks, CA 91320-1799.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 13 of the Complaint.**

14.    Defendant Immunex Corporation ("Immunex"), a Washington corporation with its principal place of business located at 51 University Street, Seattle, WA 98101, was acquired by Amgen in 2002.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 14 of the Complaint.**

15.    Amgen and Immunex (collectively, the "Amgen Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the Amgen Defendants and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 15 of the Complaint.**

<u>Defendant Andrx</u>

16.    Defendant Andrx Pharmaceuticals, Inc. ("Andrx Pharm") is a Florida corporation with its principal place of business located a 4955 Orange Drive, Davie, FL 33314. Andrx Pharm is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Andrx Pharm and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 16 of the Complaint.**

5

<u>The AstraZeneca Defendants</u>

17.     Defendant AstraZeneca Pharmaceuticals LP ("AstraZeneca Pharm") is a Delaware limited partnership with its principal place of business located at 1800 Concord Pike, P.O. Box 15437, Wilmington, DE 19850-5437.

**ANSWER:     The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 17 of the Complaint.**

18.     Defendant AstraZeneca LP ("AstraZeneca"), formerly Astra Pharmaceuticals LP, is a Delaware limited partnership with its principal place of business located at 725 Chester brook Boulevard, Wayne, PA 19087.

**ANSWER:     The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 18 of the Complaint.**

19.     AstraZeneca Pharm and AstraZeneca (collectively, the "AstraZeneca Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the AstraZeneca Defendants and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:     The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 19 of the Complaint.**

<u>The Aventis Defendants</u>

20.     Defendant Aventis Pharmaceuticals, Inc. ("Aventis") is a Delaware corporation with its principal place of business located at 300 Somerset Corporate Boulevard, Bridgewater, NJ 08807-2854.

**ANSWER:     The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 20 of the Complaint.**

21.     Defendant Aventis Behring, L.L.C. ("Aventis Behring") is a Delaware limited liability company with its principal place of business located at 1020 First Avenue, King of Prussia, PA 19406-1310.   Aventis Behring was formerly known as Centeon, L.L.C. and currently operates as ZLB Behring.

6

**ANSWER:** The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 21 of the Complaint.

22.     Defendant ZLB Behring, LLC ("ZLB Behring"), formerly known as Aventis Behring, is a Delaware limited liability company and a subsidiary of CSL Limited of Melbourne Australia, with its principal place of business located at 1020 First Avenue, P.O, Box 61501, King of Prussia, P A 19406-0901.

**ANSWER:** The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 22 of the Complaint.

23.     Aventis, Aventis Behring, and ZLB Behring (collectively, the "Aventis Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the Aventis Defendants and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:** The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 23 of the Complaint.

### Defendant Barr

24.     Defendant Barr Laboratories, Inc. ("Ban"), a subsidiary of Barr Pharmaceuticals, Inc., is a Delaware corporation with its principal place of business located at 2 Quaker Road, P.O. Box 2900, Pomona, NY 10970-0519. Barr is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Barr and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:** The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 24 of the Complaint.

### The Baxter Defendants

25.     Defendant Baxter International, Inc. ("Baxter International") is a Delaware corporation with its principal place of business located at One Baxter Parkway, Deerfield, IL 60015-4633.

7

**ANSWER:**   **The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 25 of the Complaint.**

26.    Defendant Baxter Healthcare Corporation ("Baxter Healthcare"), a wholly-owned subsidiary of Baxter International, Inc., is a Delaware corporation with its principal place of business located at One Baxter Parkway, Deerfield, IL 60015.

**ANSWER:**   **The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 26 of the Complaint.**

27.    Baxter International and Baxter Healthcare (collectively, the "Baxter Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide, Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the Baxter Defendants and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:**   **The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 27 of the Complaint.**

The Bayer Defendants

28.    Defendant Bayer Corporation ("Bayer"), formerly Miles, Inc., is an Indiana corporation with its principal place of business located at 100 Bayer Road, Pittsburgh, P A 15205-9707. Bayer Corporation is a wholly-owned United States subsidiary of Bayer AG, a German corporation with its principal place of business located at 51368 Leverkusen, Germany.

**ANSWER:**   **The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 28 of the Complaint.**

29.    Defendant Bayer Pharmaceuticals Corporation ("Bayer Pharm") is a Delaware corporation with its principal place of business located at 400 Morgan Lane, West Haven, CT 06516.

**ANSWER:**   **The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 29 of the Complaint.**

30.    Defendant Bayer Healthcare, LLC ("Bayer Healthcare") is a legally independent company with six divisions operating under the Bayer AG

8

umbrella. Bayer Healthcare is a Delaware limited liability company with its principal place of business located at 511 Benedict Avenue, Tarrytown, NY 10591.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 30 of the Complaint.**

31.    Bayer, Bayer Pharm, and Bayer Healthcare (collectively, the "Bayer Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs and biological products that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals and biological products that are manufactured, distributed, marketed, and/or sold by the Bayer Defendants and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 31 of the Complaint.**

Defendant Biovail

32.    Defendant Biovail Pharmaceuticals, Inc. ("Biovail") is a Delaware corporation with its principal place of business located at 700 Route 202/206, North Bridgewater, NJ 08807.    Biovail is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide, Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Biovail and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 32 of the Complaint.**

The Boehringer Defendants

33.    Defendant Boehringer Ingelheim Corporation ("Boehringer") is a Nevada corporation with its principal place of business located at 900 Ridgebury Road, Ridgefield, CT 06877. Boehringer includes a number of subsidiary companies that manufacture, distribute, market, and/or sell prescription drugs, including, but not limited to, the following:

    a.    Defendant Boehringer Ingelheim Pharmaceuticals, Inc. ("Boehringer Pharm") is a Delaware corporation with its principal place of business located at 900 Ridgebury Road, Ridgefield, CT 06877; and

9

b.    Defendant Roxane Laboratories, Inc. ("Roxane"), a Delaware corporation with its principal place of business located at 1809 Wilson Road, Columbus, OH 43228-9579"

**ANSWER:  The Boehringer Defendants admit that BIRI is a Delaware corporation with its principal place of business located at 1809 Wilson Road, Columbus, OH 43228, that BIC is a Nevada corporation with its principal place of business at 900 Ridgebury Road, Ridgefield, CT 06877, and that BIPI is a Delaware corporation with its principal place of business located at 900 Ridgebury Road, Ridgefield, CT 06877. The Boehringer Defendants further admit that BIC is the sole shareholder of BIPI and BIRI and that BIPI and BIRI have at some relevant times manufactures and/or sold prescription drugs. The Boehringer Defendants deny the remaining allegations in paragraph 33 of the Complaint.**

34.    Boehringer, Boehringer Pharm, and Roxane (collectively "the Boehringer Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the Boehringer Defendants and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:  The Boehringer Defendants admit that at some relevant times BIRI has engaged in the business of manufacturing, distributing, marketing and/or selling prescription drugs, admit that BIRI has, at times, manufactured, distributed, marketed, and/or sold Azathioprine, Butorphanol Tartrate, Dexamethasone, Diclofenac Sodium, Digoxin, Duraclon, Furosemide, Haloperidol, Hydroxyurea, Ipratropium Bromide, Lactulose, Leucovorin Calcium, Lithium Carbonate, Marinol, Megestrol Acetate, Methadone HCl, Methotrexate, Metoclopramide HCl, Mirtazapine, Morphine Sulfate, Naproxen, Oramorph SR, Oxycodone with Acetaminophen, Prednisone, Roxicet, Roxicodone, and Sodium Polystyrene Sulfonate, and admit that at some relevant times Alabama Medicaid reimbursed providers for one or more of the aforementioned drugs. The Boehringer Defendants further admit that BIPI has engaged in the business of manufacturing, distributing, marketing and/or selling prescription drugs, admit that BIPI has, at times, manufactured, distributed, marketed, and/or sold Aggrenox, Alupent, Atrovent, Catapres, Catapres-TTS, Combivent, Flomax, Mexitil, Micardis HCT, Micardis, Mirapex, Mobic, and Viramune, and admit that at some relevant times Alabama Medicaid reimbursed providers for one or more of the aforementioned drugs. The Boehringer Defendants further admit that at times alleged in the Complaint BIC was a holding company, and deny that BIC engaged in the business of manufacturing, distributing, marketing and/or selling prescription drugs. The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 34.**

<u>Defendant Bristol-Myers Squibb</u>

35.    Defendant Bristol-Myers Squibb Company ("Bristol-Myers Squibb"), formerly Bristol-Myers Company, is a Delaware corporation with its principal place of business located at 345 Park Avenue, New York, NY 10154-0037 Bristol-Myers Squibb, which includes a number of divisions and/or subsidiary companies, is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Bristol-Myers Squibb, and/or its subsidiaries and divisions, and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 35 of the Complaint.**

<u>Defendant DEY</u>

36.    Defendant DEY, LP. ("DEY"), formerly DEY Laboratories, is a Delaware limited partnership with its principal place of business located at 2751 Napa Valley Corporate Drive, Napa, CA 94558. DEY is an indirect subsidiary of Merck KGaA, a German pharmaceutical II conglomerate, and is an affiliate of EMD, Inc DEY is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide, Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by DEY and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 36 of the Complaint.**

<u>Defendant Eisai</u>

37.    Defendant Eisai, Inc. ("Eisai"), the U.S. pharmaceutical subsidiary of Tokyo-based Eisai Co., Ltd, is a Delaware corporation with its principal place of business located at 500 Frank W. Burr Boulevard, Teaneck, NJ 07666. Eisai is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Eisai and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 37 of the Complaint.**

K&E 10929997.6

Defendant Endo

38.    Defendant Endo Pharmaceuticals, Inc. ("Endo"), formerly Endo Laboratories, L.L.C., and a subsidiary of End a Pharmaceuticals Holdings, Inc.., is a Delaware corporation with its principal place of business located at 100 Painters Drive, Chadds Ford, P A 19317. Endo is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Endo and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 38 of the Complaint.**

Defendant ETHEX

39.    Defendant ETHEX Corporation ("ETHEX"), a wholly-owned subsidiary of K-V Pharmaceutical Company, is a Missouri corporation with its principal place of business at 10888 Metro Court, St Louis, MO 63043-2413, ETHEX is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide, Pharmaceuticals that are sold by ETHEX and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 39 of the Complaint.**

The Forest Defendants

40.    Defendant Forest Laboratories, Inc, ("Forest") is a Delaware corporation with its principal place of business located at 909 Third Avenue, New York, NY 10022.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 40 of the Complaint.**

41.    Defendant Forest Pharmaceuticals, Inc. ("Forest Pharm"), a wholly-owned subsidiary of Forest, is a Delaware corporation with its principal place of business located at 13600 Shoreline Drive, 81. Louis, MO 63045.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 41 of the Complaint.**

42.    Forest and Forest Pharm (collectively, the "Forest Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, marketing, distributing, and/or selling prescription drugs that are reimbursed by State Medicaid agencies nationwide, Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the Forest Defendants and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 42 of the Complaint.**

### The Fujisawa Defendants

43.    Defendant Fujisawa Healthcare, Inc. ("Fujisawa") is a De]aware corporation and a wholly-owned subsidiary of Fujisawa Pharmaceutical Company, Ltd., of Osaka, Japan. Fujisawa's principal place of business is located at Three Parkway North, Deerfield, IL 60015.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 43 of the Complaint.**

44.    Defendant Fujisawa USA, Inc. ("Fujisawa USA") is or was a Delaware corporation with its principal place of business located at Three Parkway North, Deerfield, IL 60015.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 44 of the Complaint.**

45.    Fujisawa and Fujisawa USA (collectively, the "Fujisawa Defendants") are or were engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide, Pharmaceuticals that are or were manufactured, distributed, marketed, and/or sold by the Fujisawa Defendants and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 45 of the Complaint.**

### Defendant Genzyme

46.    Defendant Genzyme Corporation ("Genzyme"), formerly Genzyme Massachusetts Corporation, is a Massachusetts corporation with its principal place of business located at 500 Kendall Street, Cambridge, MA 02139.

13

Genzyme is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Genzyme and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 46 of the Complaint.**

Defendant Gilead

47.    Defendant Gilead Sciences, Inc,. ("Gilead") is a Delaware corporation with its principal place of business located at 333 Lakeside Drive, Foster City, CA 94404. Gilead is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Gilead and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 47 of the Complaint.**

Defendant GlaxoSmithKline

48.    Defendant    SmithKline    Beecham    Corporation    d/b/a GlaxoSmithKline ("GlaxoSmithKline"), is a Pennsylvania corporation with its principal place of business located at One Franklin Plaza, 200 North 16th Street, Philadelphia, PA 19102. GlaxoSmithKline is engaged in the business of manufacturing, distributing, marketing, and/or and selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by GlaxoSmithKline and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 48 of the Complaint.**

The Hoffmann-LaRoche Defendants

49.    Defendant Hoffmann-LaRoche, Inc. ("Hoffmann-LaRoche") is a New Jersey corporation with its principal place of business located at 340 Kingsland Street, Nutley, NJ 07110-1199. Hoffmann-LaRoche is the U.S. prescription drug unit of the Roche Group.

14

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 49 of the Complaint.**

50.    Defendant Roche Laboratories, Inc. ("Roche Labs") is a Delaware corporation with its principal place of business located at 340 Kingsland Street, Nutley, NJ 07110-1199. Roche Labs is a marketing and sales subsidiary of Hoffman-LaRoche.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 50 of the Complaint.**

51.    Hoffmann-LaRoche and Roche Labs (collectively, the "Hoffmann-LaRoche Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the Hoffmann-LaRoche Defendants and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 51 of the Complaint.**

<u>The IV AX Defendants</u>

52.    Defendant IV AX Corporation ("IV AX") is a Florida corporation with its principal place of business located at 4400 Biscayne Blvd" Miami, FL 33137-3227.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 52 of the Complaint.**

53.    Defendant IV AX Pharmaceuticals, Inc. ("IV AX Pharm"), a wholly-owned subsidiary of IV AX, is a Florida corporation with its principal place of business located at 4400 Biscayne Blvd., Miami, FL 33137.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 53 of the Complaint.**

54.    IVAX and IV AX Pharm (collectively, the "IV AX Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies

15

nationwide, Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the IV AX Defendants and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER: The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 54 of the Complaint.**

The J&J Defendants

55.     Defendant Johnson & Johnson ("J&J") is a New Jersey corporation with its principal place of business located at One Johnson & Johnson Plaza, New Brunswick, NJ 08933, J&J includes a number of subsidiary or affiliate companies including, but not limited to, the following:

a.     Defendant ALZA Corporation ("ALZA"), is a Delaware corporation with its principal place of business located at 1900 Charleston Road, Mountain View, CA 94039, and was acquired by J&J from Defendant Abbott in 2000;

b.     Defendant Janssen Pharmaceutical Products, LP ("Janssen"), a wholly-owned subsidiary of I&J, is a New Jersey limited partnership with its principal place of business located at 1125 Trenton-Harbourton Road, Titusville, NT 08560;

c.     Defendant McNeil-PPC, Inc. ("McNeil"), a wholly-owned subsidiary of J&J, is a New Jersey corporation with its principal place of business located at 7050 Camp Hill Road, Fort Washington, PA 19034. McNeil Consumer & Specialty Pharmaceuticals ("McNeil Cons") is a division of McNeil-PPC, Inc.;

d.     Defendant Ortho Biotech Products, LP ("Ortho Biotech"), a wholly-owned subsidiary of J&J, is a New Jersey limited partnership with its principal place of business located at 430 Rt 22 East, Bridgewater, NT 088070914; and

e.     Defendant Ortho-McNeil Pharmaceutical, Inc. ("Ortho-McNeil"), a wholly-owned subsidiary of J&J, is a Delaware corporation with its principal place of business located at 1000 US. Route 202 South, Raritan, NJ 08869.

**ANSWER: The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 55 of the Complaint.**

56.    J&J, ALZA, Janssen, McNeil, Ortho Biotech, and Ortho-McNeil (collectively "the J&J Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the J&J Defendants and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 56 of the Complaint.**

### The King Defendants

57.    Defendant King Pharmaceuticals, Inc. ("King") is a Tennessee corporation with its principal place of business located at 501 Fifth Street, Bristol, TN 37620.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 57 of the Complaint.**

58.    Defendant Monarch Pharmaceuticals, Inc. ("Monarch"), a wholly-owned subsidiary of King, is a Tennessee corporation with its principal place of business located at 501 Fifth Street, Bristol, TN 37620.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 58 of the Complaint.**

59.    King and Monarch (collectively, the "King Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the King Defendants and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 59 of the Complaint.**

### Defendant MedImmune

60.    Defendant MedImmune, Inc, ("MedImmune") is a Delaware corporation with its principal place of business located at One MedImmune Way, Gaithersburg, MD 20878, MedImmune is engaged in the business of

17

manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by MedImmune and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 60 of the Complaint.**

<u>Defendant Merck</u>

61.    Defendant Merck & Co., Inc. ("Merck") is a New Jersey corporation with its principal place of business located at One Merck Drive, P.O, Box 100, Whitehouse Station, NJ 08889-0100. Merck is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Merck and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 61 of the Complaint.**

<u>The Mylan Defendants</u>

62.    Defendant Mylan Laboratories, Inc. ("My Ian") is a Pennsylvania corporation with its principal place of business located at 1500 Corporate Drive, Suite 400, Canonsburg, PA 15317.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 62 of the Complaint.**

63.    Defendant Mylan Pharmaceuticals, Inc. ("Mylan Pharm"), a wholly-owned subsidiary of Mylan, is a West Virginia corporation with its principal place of business located at 1500 Corporate Drive, Suite 400, Canonsburg, P A 15317.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 63 of the Complaint.**

64.    Defendant UDL Laboratories, Inc. ("UDL"), a wholly-owned subsidiary of Mylan, is an Illinois corporation with its principal place of business located at 1718 Northrock Court, Rockford, IL.

18

**ANSWER:** **The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 64 of the Complaint.**

65.    Mylan, Mylan Pharm, and UDL (collectively, the "Mylan Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the Mylan Defendants and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:** **The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 65 of the Complaint.**

<u>The Novartis Defendants</u>

66.    Defendant Novartis Pharmaceuticals Corporation ("Novartis") is a Delaware corporation with its principal place of business located at One Health Plaza, East Hanover, NJ 07936-1080.

**ANSWER:** **The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 66 of the Complaint.**

67.    Defendant Sandoz, Inc. ("Sandoz"), formerly known as Geneva Pharmaceuticals, Inc., and a member of the Novartis group of companies, is a Delaware corporation with its principal place of business located at 506 Carnegie Center, Suite 400, Princeton, NJ 08540 6243.

**ANSWER:** **The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 67 of the Complaint.**

68.    Novartis and Sandoz (collectively, the "Novartis Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide, Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the Novartis Defendants and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:** **The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 68 of the Complaint.**

19

Defendant Novo Nordisk

69.    Defendant Novo Nordisk Pharmaceuticals, Inc. ("Novo Nordisk") is a Delaware corporation with its principal place of business located at 100 College Road West, Princeton, NJ 08540-7814. Novo Nordisk is the US. health care affiliate of Novo Nordisk A/s' Novo Nordisk is engaged in the business of manufacturing, distributing, marketing, and/or selling pharmaceuticals that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Novo Nordisk and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 69 of the Complaint.**

Defendant Organ on

70.    Defendant Organ on Pharmaceuticals USA, Inc. ("Organ on"), a subsidiary of Akzo Nobel NV, is a Delaware corporation with its principal place of business located at 56 Livingston A venue, Roseland, NJ 07068. Organ on is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Organ on and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 70 of the Complaint.**

Defendant Par

71.    Defendant Par Pharmaceutical, Inc. ("Par") is a New Jersey corporation with its principal place of business located at One Ram Ridge Road, Spring Valley, NY 10977. Par is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide, Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Par and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 71 of the Complaint.**

<u>The Pfizer Defendants</u>

72.    Defendant Pfizer, Inc. ("Pfizer") is a Delaware corporation with its principal place of business located at 235 East 42nd Street, New York, NY 10017. With the merger of Pfizer and Pharmacia Corporation in 2003, Pfizer became the largest drug company in the world today.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 72 of the Complaint.**

73.    Defendant Pharmacia Corporation ("Pharmacia") is a Delaware corporation with its principal place of business located at 235 East 42nd Street, New York, NY 10017-5755.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 73 of the Complaint.**

74.    Defendant Pharmacia & Upjohn Company Corporation ("P&U"), a subsidiary of Pharmacia Corporation, is a Delaware corporation with its principal place of business located at 235 E. 42nd Street, New York, NY 10017-5703.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 74 of the Complaint.**

75.    Defendant G.D. Searle, LLC ("Searle"), a subsidiary of Pharmacia Corporation, is a Delaware limited liability company with its principal place of business located at 4901 Searle Parkway, Skokie, IL 60077-2919.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 75 of the Complaint.**

76.    Defendant Agouron Pharmaceuticals, Inc. ("Agouron") is a California corporation with its principal place of business located at 10777 Science Center Drive, San Diego, CA 92121.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 76 of the Complaint.**

77.    Pfizer, Pharmacia, P & U, Searle and Agouron (collectively, the "Pfizer Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide Pharmaceuticals that are manufactured,

distributed, marketed, and/or sold by the Pfizer Defendants and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:     The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 77 of the Complaint.**

### Defendant Purdue

78.     Defendant Purdue Pharma, LP. ("Purdue") is a Delaware limited partnership with its principal place of business located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901-3431. Purdue is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide" Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Purdue and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:     The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 78 of the Complaint.**

### Defendant Sanofi

79.     Defendant Sanofi-Synthelabo, Inc. ("Sanofi"), the U.S. affiliate of the global pharmaceutical company Sanofi-Aventis, is a Delaware corporation with its principal place of business located at 90 Park A venue, New York, NY 10016. Sanofi is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Sanofi and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:     The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 79 of the Complaint.**

### The Schering Defendants

80.     Defendant Schering-Plough Corporation ("Schering-Plough") is a New Jersey corporation with its principal place of business located at 2000 Galloping Hill Road, Kenilworth, NJ 07033.

**ANSWER:     The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 80 of the Complaint.**

81.    Defendant Warrick Pharmaceuticals Corporation ("Warrick"), a wholly-owned subsidiary of Schering-Plough, is a Delaware corporation with its principal place of business located at 12125 Moya Blvd" Reno, NV 89506-2600.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 81 of the Complaint.**

82.    Schering-Plough and Warrick (collectively, the "Schering Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the Schering Defendants and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 82 of the Complaint.**

### Defendant TAP Pharmaceutical

83.    Defendant TAP Pharmaceutical Products, Inc,. ("TAP"), a joint venture between Abbott Laboratories and Takeda Chemical Industries, Ltd., of Osaka, Japan, is a Delaware corporation with its principal place of business located at 675 North Field Drive, Lake Forest, 1L 60045. TAP is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by TAP and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 83 of the Complaint.**

### Defendant Takeda Pharmaceuticals

84.    Defendant Takeda Pharmaceuticals North America, Inc. ("Takeda Pharm"), a wholly-owned subsidiary of Takeda Pharmaceutical Company Limited, is a Delaware corporation with its principal place of business located at 475 Half Day Road, Suite 500, Lincolnshire, II, 60069. Takeda Pharm is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Takeda Pharm and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

K&E 10929997.6

**ANSWER:** The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 84 of the Complaint.

<u>Defendant Teva</u>

85.    Defendant Teva Pharmaceuticals USA, Inc. ("Teva"), a wholly-owned American subsidiary of Teva Pharmaceutical Industries, Ltd. and formerly Lemmon Pharmaceutical Company, is a Delaware corporation with its principal place of business located at 1090 Harsham Road, P.O. Box 1090, North Wales, PA 19454-1090. Teva is engaged in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by Teva and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:** The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 85 of the Complaint.

<u>The Watson Defendants</u>

86.    Defendant Watson Pharmaceuticals, Inc. ("Watson") is a Nevada corporation with its principal place of business located at 311 Bonnie Circle, Corona, CA 92880.

**ANSWER:**  The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 86 of the Complaint.

87.    Defendant Watson Laboratories, Inc, ("Watson Labs"), a wholly-owned subsidiary of Watson, is a Nevada corporation with its principal place of business located at 311 Bonnie Circle, Corona, CA 92880.

**ANSWER:** The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 87 of the Complaint.

88.    Defendant Watson Pharma, Inc. ("Watson Pharma"), a wholly-owned subsidiary of Watson since 2000, is a Delaware corporation with its principal place of business located at 311 Bonnie Circle, Corona, CA 92880.

**ANSWER:** The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 88 of the Complaint.

89.    Watson, Watson Labs, and Watson Pharma (collectively, the "Watson Defendants") are diversified healthcare companies that individually,

24

and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide, Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the Watson Defendants and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:  The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 89 of the Complaint.**

### The Wyeth Defendants

90.    Defendant Wyeth, Inc, ("Wyeth"), formerly American Home Products Corp", is a Delaware corporation with its principal place of business located at Five Giralda Farms, Madison, NT 07940.

**ANSWER:  The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 90 of the Complaint.**

91.    Defendant Wyeth Pharmaceuticals, Inc. ("Wyeth Pharm"), a division of Wyeth, is a Delaware corporation with its principal place of business located at 500 Arcola Road, Collegeville, P A 19426.

**ANSWER:  The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 91 of the Complaint.**

92.    Wyeth and Wyeth Pharm (collectively, the "Wyeth Defendants") are diversified healthcare companies that individually, and/or in combination with one another, engage in the business of manufacturing, distributing, marketing, and/or selling prescription drugs that are reimbursed by state Medicaid agencies nationwide. Pharmaceuticals that are manufactured, distributed, marketed, and/or sold by the Wyeth Defendants and reimbursed by Alabama Medicaid for which a claim is made in this litigation are identified in Exhibit A, attached.

**ANSWER:  The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 92 of the Complaint.**

### Fictitious Defendants

93.    Fictitious Defendants 1 through 200, whose true names are presently unknown, are manufacturers, distributors, marketers, and/or sellers of prescription drugs who reported or caused to be reported false and inflated pricing information to industry publishers upon which information the Alabama Medicaid

Agency relied in reimbursing providers for the dispensing of such drugs, and whose true names will be added upon discovery.

**ANSWER:     The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 93 of the Complaint.**

94.     Upon information and belief; the drugs identified for each Defendant are involved in the fraudulent or wanton pricing scheme outlined in this complaint. In addition to those drugs, there may be other drugs which are or have been manufactured, distributed, marketed, and/or sold by Defendants and which are subject to the fraudulent pricing scheme, but the names of those drugs are unavailable to Alabama Medicaid at the present time. For example, some of the Defendants manufacture, distribute, market, and/or sell multiple source brand name and generic drugs not listed in Exhibit A which are also manufactured by other companies. Alabama Medicaid is unable to determine without additional investigation and information which Defendants sold these multiple source brand name drugs and/or generic drugs as part of the scheme (and, if so, to what extent) for which Alabama Medicaid paid reimbursement to the provider. Likewise, Alabama Medicaid is unable to determine without additional information which Defendants sold physician-dispensed (Medicare Part B) drugs as part of the scheme for which Alabama Medicaid paid reimbursement to the provider. The State intends for this complaint to cover all drugs manufactured, distributed, marketed, and/or sold by Defendants (including Fictitious Defendants 1-200) which are subject to the fraudulent or wanton pricing scheme described herein, even though the names of some of those drugs are not identified because the information is not currently available to the State.

**ANSWER:     The Boehringer Defendants deny each and every allegation set forth in paragraph 94 of the Complaint insofar as they relate to them, and are otherwise without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth therein. The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 94 pertaining to other Defendants, and therefore deny these allegations.**

## JURISDICTION AND VENUE

95.     This Court has jurisdiction over the State's claims as they involve claims arising exclusively under Alabama law.

**ANSWER:     The Boehringer Defendants admit this Court has jurisdiction over claims arising exclusively under Alabama law, and deny the remaining allegations in paragraph 95.**

96.     This Court has personal jurisdiction over each Defendant either because the Defendant resides in Alabama, does business in Alabama,

purposefully directs or directed its actions toward Alabama, and/or has the requisite minimum contacts with Alabama necessary to constitutionally permit the Court to exercise jurisdiction.

**ANSWER: BIRI and BIPI admit this Court may properly exercise personal jurisdiction over them. BIC denies this Court may properly exercise personal jurisdiction over it. The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 96 pertaining to other Defendants, and therefore deny these allegations.**

97.    Venue is proper in Montgomery County, Alabama pursuant to Alabama Code § 6 3-7, because the State pays reimbursement through Alabama Medicaid for prescription drugs dispensed in this County and throughout the State. The events giving rise to the claims herein arose, in substantial part, in this County, the State's principal office and operations are located in this County, and the State regularly and systematically conducts business in this County.

**ANSWER: The Boehringer Defendants admit the allegations set forth in paragraph 97 of the Complaint insofar as they relate to them. The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 97 pertaining to other Defendants, and therefore deny these allegations.**

## FACTUAL BACKGROUND

### The Alabama Medicaid Program

98.    The Alabama Medicaid program is a state-administered program with federal matching funds which pays for medical care, including prescription drug benefits, for Alabama's low-income and disabled citizens. Alabama Medicaid currently covers approximately 900,000 individuals. Prescription drug benefits represent over 15% of Alabama Medicaid's annual budget Since 1990, the total annual cost of pharmacy-dispensed prescription drugs to Alabama Medicaid has increased tenfold, from total annual costs of approximately $60 million in 1990 to approximately $600 million in 2004.

**ANSWER: The Boehringer Defendants admit that the Alabama Medicaid program is a state-administered program with federal matching funds which pays for medical care, including prescription drug benefits, for Alabama's low-income and disabled citizens. The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 98 of the Complaint, and therefore, deny those allegations.**

99.    Alabama Medicaid reimburses medical providers, including physicians and pharmacists, for drugs prescribed for, and dispensed to, Alabama Medicaid recipients pursuant to statutory and administrative formulas. Alabama Medicaid also pays up to the 20% co-payment for physician administered

27

prescription drugs for Alabama Medicare beneficiaries who are qualified to receive Medicaid benefits.

**ANSWER:    The Boehringer Defendants admit the allegations in paragraph 99 of the Complaint and refer the Court to the relevant statutes and regulations for a complete and accurate description of the program.**

100.    Reimbursement for pharmacy-dispensed prescription drugs under the Alabama Medicaid program is based on information supplied by Defendants to industry reporting services. This information includes the following price indices: (i) Average Wholesale Price ("AWP"), which is commonly understood as the average price charged by wholesalers to retailers, such as hospitals, doctors and pharmacies, for prescription drugs, (ii) Wholesale Acquisition Cost ("WAC"), which is commonly understood as the average price paid by wholesalers to the manufacturers for prescription drugs, and (iii) on occasion (but prior to 2003), Direct Price, which is commonly understood as the price charged by drug manufacturers to non-wholesaler customers for prescription drugs. At all times relevant to this action, Defendants were aware of Alabama Medicaid's drug reimbursement formulas and procedures for pharmacy-dispensed drugs.

**ANSWER:    The Boehringer Defendants admit that, at various times, BIRI and BIPI provided third party publications with information for certain of their products including AWP and/or WAC. The Boehringer Defendants deny that BIC provided third party publications with AWP, WAC, and/or Direct Price information for any pharmaceutical products, deny that AWP, WAC, and Direct Price have the meanings alleged in paragraph 100, and deny each and every remaining allegation set forth in paragraph 100 of the Complaint insofar as they relate to the Boehringer Defendants. The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 100 pertaining to other Defendants, and therefore deny these allegations.**

101.    Medicare is a health insurance program created by the federal government for the elderly, disabled, and other eligible persons, Individuals become eligible for Medicare health insurance benefits when they turn 65 years of age or earlier if they are certified as disabled. There are two major components of tile Medicare Program, Part A and Part B. Medicare Part B is an optional program that provides coverage for some healthcare services for Alabama's participating elderly, disabled and other eligible citizens not covered by Part A. Medicare Part B pays for a portion of the cost of prescription drugs, generally those drugs which are administered by a physician provider or used with certain medical equipment.

**ANSWER:    The Boehringer Defendants admit the allegations in paragraph 101 of the Complaint and refer the Court to the relevant statutes and regulations for a complete and accurate description of the program.**

28

102. For prescription drugs covered by Part B, Medicare pays eighty percent (80%) of the allowable amount under federal regulations. (Until recently, the allowable amount was 95% of the national AWP for the drug.) The remaining 20% is paid by the Medicare beneficiary as a co-payment. For Alabama Medicare beneficiaries who are also qualified to receive Medicaid benefits, Alabama Medicaid pays the 20% co-payment up to the amount Alabama Medicaid would have paid if it were the only payor. At all relevant times to this action, Defendants were aware of the Alabama Medicaid's drug reimbursement formulas and procedures for Medicare Part B drugs.

**ANSWER:    The Boehringer Defendants admit that Medicare pays eighty percents (80%) of the allowable amount under federal regulations, and that for Alabama Medicaid beneficiaries the State pays the 20% co-payment up to the amount Alabama Medicaid would have paid if it were the only payor. The Boehringer Defendants refer the Court to the relevant statutes and regulations for a complete and accurate description of the Medicare program. The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 102 pertaining to other Defendants, and therefore deny these allegations. The Boehringer Defendants deny the remaining allegations of paragraph 102 of the Complaint.**

### The Defendants' Reporting of Inflated Pricing Information

103. Defendants knowingly, willfully, wantonly, and/or intentionally provided or caused to be provided false and inflated AWP, WAC, and/or Direct Price information for their drugs to various nationally known drug industry reporting services, including First DataBank (a/k/a Blue Book), Medical Economics, Inc, (a/k/a Red Book), and Medispan. These reporting services published the pricing information to various reimbursers, such as Alabama Medicaid, who have contracted to receive the information (either in electronic or hard copy form) as a basis to provide reimbursement to the medical or pharmacy providers who provide the drugs to patients.

**ANSWER:    The Boehringer Defendants deny each and every allegation set forth in paragraph 103 of the Complaint insofar as they relate to them, and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations therein.    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 103 pertaining to other Defendants, and therefore deny these allegations.**

104. Alabama Medicaid purchased and utilized the Defendants' published AWP, WAC, and Direct Price information from First DataBank (Blue Book), and Medical Economics, Inc. (Red Book). The information from Blue Book was and is used by Alabama Medicaid with respect to reimbursement for pharmacy-dispensed drugs. As a general matter, the information from Red Book was and is used with respect to reimbursement for Medicare Part B drug co-payments. At all relevant times to this action, Alabama Medicaid relied upon the

AWP, WAC, and/or Direct Price provided by Defendants to the industry reporting services in determining the amount Alabama Medicaid reimburses providers.

**ANSWER:   The Boehringer Defendants deny each and every allegation set forth in paragraph 104 of the Complaint insofar as they relate to them, and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations therein.   The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 104 pertaining to other Defendants, and therefore deny these allegations.**

105.   Defendants knew that the false and deceptive inflation of AWP, WAC, and/or Direct Price for their drugs would cause Alabama Medicaid to pay excessive amounts for these drugs. Defendants' inflated AWPs, WACs, and Direct Prices greatly exceeded the actual prices at which they sold their drugs to retailers (physicians, hospitals, and pharmacies) and wholesalers. Defendants' reported AWPs, WACs, and/or Direct Prices were false and misleading and bore no relation to any price, much less a wholesale or actual sales price.

**ANSWER:   The Boehringer Defendants deny each and every allegation set forth in paragraph 105 of the Complaint insofar as they relate to them.  The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 105 pertaining to other Defendants, and therefore deny these allegations.**

106.   Defendants knowingly, willfully, wantonly, and/or intentionally concealed the true AWP, WAC, and/or Direct Price information for their respective damages from Alabama Medicaid. Each Defendant knows its own AWP, WAC, and Direct Price which it reports to the industry reporting services for use by Medicare and the state Medicaid agencies. Each Defendant also knows whether the prices it reports to the reporting services accurately and truthfully represent the actual prices as reflected by market experience and conditions. Unless governmental or industry surveys, lawsuits, or criminal or regulatory investigations publicly reveal the true AWP, WAC, or Direct Price for a particular drug at issue, Alabama Medicaid, like other state Medicaid agencies, is not privy to the actual market prices which it can then compare against the reported prices. Defendants have concealed true market pricing information from the State for the purpose of avoiding detection of the fraudulent scheme described herein.

**ANSWER:   The Boehringer Defendants admit that BIRI and BIPI know the AWP, WAC and/or Direct Price, as BIRI and BIPI understand those terms, for their products.  The Boehringer Defendants deny the remaining allegations set forth in paragraph 106 of the Complaint insofar as they relate to them, and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations therein.   The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 106 pertaining to other Defendants, and therefore deny these allegations.**

107.    Defendants used undisclosed discounts, rebates and other inducements which had the effect of lowering the actual wholesale or sales prices charged to their customers as compared to the reported prices. In addition, Defendants employed secret agreements to conceal the lowest prices charged for their pharmaceutical products. As a result of these concealed inducements, Defendants have prevented third parties, including Alabama Medicaid, from determining the true prices it charges its customers.

**ANSWER:    The Boehringer Defendants deny each and every allegation set forth in paragraph 107 of the Complaint insofar as they relate to them, and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations therein.    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 107 pertaining to other Defendants, and therefore deny these allegations.**

### Defendants' Marketing of the "Spread"

108.    Defendants refer to the difference between the reported AWP and WAC, on the one hand, and the actual price of a drug, on the other, as the "spread" or, alternatively, "return to practice" or "return on investment." Defendants knowingly and intentionally created a "spread" on their drugs and used the "spread" to increase their sales and market share of these drugs, thereby increasing their profits. Defendants induced physicians, pharmacies, and pharmacy chain stores to purchase their drugs, rather than competitors' drugs, by persuading them that the larger "spread" on Defendants' drugs would allow the physicians and pharmacies to receive more money, and make more of a profit, through reimbursement at the expense of Alabama Medicaid.

**ANSWER:    The Boehringer Defendants deny each and every allegation set forth in paragraph 108 of the Complaint insofar as they relate to them.    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 108 pertaining to other Defendants, and therefore deny these allegations.**

109.    Defendants manipulated and controlled the size of the "spread" on their drugs by both increasing their reported AWPs, WACs, and Direct Prices and decreasing their actual prices to wholesalers and providers over time.

**ANSWER:    The Boehringer Defendants deny each and every allegation set forth in paragraph 109 of the Complaint insofar as they relate to them.    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 109 pertaining to other Defendants, and therefore deny these allegations.**

110.    In addition to manipulating the reported AWP, WAC, and/or Direct Price, Defendants used free goods, educational grants and other incentives to induce providers to purchase their drugs, all of which lowered the actual prices

31

of the Defendants' drugs, resulting in increased profits for providers, as well as increased market share and profits of the Defendants, at the expense of Alabama Medicaid.

**ANSWER:    The Boehringer Defendants deny each and every allegation set forth in paragraph 110 of the Complaint insofar as they relate to them.  The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 110 pertaining to other Defendants, and therefore deny these allegations.**

111.    The unfair, fraudulent, wanton, and deceptive practices engaged in by the Defendants in creating and reporting, or causing to be reported, false and inflated AWP, WAC, and/or Direct Price information for their drugs, or otherwise concealing actual pricing information, and marketing the "spread" on their drugs as an inducement to providers to utilize Defendants' drugs, has resulted in the State paying millions of dollars in excess Medicaid payments, while at the same time enriching Defendants with excessive, unjust and illegal profits.

**ANSWER:    The Boehringer Defendants deny each and every allegation set forth in paragraph 111 of the Complaint insofar as they relate to them, and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations therein.    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 111 pertaining to other Defendants, and therefore deny these allegations.**

### Other Lawsuits, Settlements, Government Investigations and Criminal Proceedings

112.    The State's complaint was not drafted in a vacuum. Each family of Defendants in this case has been sued for the same or similar Medicaid drug pricing fraud scheme in one or more of at least twenty-one other states.[1]  A number of the Defendants have also been sued for related conduct in one or more of numerous pending federal actions.[2]

**ANSWER:    The Boehringer Defendants admit that other plaintiffs have filed lawsuits against one or more of the Boehringer Defendants in state and federal action, making similar allegations, but deny each and every remaining allegation set forth in paragraph 112 of the Complaint insofar as they relate to the Boehringer Defendants.    The Boehringer Defendants are without knowledge or information**

---

[1]Lawsuits have been filed in the States of Arizona, Arkansas. California, Connecticut, Florida, Illinois, Kentucky, Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nevada., New Jersey, New York, North Carolina, Ohio, Pennsylvania, Texas, West Virginia, and Wisconsin, the City of New York, and multiple New York counties.

[2]Most of the lawsuits that assert claims for violations of federal law have been consolidated for pretrial purposes in multi-district federal litigation in Boston, Massachusetts. However, no federal claims are being asserted in this case,

**sufficient to form a belief as to the truth of the remaining allegations in paragraph 112, and therefore deny these allegations.**

113.    Published opinions and other public record documents generated during the course of the parallel state and federal litigation reveal that these Defendants reported fraudulent AWPs or other pricing information for selected drugs that bore no relationship whatsoever to the price at which those drugs were actually being sold to pharmacies and providers.  For example, a majority of the Defendants named herein have been made the subject of an action in New York alleging a fraudulent AWP pricing scheme.[3]  In that suit, New York City (which pays 25% of Medicaid costs for its residents) sets forth for each of the manufacturers and drugs at issue the inflated AWP reported to industry reporting services by the Defendants and the estimated true AWP which should have been reported. Depending on the drug in question, New York City alleges that, in some instances, the reported price is over 8 times the true price. New York City's reimbursement methodology, similar to Alabama Medicaid's, is based upon AWP reported by the manufacturers to the same reporting services upon which Alabama Medicaid relies. Because the reported AWP's and, correspondingly, the true AWP's are national (not regional) in scope, New York City's experience likely parallels Alabama's and lends obvious support to the State's allegations herein. The other state lawsuits, dealing with many of the same defendants and drugs at issue in Alabama, also lend corroborative support.

**ANSWER:    The Boehringer Defendants admit that BIC, BIPI and BIRI are named in *The City of New York v. Abbott Laboratories, Inc.*, 04-CV-06054, in the United States District Court for the District of Massachusetts (August 4, 2004) in which the pleadings on file in that action speak for themselves as to form and content, but deny each and every remaining allegation set forth in paragraph 113 of the Complaint insofar as they relate to the Boehringer Defendants. The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 113, and therefore deny these allegations.**

114.    Federal criminal actions have been instituted against various of the named Defendants.[4]  As part of those criminal proceedings, a number of the drug companies named in this lawsuit pled guilty to and/or agreed to settle criminal charges of having engaged in unlawful marketing and sales practices with respect to certain of their prescription drugs reimbursed under federal programs, such as

---

[3] *The City of New York v. Abbott Laboratories, Inc.*, 04-CV-06054, in the United States District Court for the Southern District of New York (August 4, 2004).

[4] The criminal actions include: *USA v. TAP Pharmaceutical Products, Inc.*, 1:01-cr-10354-WGY (d.Mass); *USA v. AstraZeneca Pharmaceuticals, L.P.*, 1:03-cr-00055 (D. Del.); and *USA v. Bayer Corp.*, 1:03-cr-10118-RGS (D. Mass).

Medicare, and state programs, such as Medicaid. These Defendants paid record fines and civil penalties for this admittedly wrongful conduct.

**ANSWER:**    Paragraph 114 of the Complaint contains no allegations as to, or relevant to, any claims against the Boehringer Defendants and therefore requires no answer. To the extent Plaintiff purports to make allegations as to the Boehringer Defendants, they deny each and every allegation set forth in paragraph 114 of the Complaint insofar as they relate to them. The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 114 pertaining to other Defendants, and therefore deny these allegations.

115.    The guilty pleas, settlements, and admissions of fault by the criminal defendants implicate some of the Defendants herein in what is becoming to be known as a far-reaching and widespread scheme in the pharmaceutical industry to unlawfully increase market share and profits for their products. For example, in early 2001, Bayer agreed to settle the federal criminal investigation into Bayer's marketing and sales practices with respect to KOaTE® and Kogenate®, and Bayer paid $14 million to the federal and state governments. The Government had alleged that Bayer set and reported AWPs for the drugs at levels far higher than the actual acquisition costs of the products. Then, in 2003, Bayer agreed to plead guilty to federal criminal charges and paid fines and civil penalties totaling over $257 million for, among other things, illegally relabeling its drugs Cipro® and Adalat CC® in order to circumvent the Medicaid Rebate Program, thus defrauding the state Medicaid programs of millions of dollars in rebate payments.

**ANSWER:**    Paragraph 115 of the Complaint contains no allegations as to, or relevant to, any claims against the Boehringer Defendants and therefore requires no answer. To the extent Plaintiff purports to make allegations as to the Boehringer Defendants, they deny each and every allegation set forth in paragraph 115 of the Complaint insofar as they relate to them. The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 115 pertaining to other Defendants, and therefore deny these allegations.

116.    In October 2001, Defendant TAP, in order to resolve federal criminal charges, agreed to plead guilty to federal criminal and civil fraud charges for, among other things, conspiring to violate the Prescription Drug Marketing Act ("PDMA") by providing free samples of Lupron® to medical providers "knowing and expecting" that these medical providers would charge patients for such free samples. TAP agreed to pay over $875 million in fines and civil penalties to the federal government and the fifty (50) states.

**ANSWER:**    Paragraph 116 of the Complaint contains no allegations as to, or relevant to, any claims against the Boehringer Defendants and therefore requires no answer. To the extent Plaintiff purports to make allegations as to the Boehringer

34

Defendants, they deny each and every allegation set forth in paragraph 116 of the Complaint insofar as they relate to them. The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 116 pertaining to other Defendants, and therefore deny these allegations.

117.    In June 2003, certain of the AstraZeneca Defendants agreed to plead guilty to criminal charges similar to those brought against TAP, In particular, the AstraZeneca Defendants pled guilty to federal criminal and civil fraud charges for, among other things, conspiring to violate the PDMA by providing free samples of Zoladex® to medical providers "knowing and expecting" that those medical providers would charge patients for such free samples and illegally bill those free samples to state Medicaid programs. The AstraZeneca Defendants were also charged with knowingly and willfully offering and paying illegal remuneration to physicians by marketing a "Return-to-Practice" program to induce orders to purchase Zoladex. The Return-to-Practice program consisted of inflating the AWP used by Medicaid for reimbursement of the drug, deeply discounting the price paid by physicians for the drug, and marketing the spread between the AWP and the discounted price to physicians. The AWP was set at levels far higher than the majority of its physician customers actually paid for the drug. In resolution of these charges, the AstraZeneca Defendants paid almost $355 million in damages and fines to the federal and state governments.

**ANSWER:** Paragraph 117 of the Complaint contains no allegations as to, or relevant to, any claims against the Boehringer Defendants and therefore requires no answer. To the extent Plaintiff purports to make allegations as to the Boehringer Defendants, they deny each and every allegation set forth in paragraph 117 of the Complaint insofar as they relate to them. The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 117 pertaining to other Defendants, and therefore deny these allegations.

118.    In April 2003, GlaxoSmithKline PLC agreed to resolve a federal criminal investigation and to pay fines and civil penalties to the federal and state governments totaling more than $87 million to resolve claims against the GSK Defendants similar to those made against the Bayer Defendants.

**ANSWER:** Paragraph 118 of the Complaint contains no allegations as to, or relevant to, any claims against the Boehringer Defendants and therefore requires no answer. To the extent Plaintiff purports to make allegations as to the Boehringer Defendants, they deny each and every allegation set forth in paragraph 118 of the Complaint insofar as they relate to them. The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 118 pertaining to other Defendants, and therefore deny these allegations.

119.    In October 2002, Pfizer agreed to resolve a federal criminal investigation into its marketing and sales practices. Pfizer admitted providing unrestricted "educational grants" to customers designed to hide the true best price of Lipitor®. While this case does not involve any "best price" claims, the wrongdoing admitted by Pfizer that led to liability under federal law also provides evidence of liability under state law - i.e., evidence of Pfizer's participation in the unfair and deceptive scheme in this case, including, but not limited to, evidence that Pfizer provided improper incentives and inducements to encourage sales of its products at inflated prices.

**ANSWER:    Paragraph 119 of the Complaint contains no allegations as to, or relevant to, any claims against the Boehringer Defendants and therefore requires no answer. To the extent Plaintiff purports to make allegations as to the Boehringer Defendants, they deny each and every allegation set forth in paragraph 119 of the Complaint insofar as they relate to them. The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 119 pertaining to other Defendants, and therefore deny these allegations.**

120.    In 2004, Schering-Plough Corporation agreed to settle criminal and civil charges relating to the best price reporting of Claritin®. The Schering Plough Defendants paid $293 million to the federal and state governments to resolve its civil and administrative liabilities.

**ANSWER:    Paragraph 120 of the Complaint contains no allegations as to, or relevant to, any claims against the Boehringer Defendants and therefore requires no answer. To the extent Plaintiff purports to make allegations as to the Boehringer Defendants, they deny each and every allegation set forth in paragraph 120 of the Complaint insofar as they relate to them. The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 120 pertaining to other Defendants, and therefore deny these allegations.**

121.    While a portion of the federal settlement proceeds from the above-described cases has been returned to the states, including Alabama, the State has not been compensated fully for its losses from the wrongful conduct that these guilty pleas or civil settlements evidence.[5]

**ANSWER:    Paragraph 121 of the Complaint contains no allegations as to, or relevant to, any claims against the Boehringer Defendants and therefore requires no answer. To the extent Plaintiff purports to make allegations as to the Boehringer Defendants, they deny each and every allegation set forth in paragraph 121 of the Complaint insofar as they relate to them. The Boehringer Defendants are without**

---

[5]None of the settlements described herein operate as a bar to any of the claims made in this complaint.

**knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 121 pertaining to other Defendants, and therefore deny these allegations.**

122.    Government investigations by Congress, the General Accounting Office ("GAO"), Health and Human Services, and the Department of Justice ("DOJ") have also revealed fraudulent drug pricing schemes by various Defendants. For example, according to Representative Pete Stark of the U.S. House Ways and Means Committee, Abbott has engaged in a price manipulation scheme through inflated representations regarding AWP and direct prices. Representative Stark has stated that: "Abbott has intentionally reported inflated prices and has engaged in other improper business practices in order to cause its customers to receive windfall profits from . . . Medicaid . . . for the express purpose of expanding sales and increasing market share . . . This was achieved by arranging financial benefits or inducements that influenced the decisions of health care providers submitting . . . Medicaid claims." The US. Department of Justice has documented at least 81 instances in which Abbott's reported AWPs were substantially higher than the actual wholesale prices paid by wholesalers. Indeed, the federal government's investigation revealed that Abbott created spreads of more than 20,000 percent through the reporting of false and misleading average wholesale prices.

**ANSWER:    Paragraph 122 of the Complaint contains no allegations as to, or relevant to, any claims against the Boehringer Defendants and therefore requires no answer.  To the extent Plaintiff purports to make allegations as to the Boehringer Defendants, they deny each and every allegation set forth in paragraph 122 of the Complaint insofar as they relate to them.  The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 122 pertaining to other Defendants, and therefore deny these allegations.**

123.    Generic or multi-source drug manufacturers are aware of the AWPs reported by their competitors and of the actual sales price of their generic competitors' products. Generic drug manufacturers manipulate their own AWPs in order to gain or maintain a competitive advantage in the market for their generic products. The natural and expected result is that multi source drugs have some of the highest spreads of any drugs, sometimes resulting in an AWP exceeding actual costs by over 50,000%. A few examples collected by the DOJ are set forth below:

| Defendant | Multi-source Drug | RedBook AWP | DOJ Determined Actual AWP | Percentage Spread |
|---|---|---|---|---|
| Baxter* | Dextrose | $ 928.51 | $ 2.25 | 41,167% |
| Baxter* | Sodium Chyloride | $ 928.51 | $ 1.71 | 54,199% |
| Boehringer* | Leucovorin Calcium | $ 184.40 | $ 2.76 | 6,581% |
| B. Braun | Sodium Chloride | $ 11.33 | $ 1.49 | 660% |
| Bristol-Myers Group* | Etoposide (Vepesid) | $ 136.49 | $ 34.30 | 298% |

| Dey* | Albuterol Sulfate | $ | 30.25 | $ | 9.17 | 230% |
|---|---|---|---|---|---|---|
| Immunex* | Leucovorin Calcium | $ | 137.94 | $ | 14.58 | 846% |
| Pharmacia* | Etoposide | $ | 157.65 | $ | 9.47 | 1,565% |
| Sicor Group | Tobramycin Sulfate | $ | 342.19 | $ | 6.98 | 4,802% |
| Watson | Vanconycin HCL | $ | 70.00 | $ | 3.84 | 1,567% |

*Defendants herein.

**ANSWER:** **BIRI and BIPI admit that, at certain times and for certain products, they have been aware of the published AWP for certain competitors' products. The Boehringer Defendants deny that they fraudulently inflated AWPs or spreads on their prescription drug products and that the DOJ documented fraudulently inflated AWPs or spreads. After reasonable investigation, the Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 123 pertaining to calculations made by the DOJ. The Boehringer Defendants deny the remaining allegations set forth in paragraph 123 of the Complaint insofar as they relate to them, and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations therein. The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 123 pertaining to other Defendants, and therefore deny these allegations.**

124.    Some of the conduct described herein goes back over 10 years prior to the filing of the original complaint in this action. As explained above, however, the nature and extent of the fraudulent scheme were not known to the State because information concerning the true prices which should have been reported to the reporting services was concealed and not publicly available. It has only been through recent regulatory investigations, criminal actions, and civil actions that the impact of the fraudulent scheme on the State has been indicated or revealed. Even today, the true market prices for many of the drugs in question for the entire time period at issue are not known by the State.

**ANSWER:** **The Boehringer Defendants deny each and every allegation set forth in paragraph 124 of the Complaint insofar as they relate to them, and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations therein. The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 124 pertaining to other Defendants, and therefore deny these allegations.**

125.    Additionally, it would be impractical, if not impossible, to list in this Complaint, for the entire time period that the inflated pricing scheme has been in effect, the true market price as compared to the reported price for each drug in question. It is not unusual for a drug manufacturer to report fluctuating prices for a particular drug on multiple occasions within a particular year, month, week, or even day. To display pricing reports for all of the Defendants and all of the drugs in question over a ten-year-plus period would be a massive undertaking, and

limitations of time and space do not permit that information, even if it were available, to be set forth in this pleading.

**ANSWER:    The Boehringer Defendants deny each and every allegation set forth in paragraph 125 of the Complaint insofar as they relate to them, and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations therein.    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 125 pertaining to other Defendants, and therefore deny these allegations.**

126.    For purposes of specificity of pleading (particularly with respect to the fraud allegations), suffice it to say that Defendants are and have been on notice of the claims asserted herein as a result of the many investigations and actions undertaken around the country on this same subject indeed, each Defendant should know without further allegation from the State exactly how its reported prices compare to its true prices and whether it has engaged in an inflated pricing scheme regarding prescription drugs.

**ANSWER:    The Boehringer Defendants deny each and every allegation set forth in paragraph 126 of the Complaint insofar as they relate to them, and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations therein.    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 126 pertaining to other Defendants, and therefore deny these allegations.**

## CLAIMS

### COUNT ONE - FRAUDULENT MISREPRESENTATION

127.    The State hereby repeats, incorporates by reference and realleges each and every allegation set forth above in this Complaint.

**ANSWER:    The Boehringer Defendants repeat and incorporate by reference their responses to numbered paragraphs 1 through 126 above.**

128.    Defendants committed fraud against the State and its agency, Alabama Medicaid. Defendants reported or caused to be reported AWP, WAC, and Direct Price for their products on a periodic and continuing basis for publication and dissemination to state Medicaid agencies such as Alabama Medicaid. Defendants knew that the AWP, WAC, and Direct Price information which they provided and caused to be reported was false. Defendants misrepresented the pricing information with the intent of inducing Alabama Medicaid to rely on the false information in setting prescription drug reimbursement rates. Alabama Medicaid reasonably relied on the false pricing data in setting prescription drug reimbursement rates and making payment based on said rates" Defendants' misrepresentations are continuing, as they regularly and periodically continue to issue false and inflated AWP, WAC, and Direct Price

39

information for publication by the industry reporting services. As a result of Defendants' fraudulent conduct, the State has been damaged by paying grossly excessive amounts for Defendants' prescription drugs.

**ANSWER:    The Boehringer Defendants deny each and every allegation set forth in paragraph 128 of the Complaint insofar as they relate to them, and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations therein.    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 128 pertaining to other Defendants, and therefore deny these allegations.**

129.    By engaging in the acts and practices described above, the Defendants have engaged and continue to engage in repeated fraudulent acts and practices in violation of Alabama common law and Section 6-5-101 of the Alabama Code.

**ANSWER:    The Boehringer Defendants deny each and every allegation set forth in paragraph 129 of the Complaint insofar as they relate to them. The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 129 pertaining to other Defendants, and therefore deny these allegations.**

130.    Defendants' conduct was and is knowing, intentional, gross, oppressive, malicious, wanton, and/or committed with the intention to cause injury.

**ANSWER:    The Boehringer Defendants deny each and every allegation set forth in paragraph 130 of the Complaint insofar as they relate to them. The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 130 pertaining to other Defendants, and therefore deny these allegations.**

## COUNT TWO - FRAUDULENT SUPPRESSION

131.    The State hereby repeats, incorporates by reference and re-alleges each and every allegation set forth above in this Complaint.

**ANSWER:    The Boehringer Defendants repeat and incorporate by reference their responses to numbered paragraphs 1 through 130 above.**

132-139.    There are no paragraphs 132-139 in the Complaint.

**ANSWER:    There are no paragraphs 132-139 in the Complaint, thus no answer is required.**

140.    Defendants committed fraud against the State and its agency, Alabama Medicaid. Defendants voluntarily undertook to report or cause to be reported AWP, WAC, and Direct Price for their products on a periodic and

continuing basis for publication and dissemination to state Medicaid agencies including Alabama Medicaid. Defendants knew that the AWP, WAC, and Direct Price information which they provided and/or caused to be reported was false, incomplete and/or outdated and Defendants suppressed and concealed facts within their knowledge which would have materially qualified the reported prices, Defendants had a duty under the particular circumstances to provide accurate and complete AWP, WAC, and Direct Price information. By controlling the AWP, WAC, and Direct Price information for covered drugs which is reported to and through the publishers, Defendants concealed and suppressed their fraudulent conduct from Alabama Medicaid. Defendants knew that the AWP, WAC, and Direct Price information which they concealed or failed to disclose and/or update would induce Alabama Medicaid to rely on false pricing information in setting prescription drug reimbursement rates. Alabama Medicaid was in fact induced to rely on the false pricing data in setting prescription drug reimbursement rates and made payments based on said rates. Alabama Medicaid could not have reasonably discovered the fraudulent nature of the published AWP, WAC, and Direct Price information, as Defendants took active steps to conceal true market pricing information and to avoid detection of the fraudulent pricing scheme. Defendants' suppression and concealment of information was continuing, as they regularly and periodically continued to conceal material information regarding inflated AWP, WAC, and Direct Price information submitted by Defendants for publication by the industry reporting services. As a result of Defendants' fraudulent conduct, the State has been damaged by paying grossly excessive amounts for Defendants' prescription drugs.

**ANSWER:    The Boehringer Defendants admit that, at various times, BIRI and BIPI provided third party publications with information for certain of their products including AWP and/or WAC.  The Boehringer Defendants deny that BIC provided third party publications with AWP, WAC, and/or Direct Price information for any prescription drugs.  The Boehringer Defendants deny the remaining allegation set forth in paragraph 140 of the Complaint insofar as they relate to them.  The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 140 pertaining to other Defendants, and therefore deny these allegations.**

141.    By engaging in the acts and practices described above, the Defendants have engaged and continue to engage in repeated fraudulent suppression and concealment in violation of Alabama common law and Section 6-5-102 of the Alabama Code.

**ANSWER:    The Boehringer Defendants deny each and every allegation set forth in paragraph 141 of the Complaint insofar as they relate to them.  The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 141 pertaining to other Defendants, and therefore deny these allegations.**

142. Defendants' conduct was and is knowing, intentional, gross, oppressive, malicious, wanton, and/or committed with the intention to cause injury.

**ANSWER:** **The Boehringer Defendants deny each and every allegation set forth in paragraph 140 of the Complaint insofar as they relate to them. The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 140 pertaining to other Defendants, and therefore deny these allegations.**

## COUNT THREE - WANTONNESS

143. The State hereby repeats, incorporates by reference and realleges each and every allegation set forth above in this Complaint.

**ANSWER:** **The Boehringer Defendants repeat and incorporate by reference their responses to numbered paragraphs 1 through 142 above.**

144. With reckless indifference to the consequences, Defendants consciously reported false and inflated pricing information, including AWP, WAC, and Direct Price, while knowing of the falsities and being conscious that, from reporting such false and inflated pricing information, injury would likely or probably result.

**ANSWER:** **The Boehringer Defendants deny each and every allegation set forth in paragraph 144 of the Complaint insofar as they relate to them. The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 144 pertaining to other Defendants, and therefore deny these allegations.**

145. Defendants' actions did, in fact, injure the State, and specifically Alabama Medicaid, by causing Alabama Medicaid to pay grossly excessive amounts for Defendants' prescription drugs.

**ANSWER:** **The Boehringer Defendants deny each and every allegation set forth in paragraph 145 of the Complaint insofar as they relate to them, and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations therein. The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 145 pertaining to other Defendants, and therefore deny these allegations.**

146. By engaging in such actions and practices, the Defendants have engaged and continue to engage in repeated wanton acts and practices in violation of Alabama common law.

**ANSWER:** **The Boehringer Defendants deny each and every allegation set forth in paragraph 146 of the Complaint insofar as they relate to them. The Boehringer Defendants are without knowledge or information sufficient to form a belief as to**

42

the truth of the allegations in paragraph 146 pertaining to other Defendants, and therefore deny these allegations.

147.    Defendants' conduct was and is knowing, intentional, gross, oppressive, malicious, fraudulent, and/or committed with the intention to cause injury.

**ANSWER:    The Boehringer Defendants deny each and every allegation set forth in paragraph 147 insofar as they relate to them. The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 147 pertaining to other Defendants, and therefore deny these allegations.**

## COUNT FOUR    UNJUST ENRICHMENT

148.    The State hereby repeats, incorporates by reference and realleges each and every allegation set forth above in this Complaint.

**ANSWER:    The Boehringer Defendants repeat and incorporate by reference their responses to numbered paragraphs 1 through 147 above.**

149.    As a result of the false and misleading statements and representations regarding drug prices contained in each Defendant's reporting of AWP, WAC, and Direct Price, Alabama Medicaid has paid excessive amounts in connection with purchases or reimbursements of purchases of Defendants' prescription drugs.

**ANSWER:    The Boehringer Defendants deny each and every allegation set forth in paragraph 149 of the Complaint insofar as they relate to them, and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations therein.    The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 149 pertaining to other Defendants, and therefore deny these allegations.**

150.    Defendants knew that medical providers, including pharmacies and physicians, who obtained Medicaid reimbursement for Defendants' drug products were not entitled to improperly inflated reimbursement rates that were based on Defendants' false AWPs, WACs, and Direct Prices.

**ANSWER:    The Boehringer Defendants deny each and every allegation set forth in paragraph 150 of the Complaint insofar as they relate to them. The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 150 pertaining to other Defendants, and therefore deny these allegations.**

151.    As a result of the excessive payments to providers by Alabama Medicaid of all or part of the "spread," Defendants obtained increased sales and

market share for their products, and, therefore, increased profits, and were unjustly enriched at the expense of the State and Alabama Medicaid.

**ANSWER:    The Boehringer Defendants deny each and every allegation set forth in paragraph 151 of the Complaint insofar as they relate to them. The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 151 pertaining to other Defendants, and therefore deny these allegations.**

152.    Defendants knew they were not entitled to the profits that resulted from the sales obtained through the use of the spreads they created, and Defendants should be required to account for and make restitution to the State of all such amounts obtained through the use of such spreads

**ANSWER:    The Boehringer Defendants deny each and every allegation set forth in paragraph 152 of the Complaint insofar as they relate to them. The Boehringer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 152 pertaining to other Defendants, and therefore deny these allegations.**

## PRAYER FOR RELIEF

**ANSWER:    The Boehringer Defendants further deny that Plaintiffs are entitled to a judgment or any other relief requested in their section entitled "PRAYER FOR RELIEF" and unnumbered "WHEREFORE" paragraph following paragraph 152 of the Complaint.**

## DEFENDANTS BOEHRINGER INGELHEIM CORPORATION, BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., AND BOEHRINGER INGELHEIM ROXANE, INC.'S AFFIRMATIVE DEFENSES

### First Affirmative Defense

The Boehringer Defendants generally deny liability for all claims alleged in the Complaint and deny each allegation contained in the Complaint that has not been admitted.

### Second Affirmative Defense

The Complaint fails to state a claim upon which relief may be granted.

44

### Third Affirmative Defense

The Complaint and the claims therein are barred, in whole or in part, by the applicable statutes of limitations and/or repose.

### Fourth Affirmative Defense

Plaintiff's claims against the Boehringer Defendants are barred in whole or in part by the First Amendment to the United States Constitution and by those provisions protecting the right of free speech under the Constitution of the State of Alabama.

### Fifth Affirmative Defense

Plaintiff is not the real party in interest.

### Sixth Affirmative Defense

Plaintiff fails to state with particularity, facts required to support its claims of fraud, fraudulent conduct, and fraudulent concealment, as required by Alabama Rule of Civil Procedure 9(b).

### Seventh Affirmative Defense

Plaintiff's claims are barred in whole or in part because Plaintiff's alleged injuries and damages were not legally or proximately caused by any acts or omissions of the Boehringer Defendants and/or were caused, if at all, by the conduct of Plaintiff and/or third parties.

### Eighth Affirmative Defense

Plaintiff's claims against BIPI and/or BIRI for damages are barred, in whole or in part, by the doctrines of consent and/or ratification, waiver, estoppel, and or laches to the extent that Plaintiff has received and paid for pharmaceutical products manufactured, marketed, or sold by BIPI and/or BIRI after the filing of Plaintiff's original Complaint.

### Ninth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the political question and separation of powers doctrines.

### Tenth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the filed rate doctrine.

### Eleventh Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the *Noerr-Pennington* doctrine to the extent that such claims are premised, in whole or in part, on alleged statements or conduct by the Boehringer Defendants in judicial, legislative, or administrative proceedings of any kind or at any level of government.

### Twelfth Affirmative Defense

Plaintiff's claims are preempted, in whole or in part, by federal law, including without limitation the Federal Employment Retirement Income and Security Act of 1974, the Federal Medicare Act, and the Federal Medicaid Act, including all amendments to the same and all regulations promulgated thereunder.

### Thirteenth Affirmative Defense

Plaintiffs' claims are preempted by the dormant Commerce Clause of the United States Constitution.

### Fourteenth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because they violate BIRI's rights under the Due Process and *Ex Post Facto* clauses of the United States Constitution, as well as all applicable state constitutions, insofar as Plaintiff seeks to impose liability retroactively for conduct that was not actionable at the time it occurred.

### Fifteenth Affirmative Defense

To the extent that Plaintiff attempts to seek equitable relief against the Boehringer Defendants, Plaintiff is not entitled to such relief because Plaintiff has an adequate remedy at law.

### Sixteenth Affirmative Defense

Plaintiff's claims against the Boehringer Defendants for injunctive relief were mooted by the passage of the 2003 Medicare reform legislation.

### Seventeenth Affirmative Defense

Plaintiff's claims for equitable relief against the Boehringer Defendants are barred by the doctrines of *in pari delicto* and/or unclean hands.

### Eighteenth Affirmative Defense

Plaintiff's claims against BIPI and/or BIRI are barred, in whole or in part, due to its failure to join indispensable parties, including, without limitation, the

46

persons and entities who have received the State of Alabama's reimbursements for BIPI and/or BIRI's products.

### Nineteenth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the economic loss doctrine.

### Twentieth Affirmative Defense

Any and all of Plaintiff's claims are barred under the state action doctrine.

### Twenty-first Affirmative Defense

The Boehringer Defendants did not owe any duty to the Plaintiff and did not breach any duty owed to the Plaintiff.

### Twenty-second Affirmative Defense

Plaintiff's unjust enrichment claims are barred, in whole or in part, because the Boehringer Defendants did not retain any money belonging to the State as a result of any alleged overpayments as required under Alabama law.

### Twenty-third Affirmative Defense

To the extent Plaintiff or Alabama Consumers obtain recovery in any other case predicated on the same factual allegations, that Plaintiff is barred from seeking recovery against the Boehringer Defendants based on the Complaint pursuant to the doctrines of res judicata and collateral estoppel, and the prohibition on double recovery for the same injury.

### Twenty-fourth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiffs have released, settled, entered into an accord and satisfaction or otherwise compromised Plaintiff's claims.

### Twenty-fifth Affirmative Defense

The Boehringer Defendants are entitled to a set-off, should any damages be awarded against them, for the entire amount of all damages or settlement amounts recovered by Plaintiff, with respect to the same alleged injuries.

### Twenty-sixth Affirmative Defense

Plaintiff has no standing or capacity to bring some or all of the claims raised in this suit to recover Medicaid expenditures or to seek injunctive relief.

K&E 10929997.6

### Twenty-seventh Affirmative Defense

The Alabama punitive damage system, on its face and as applied, violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The Alabama system affords juries standardless discretion to impose unlimited punishment and review of such awards is constitutionally deficient. Alabama post-verdict review is neither meaningful, consistent, nor constitutionally adequate to cure this crucial constitutional defect.

### Twenty-eighth Affirmative Defense

Any or all of the Boehringer Defendants' overpayment of Medicaid rebates to the State of Alabama reduces or eliminates the amount of damages alleged by the State. All rebates paid by any or all of the Boehringer Defendants to the State of Alabama should be taken into account in determining the amount of damages, if any, to which the State is entitled.

### Twenty-ninth Affirmative Defense

Plaintiff has not suffered, and will not suffer, any injury to a legally protected or cognizable interest by reason of the conduct of the Boehringer Defendants as alleged in the Complaint.

### Thirtieth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because any injuries sustained by Plaintiff were the result of its own conduct or the intervening or superceding conduct of third parties.

### Thirty-first Affirmative Defense

Any damages recovered by the Plaintiff from the Boehringer Defendants must be limited by the applicable statutory ceilings on recoverable damages, including without limitation, Alabama Code 6-11-21, and in the spirit of the Alabama Supreme Court's decision in *Oliver v. Towns*, 738 So. 2d 798 (Ala. 1999).

### Thirty-second Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the doctrine of contributory and/or comparative fault because Plaintiff's own actions or failures to act helped bring about any injuries sustained.

### Thirty-third Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because some or all of Plaintiff's claims against the Boehringer Defendants arise from Plaintiff's failure

48

to follow its federal and state statutory and regulatory obligation to properly establish appropriate reimbursement rates.

### Thirty-fourth Affirmative Defense

The Plaintiff's claims against the Boehringer Defendants under the various state statutes are barred in whole or in part to the extent those statutes: (1) do not allow (or did not allow at the time the conduct was alleged herein) recovery of damages by indirect purchasers; and (2) do not govern conduct that is predominantly interstate in nature.

### Thirty-fifth Affirmative Defense

Any and all of Plaintiff's claims are barred under the voluntary payment doctrine.

### Thirty-sixth Affirmative Defense

Plaintiff's claim are barred, in whole or in part, by the failure to exhaust applicable administrative remedies.

### Thirty-seventh Affirmative Defense

Plaintiff's claims against the Boehringer Defendants for damages are barred, in whole or in part, because the Plaintiff failed to mitigate and/or neglected to minimize its damages, and its failure to mitigate damages should proportionately reduce its recovery and the allocation of any fault, if any exists, attributable to the Boehringer Defendants.

### Thirty-eighth Affirmative Defense

Plaintiff's claims against any or all of the Boehringer Defendants are misjoined with Plaintiff's claims against other defendants and must be severed.

### Thirty-ninth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the doctrines of implied waiver, mistake and mutual mistake.

### Fortieth Affirmative Defense

Alabama Code § 6-11-21(l) by its terms bars the State from recovering of any punitive damages in that it provides that "no portion of a punitive damage award shall be allocated to the state or any agency or department of the state."

### Forty-first Affirmative Defense

Any or all causes of action in Plaintiff's Complaint are barred because of the lack of privity between the Plaintiff any or all of the Boehringer Defendants.

K&E 10929997.6

### Forty-second Affirmative Defense

The lack of particularity in the Complaint makes it impossible for the Boehringer Defendants to determine at this time the extent of the defenses they may have. The Boehringer Defendants reserve their right to assert additional defenses that are now or may become available or appear during, or as a result of the discovery proceedings in this action and reserves the right to amend this Answer if necessary.

### Forty-third Affirmative Defense

The Boehringer Defendants adopt by reference any additional, applicable defense pled by any other Defendant in this action.


WHEREFORE, the Boehringer Defendants demand that:    (1) Plaintiff's Second Amended Complaint be in all respects dismissed as to them; (2) they be awarded their costs of defending this action, including their reasonable attorneys' fees; and (3) they be awarded such other relief as the Court may deem just and proper.

Dated: February 3, 2006.

/s/ Sandy G. Robinson
Sandy G. Robinson (GRI022)
Jarrod J. White (WHI101)
Cabaniss, Johnston, Gardner, Dumas
 & O'Neal LLP
Post Office Box 2906
Mobile, Alabama 36652
(251) 415-7308
(251) 415-7350 (Facsimile)

Helen E. Witt P.C.
Brian P. Kavanaugh
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000
(312) 861-2200 (Facsimile)

*Attorneys for Defendants Boehringer
Ingelheim Corporation, Boehringer
Ingelheim Pharmaceuticals, Inc., and
Boehringer Ingelheim Roxane, Inc., f/k/a
Roxane Laboratories, Inc.*

51

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 3rd day of February, 2006, electronically served a true and correct copy of the foregoing pleading on counsel of record by transmission to LNFS, pursuant to Case Management Order No. 2.

<u>/s/ Sandy G. Robinson</u>

K&E 10929997.6