# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

_____

**STATE OF ALABAMA**

       **Plaintiff,**

   **v.**

                              **Civil Action No.: 2:06cv00920-MHT**

**ABBOTT LABORATORIES, INC.,** *et al.*,

       **Defendants.**

_____

## KING PHARMACEUTICALS, INC. AND MONARCH PHARMACEUTICALS, INC.'S MOTION TO VACATE

Defendants/Counterclaim-Plaintiffs, King Pharmaceuticals, Inc. and Monarch Pharmaceuticals, Inc. (collectively "King"), move this honorable Court pursuant to FED. R. CIV. P. 59(e) to vacate the state court order of July 12, 2006, dismissing King's Counterclaim.[1]    In support of this motion, King states as follows:

---

[1] A motion to vacate pursuant to FED. R. CIV. P. 59(e) is the appropriate procedural vehicle for this Court to review the state court order dismissing King's counterclaim because of the recognized "legal fiction that the state court judgment is a federal district court judgment." *Jackson v. American Savings Mortgage Corp.*, 924 F.2d 195, 198 (11th Cir. 1991) ("After removal, state court proceedings are treated as those of the district court.") (citing *Savell v. Southern Ry.*, 93 F.2d 377, 379 (5th Cir. 1937). In fact, King is required to file such a motion in order to preserve its right to an appeal. *Id.* at 199. ("When a case removed to a federal court has in it at the time of removal an order or judgment of the state trial judge which, had it been entered by a [federal] district judge, would be appealable to [the federal appellate court], it shall be incumbent on the party seeking an appeal first to move that the district judge modify or vacate the order or judgment.")

## BACKGROUND

This lawsuit was filed by Plaintiff/Counterclaim-Defendant, State of Alabama ("State"), against King and numerous other pharmaceutical suppliers on January 25, 2005, regarding the State's administration of the Alabama Medicaid program.  Specifically, the State alleges that King and others intentionally provided inflated pricing information to national drug industry reporting services.  The State further alleges that it relied upon the prices reported by those services as a basis for calculating reimbursements to the medical or pharmacy providers who provide the drugs to patients, ultimately causing the State to overpay for the drugs.

King filed a counterclaim against the State, alleging that, due to calculation errors, King mistakenly overpaid rebates to the State pursuant to the federal Medicaid Rebate Program, 42 U.S.C. § 1396r-8.  King's counterclaim further alleges that such erroneous overpayments in some cases exceed the amount of any reimbursements paid by the State with respect to the same King product.  King alleges that the overpayments do not belong to the State but, instead, rightfully belong to King.

King's counterclaim contains four separate counts: Count One – Action for Refund of Overpayment; Count Two – Unjust Enrichment; Count Three – Money Had and Received; and Count Four – Writ of Habeas Corpus.  Among other things, King's counterclaim requests a declaration that King is entitled to a refund from

the State for erroneous overpayments and a writ of habeas corpus requiring that the appropriate officials of the State deliver to King the funds representing King's erroneous overpayments.

The State responded to King's counterclaim by filing a Motion to Dismiss based solely upon the doctrine of sovereign immunity. A true and correct copy of the State's Motion to Dismiss is attached hereto as **Exhibit A**. King filed a brief in opposition arguing that King's counterclaim falls into an exception to the doctrine of sovereign immunity for claims for overpayments erroneously paid to the State ("Opposition Brief"). A true and correct copy of King's Opposition Brief is attached hereto as **Exhibit B**.

On May 19, 2006, the state court heard oral argument on the State's Motion to Dismiss King's counterclaim. A copy of the hearing transcript is attached hereto as **Exhibit C**. The State argued that King's counterclaim was barred by the doctrine of sovereign immunity, and King responded that its counterclaim falls under an exception to the doctrine of sovereign immunity, permitting claims against the State for moneys erroneously paid.

The State introduced a new argument for the first time at the hearing, claiming that King failed to follow compulsory administrative processes before filing its counterclaim. King objected to the state court judge's consideration of the new argument, since it had neither been briefed nor made the basis of the

State's Motion to Dismiss.  As part of its argument regarding administrative processes, the State produced a sample rebate agreement.  The State did not elicit testimony or otherwise attempt to authenticate the sample agreement.  The sample agreement was not designated as an exhibit, was not given an exhibit number, and was not attached to the hearing transcript.  In short, the sample rebate agreement was never introduced in evidence and never became a part of the record in this case.  Moreover, the sample agreement was not signed by anyone and did not contain King's or the State's name anywhere in it.  The State nevertheless suggested that the sample agreement could be used to show specific contract terms between the State and King.  King objected to the State's use of the sample agreement.

After the hearing, with the permission of the state court, King filed a supplemental brief in opposition to the State's Motion to Dismiss King's counterclaim ("Supplemental Opposition Brief").  A true and correct copy of King's Supplemental Opposition Brief is attached hereto as **Exhibit D**.

On July 10, 2006, the state  court signed an order granting the State's Motion to Dismiss King's Counterclaim, holding that King's counterclaim was barred by sovereign immunity and, alternatively, by the doctrine of exhaustion of administrative remedies.  The order referred to a "contract between the State and

King," although no contract between the State and King was in evidence and has never been made a part of any record related to this case.

The dismissal order was entered by the clerk on July 12, 2006. Prior to the removal of this case to this Court, King's appeal was pending before the Alabama Supreme Court and was being considered for referral to mediation.

## STANDARD OF REVIEW

"[A] federal district court may dissolve or modify injunctions, orders, and all other proceedings which have taken place in state court prior to removal." *Maseda v. Honda Motor Co.*, 861 F.2d 1248, 1252 (11th Cir. 1988).

It is never proper to dismiss a complaint for failure to state a claim under Rule 12(b)(6) if it contains even a generalized statement of facts that will support a claim for relief. *Ancata v. Prison Health Svs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985) (threshold for sufficiency of complaint "exceedingly low"); *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984) (complaint should not be dismissed "unless it appears beyond a doubt that plaintiff could prove no set of facts that would entitle him to relief").

## ARGUMENT

King's counterclaim is not barred by sovereign immunity, because it does not seek damages or other remuneration to be paid from the State's treasury, but instead seeks only the return of funds erroneously paid to the State that rightfully

5

belong to King.  Furthermore, King's counterclaim is not barred by the doctrine of exhaustion of administrative remedies, because there is no allegation or evidence in the record that administrative remedies are available to King.

I.    **King's counterclaim states a viable claim for relief, because it seeks repayment of erroneous payments to the State, a recognized exception to the State's right of sovereign immunity.**

While it is true that Sec. 14 of the Alabama Constitution of 1901 provides that "the State of Alabama shall never be made a defendant in any court of law or equity," and that Alabama's courts have observed that "the wall of immunity erected by Sec. 14 is *nearly* impregnable . . . ."  *E.g., Alabama A&M Univ. v. Jones*, 895 So.2d 867, 872-73 (Ala. 2004)(emphasis added), there are indeed limited exceptions to the sovereign immunity of the State.

In *Aland v. Graham*, 250 So.2d 677 (Ala. 1971), the Court listed four general categories of cases which are not barred by Sec. 14:

> (a)    Actions brought to compel State officials to perform their legal duties;
>
> (b)    Actions brought to enjoin State officials from enforcing an unconstitutional law;
>
> (c)    Actions to compel State officials to perform ministerial acts; and
>
> (d)    Actions brought under the Declaratory Judgments Act, seeking construction of a statute and how it should be applied to a given situation.

The *Aland* court expressly recognized that this list might not be exhaustive. Other opinions indicate that an action for repayment of moneys erroneously paid to the State is not barred by Sec. 14.[2]  For example, in *Alabama Dept. of Environmental Mgmt. v. Town of Lowndesboro*, 2005 WL 791239 (Ala. Civ. App. 2005), Presiding Judge Crawley, concurring specially, expressly recognized that "[i]n appropriate circumstances, Sec. 14 does not bar a proceeding against the State for the recovery of moneys that do not belong to the State or that have not been properly acquired by the State."  The Alabama Supreme Court recently affirmed *Alabama Dept. of Environmental Mgmt. v. Town of Lowndesboro* in *Ex parte Town of Lowndesboro*, 2006 WL 1304902, *19 (Ala. 2006).  While the Alabama Supreme Court did not specifically address the exception to sovereign immunity for actions for recovery of moneys that do not belong to the State, the court in *Ex parte Town of Lowndesboro* explained that § 14 sovereign immunity protects the State against situations "'when a favorable result for the plaintiff would directly affect a *contract* or property *right* of the State, or would result in the plaintiff's recovery of money from the [S]tate.'"  Id at *2 (quoting *Ala. Agric. & Mech. Univ. v. Jones*, 895 So. 2d 867, 873 (Ala. 2002) (emphasis in original).  The court further

---

[2]     In the *ADEM* case, the court declined to allow an award of attorneys' fees.  The concurrence distinguished that situation from the cited cases, noting that "the award of attorney fees in this case, [] would be paid from the State treasury and not from funds that were improperly collected . . . ." and would "result in the type of direct affect on the financial status of the state treasury that is prohibited by Sec. 14."

summarized actions subject to sovereign immunity as actions seeking "damages or funds from the State treasury."  Id.

As the *Ala. Dept. of Environ. Mgmt. v. Town of Lowndesboro* court noted, a number of cases have permitted suits that seek repayment of moneys erroneously paid to the State that do not rightfully belong to the State treasury. 2006 WL 1304902 at *19 (Ala. 2006).  In *Dept. of Industrial Relations v. West Boylston Mfg. Co.*, 42 So. 2d 787 (Ala. 1949), the Alabama Supreme Court permitted recovery of a refund of contributions to the unemployment-compensation fund.  *See also, Glass v. Prudential Ins. Co. of America*, 22 So. 2d 13 (1945) (statute requiring that taxes paid under protest be held in trust pending determination of their legality did not violate Sec. 14); *Ex parte McCurley*, 412 So.2d 1236 (Ala. 1982) (sovereign immunity did not bar a judgment requiring the State to return fines and costs that it had imposed on a criminal defendant after her conviction was reversed on appeal); *Horn v. Dunn*, 79 So. 2d 11 (1955) ("No judgment against the State was sought or granted.  True, the decree may ultimately touch the State treasury.  Yet, the State treasury suffers no more than it would, had the Commissioner initially performed his bounded duty.")

The counterclaim asserted by King here is precisely the type of action permitted by the cases cited above; that is, an action to recover moneys that have been erroneously paid to the State by King and that do not rightfully belong to the

8

State.  As set forth in the counterclaim, King has erroneously overpaid Medicaid rebates to the State since the first quarter of 2003.  Those funds have never rightfully belonged to the State and should be returned to King.  Because King does not seek "damages" or other remuneration to be paid from the State's treasury, but instead seeks only the return of funds that rightfully belong to it, King's counterclaim is not barred.  Construing all doubts in King's favor and accepting all allegations in King's counterclaim as true, King has stated a viable claim for a refund of erroneous overpayments.

II.    **The state court's order dismissing King's counterclaim pursuant to the doctrine of exhaustion of administrative remedies should be vacated, because there is no allegation or evidence in the record that administrative remedies are available to King.**

While the doctrine of exhaustion of administrative remedies has been recognized by *Patterson v. Gladwin Corp.*, 835 So. 2d 137 (Ala. 2002), the state court erred in dismissing King's counterclaim on that basis, because there was no evidence that King had access to any administrative remedies.  The State's argument depends exclusively upon the terms of a sample agreement provided to the state court by the State's counsel at the May 19, 2006, hearing.  The fact that the sample agreement was never in evidence, and is therefore unavailable as part of the record on a motion to dismiss, illustrates the myriad substantive and evidentiary problems with the state court's holding.

9

**(A)** **The state court's order should be vacated, because the sample agreement was not in evidence and was unauthenticated, and the State's use of the sample agreement violated the best evidence and hearsay rules.**

The sample rebate agreement relied upon by the state court in its order was never properly in evidence and was therefore not a part of the record in this case. The State never made any effort to properly authenticate and introduce the document as an exhibit in the case. Instead, the State's counsel merely handed a copy of the document, which had not been plead or otherwise previously disclosed to King, to the judge during oral argument. It was improper for the state court to dismiss King's counterclaim in reliance upon a document that was never in evidence. *Reed v. Rhodes*, 607 F.2d 714, 735 (7th Cir. 1975) ("District Judge was in error in employing any evidence dehors the record except in compliance with Rule 201 of the Federal Rules of Evidence.").

Moreover, even if the State had made any attempt to introduce the sample rebate agreement, it would have been error for the state court to admit the document or to rely upon it in dismissing King's claims. FED. R. EVID. § 901 and ALA. R. EVID. § 901 provide that a party offering a writing as evidence must authenticate or identify the writing "as a condition precedent to admissibility." FED. R. EVID § 1002 and ALA. R. EVID. § 1002 provide that "to prove the content of a writing, the original writing is required." FED. R. EVID. § 802 and ALA. R. EVID. § 802 preclude hearsay evidence. "'Hearsay' is a statement, other than one

10

made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.  FED. R. EVID. § 801; ALA. R. EVID. § 801.

The sample agreement provided to the state court at the May 19, 2006, hearing was never authenticated.  It was presented directly to the judge by the State's counsel and no attempt was made to authenticate it by testimony or otherwise.  Therefore, its use at the hearing was in violation of Rule 901. Furthermore, the sample agreement violated the Best Evidence Rule, FED. R. EVID. § 1002 and ALA. R. EVID. § 1002, because it was an unsigned, sample document, presented to show a purported contract between the State and King and no attempt was made by the State to account for the unavailability of the original.  Finally, the use of the sample agreement at the May 19, 2006, hearing constituted impermissible hearsay in violation of FED. R. EVID. § 802 and ALA. R. EVID. § 802. The sample agreement is a written statement made out of court offered to prove the truth of the matter asserted, i.e. that contractual, administrative remedies were available to King and that King failed to exhaust them before filing its counterclaim.  Since the Sample Agreement was not properly authenticated and since its use violates the best evidence and hearsay rules, the state court erred in dismissing King's counterclaim.

**(B)     The state court's order is due to be vacated, because the sample agreement does not amount to a contract between the State and King.**

"No contract can be formed without an offer, acceptance, consideration, and mutual assent to the terms essential to the contract." *Ex Parte Holland Manufacturing Co.*, 689 So. 2d 65, 66-67 (Ala. 1996) (unsigned blanket purchase order alone could not establish mutual asset to contract term excluding defendant from liability). The sample agreement presented by the State's counsel at oral argument was merely that — a sample. It was unsigned. Neither King's name nor the State's name even appeared anywhere in the sample agreement. Construing all doubts in King's favor, the sample agreement cannot be deemed as a contract between the State and King. Because the sample agreement cannot represent a binding contract, any administrative remedy provision contained therein cannot be enforced against the parties. Therefore, the state court erred in using the sample agreement to infer contract terms to King as a basis for applying the doctrine of exhaustion of administrative remedies and dismissing King's counterclaim.

**(C)     The state court's order is due to be vacated, because the sample agreement does not provide an administrative remedy applicable to King's counterclaim.**

Even if the sample agreement had been properly admitted and could be considered as evidence of a binding contract (which it was not and can not), the sample agreement does not govern the issues raised in the counterclaim filed by

King.    First,    the    sample    agreement    defines    Medicaid    Utilization    Information ("MUI") as follows:

> I.    DEFINITIONS
>
> (n) "Medicaid Utilization Information" means the information on the total number of units of each … Manufacturer's … Drugs …  The Medicaid Utilization Information to be supplied includes:    1) NDC number; 2) Product name; 3) Units paid for during the quarter by NDC number; 4) Total number of prescriptions paid for during the quarter by NDC number; and 5) Total amount paid during the quarter by NDC number.
>
> (Sample Agreement, p. 3-4.)

"NDC" is the National Drug Code for each drug as further defined in Section I. (o) and "Unit" represents each tablet or capsule of a manufacturer's drug, defined at Section I. (cc).

Section I. (dd) "Unit Rebate Amount" is defined as follows:

> "Unit Rebate Amount" means the Unit amount computed by the Health Care Financing Administration to which the Medicaid utilization information may be applied …

The State relies upon Section V entitled: "Dispute Resolution – Medicaid Utilization Information," and that Section V provides in part the following:

> (a) In the event that in any quarter a discrepancy in the **Medicaid Utilization Information** …
>
> (b) If the Manufacturer in good faith believes the State Medicaid Agency's **Medicaid Utilization Information** is erroneous …

13

(c) The State and the manufacturer will use their best efforts to resolve the discrepancy [in the Medicaid Utilization Information] …

(d) Nothing in this section shall preclude the right of the Manufacturer to audit the **Medicaid Utilization Information** reported (or required to be reported) by the State.

This Dispute Resolution – Medicaid Utilization Information Section V of the Sample Rebate Agreement is applicable to disputes regarding the Medicaid Utilization Information which is a defined term in the Sample Agreement. Those disputes would include NDC numbers, product name, units, number of prescriptions and amount reimbursed by the State during any quarter. King does not and has never challenged the Medicaid Utilization Information from the State of Alabama regarding the number of units reimbursed by the State. The counterclaim has absolutely nothing to do with the Medicaid Utilization Information including the NDCs, product name, and the units reimbursed by the State and paid to the pharmacies.

King hereby confirms to the Court that it does not challenge the Medicaid Utilization Information in its counterclaim against the State.

No "discrepancy" in the Medicaid Utilization Information exists and no "dispute" in the Medicaid Utilization Information exists. Thus, Section V entitled Dispute Resolution – Medicaid Utilization Information is not applicable to the Counterclaim filed by King.

The only other administrative remedy provided in the Sample Agreement is contained in Section VI, entitled "Dispute Resolution -- Prescription Drugs Access and State Systems Issues." That Section expressly deals with "[a] State's failure to comply with the drug access requirements of section 1927 of the Act." There is no such issue raised by King's Counterclaim.

King's counterclaim alleges that King has overpaid the State a liquidated amount of monies and is entitled to receive its liquidated overpayment back from the State. These liquidated monies do not belong in the coffers of the State or the Treasury of the State. Because those overpayments do not belong to the State, they may be litigated and required to be returned to King by this Court.

Section V of the sample agreement itself is clear and unambiguous. Overpayment as claimed by King in the counterclaim does not involve MUI. Overpayments are not mentioned in Section V of the sample agreement and are not required by the terms of the sample agreement to be resolved by ADR or administrative proceedings. Here (assuming that the State and King are parties to the sample agreement, which they are not), the parties have expressly, and narrowly, defined the types of disputes to which the administrative remedies provisions are to be applied – namely discrepancies or disputes involving MUI. If the parties had desired that other types of disputes, such as the one raised by King's

counterclaim, be subject to the administrative remedies provisions, they certainly could, and would, have so provided.

Courts cannot construe a contract to create an implied term which would be inconsistent with the express terms of the contract. *See Bailey v. Liberty Mutual Ins. Co.*, 451 So. 2d 279, 281 (Ala. 1984). Accordingly, the Alabama Supreme Court has repeatedly refused to expand alternative dispute resolution agreements beyond their express terms. *See Prudential Securities Inc. v. Micro-Fab, Inc.*, 689 So. 2d 829, 831 (Ala. 1997) ("This Court has applied the well-settled rule that the enforcement of arbitration agreements, while favored by Federal Law as sound public policy, must be governed by the plain terms of the agreements themselves -- that the courts are not to twist the language of a contract to achieve a result favored by federal policy but contrary to the intent of the parties."). Courts should, therefore, consider only the plain language contained in the contract when construing Alternative Dispute Resolution contract provisions. *See id*. Since the sample agreement does not provide an administrative remedy for overpayments as claimed by King in its counterclaim, the state court erred in finding that King's counterclaim was barred by the doctrine of exhaustion of administrative remedies.

Accordingly, accepting the allegations in King's counterclaim as true and construing all doubts in King's favor, it cannot be said that King could prove no set

of circumstances that would entitle it to relief.  The state court's order dismissing

King's counterclaim is, therefore, due to be vacated.

/s/ Lisa W. Borden
LISA W. BORDEN
JAMES F. BARGER, JR.
Attorney for Defendants
King Pharmaceuticals, Inc. and
Monarch Pharmaceuticals, Inc.

OF COUNSEL:

BAKER, DONELSON, BEARMAN,
        CALDWELL & BERKOWITZ, P.C.
1600 SouthTrust Tower
Birmingham, Alabama  35203
(205) 328-0480

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 25, 2006, the foregoing has been served upon the following counsel of record via CM/ECF system which will send notification of such filing to the following:

Troy King, Attorney General
State of Alabama
300 State House
11 South Union Street
Montgomery, Alabama  36130

Roger L. Bates
Hand, Arendall, L.L.C.
1200 Park Place Tower
2001 Park Place North
Birmingham, Alabama  35203

Caine O'Rear III
Windy C. Bitzer
Hand Arendall, L.L.C.
Post Office Box 123
Mobile, Alabama  36601

Jere L. Beasley
W. Daniel Miles, III
Clinton C. Carter
Beasley, Allen Crow, Methvin,
Portis & Miles, PC
P. O. Box 4160
Montgomery, Alabama  36103-4160

**Abbott Laboratories, Inc.**
Toni Ann Citera
Jones Day
222 East 41st Street
New York, New York  10017-6702

**Abbott Laboratories, Inc.**
James R. Daly
Jeremy P. Cole
Jones Day
77 West Wacker Drive, Suite 3500
Chicago, Illinois  60601

**Abbott Laboratories, Inc.**
Betsy Collins
Leah Poynter
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia  30309-3424

**Alcon Laboratories, Inc.**
Edward S. Sledge, III
Archibald Reeves, IV
McDowell Knight Roedder & Sledge, L.I
63 South Royal Street
Suite 900
Mobile, Alabama  36602

18

**Allergan, Inc.**
Richard Raskin
Michael Doss
Sidley Austin Brown & Wood
Bank One Plaza
10 South Dearborn Street
Chicago, Illinois  60603

**Allergan, Inc.**
F.M. Haston, III
Bradley Arant LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama  35203

**Alpharma, Inc.**
**PurePac Pharmaceutical Co.**
John R. Fleder
Hyman, Phelps & McNamara, P.C.
700 Thirteenth Street, N.W., Suite 1200
Washington, D.C.  20005

**Alpharma, Inc.**
**PurePac Pharmaceutical Co.**
Steven F. Casey
Balch & Bingham LLP
Post Office Box 306
Birmingham, Alabama  35201-0306

**Amgen Inc.**
Joseph H. Young
Steven F. Barley
Hogan & Hartson, LLP
111 S. Calvert Street, Suite 1600
Baltimore, Maryland  21202

**Amgen Inc.**
Anthony A. Joseph
Johnston Barton Proctor & Powell LLP
2900 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama  35203-2618

**Andrx Corporation**
**Andrx Pharmaceuticals, Inc.**
Robert J. Muldoon, Jr.
James W. Matthews
Katy E. Koski
Sherin Lodgen LLP
101 Federal Street
Boston, MA  02110

**Andrx Corporation**
**Andrx Pharmaceuticals, Inc.**
James H. Anderson
Beers, Anderson, Jackson, Patty
& Van Heest, P.C.
P.O. Box 1988
Montgomery, AL 36102

**AstraZeneca Pharmaceuticals LP**
**AstraZeneca LP**
D. Scott Wise
Michael Flynn
Kim Harris
Davis Polk & Wardwell
450 Lexington Avenue
New York, New York  10017

**AstraZeneca Pharmaceuticals LP**
**AstraZeneca LP**
Tom Christian
Sharon Stuart
Christian & Small
1800 Financial Center
505 North 20th Street
Birmingham, Alabama  35203

**Aventis Pharmaceuticals Inc.**
Carlos Provencio
Shook Hardy & Bacon L.L.P.
Hamilton Square
600 14th Street, N.W.
Suite 800
Washington, D.C.  20005-2004

**Aventis Pharmaceuticals Inc.**
Richard H. Gill
Copeland, Franco, Screws & Gill, P.A.
444 South Perry Street
Post Office Box 347
Montgomery, Alabama  36101-0347


**Aventis Behring, LLC**
**ZLB Behring, LLC**
Richard H. Gill
Copeland, Franco, Screws & Gill, P.A.
444 South Perry Street
Post Office Box 347
Montgomery, Alabama  36101-0347

**Barr Laboratories, Inc.**
Bruce F. Rogers
Bainbridge, Mims, Rogers & Smith
LLP
600 Luckie Drive
Post Office Box 530886
Birmingham, Alabama  35253

**Aventis Pharmaceuticals Inc.**
Michael Koon
Joseph Matye
Nicola Heskett
Shook Hardy & Bacon L.L.P.
2555 Grand Blvd.
Kansas City, Missouri  64108

**Aventis Behring, LLC**
**ZLB Behring, LLC**
William D. Nussbaum
Jonathan T. Rees
Gregory Petouvis
Hogan & Hartson, LLP
555 Thirteenth Street, NW
Washington, DC  20004

**Barr Laboratories, Inc.**
Karen Walker
Pamela Auerbach
Sean Trende
Kirkland & Ellis LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, DC  20005

**Baxter International**
**Baxter Healthcare Corporation**
Merle DeLancey
Tina Reynolds
Jason D. Wallach
Dickstein Shapiro Morin & Oshinsky
LLP
2101 L Street, N.W.
Washington, DC  20037-1526

**Baxter International**
**Baxter Healthcare Corporation**
Rushton McClees
Sirote & Permutt, P.C.
2311 Highland Avenue
Birmingham, Alabama 35205

**Bayer Corporation**
**Bayer Pharmaceuticals Corporation**
**Bayer Healthcare, LLC**
Richard Raskin
Michael Doss
Sara Rankin
Sidley Austin Brown & Wood
Bank One Plaza
10 South Dearborn Street
Chicago, Illinois 60603

**Bayer Corporation**
**Bayer Pharmaceuticals Corporation**
**Bayer Healthcare, LLC**
F.M. Haston, III
Bradley Arant LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203

**Biovail Pharmaceuticals, Inc.**
F.M. Haston, III
Bradley Arant LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203

**Boehringer Ingelheim Corporation**
**Boehringer Ingelheim Pharmaceuticals**
**Roxane Labs, Inc.**
Paul Coval
Douglas L. Rogers
Darrell A. H. Miller
Vorys Sater Seymour & Pease LLP
52 East Gay Street
Post Office Box 1008
Columbus, Ohio 43216-1008

**Boehringer Ingelheim Corporation**
**Boehringer Ingelheim Pharmaceuticals**
**Roxane Labs, Inc.**
Sandy Robinson
Cabaniss, Johnston, Gardner, Dumas &
O'Neal
Post Office Box 2906
Mobile, Alabama 36652

**Bristol-Myers Squibb Co.**
Lyndon M. Tretter
Steven M. Edwards
James Zucker
Hogan & Hartson L.L.P.
875 Third Avenue
New York, New York 10022

**Bristol-Myers Squibb Co.**
Harlan I. Prater, IV
Lightfoot, Franklin & White, LLC
The Clark Building
400 20th Street North
Birmingham, Alabama 35203-3200

**Dey, L.P.**
Paul F. Doyle
Christopher C. Palermo
Neil Merkl
Kelley Drye & Warren LLP
101 Park Avenue
New York, New York  10178

**Eisai, Inc.**
Brien T. O'Connor
E. Abim Thomas
Ropes & Gray LLP
One International Place
Boston, MA  02110

**Eli Lilly and Company**
William Davis
Mitz, Levin, Cohen, Ferris
Glovsky & Popeo
701 Pennsylvania Avenue, N.W., Suite 900
Washington, DC  20004

**Endo Pharmaceuticals, Inc.**
Jonathan Stern
Nathan Cortez
David Fauvre
Arnold & Porter
Thurman Arnold Building
555 Twelfth Street, NW
Washington, DC  20004-1206

**ETHEX Corporation**
Robert S. Litt
Justin Antonipillai
Michael Rinaldi
Arnold & Porter
Thurman Arnold Building
555 Twelfth Street, NW
Washington, DC  20004-1206

**Dey, L.P.**
Joseph W. Letzer
Gary M. London
Burr & Forman LLP
3100 SouthTrust Tower
420 North 20th Street
Birmingham, Alabama  35203

**Eisai, Inc.**
Julia Boaz Cooper
BRADLEY, ARANT, ROSE &
WHITE, LLP
1819 5th Avenue North
Birmingham, Alabama  35203-2104

**Eli Lilly and Company**
Tabor R. Novak, Jr.
Ball, Ball, Matthews & Novak, P.A.
2000 Interstate Park Drive
Suite 204
Montgomery, Alabama  36109

**Eli Lilly and Company**
Robert Eckinger
Michael Wade
Adams & Reese LLP
Concord Center
2100 Third Avenue North
Suite 1100
Birmingham, Alabama 35203

**ETHEX Corporation**
Robert Eckinger
Michael Wade
Adams & Reese LLP
Concord Center
2100 Third Avenue North
Suite 1100
Birmingham, Alabama 35203

**Forest Laboratories, Inc.**
**Forest Pharmaceuticals, Inc.**
Peter Venaglia
Brian Rafferty
Dornbush Schaeffer, Strongin
& Weinstein, LLP
747 Third Avenue
New York, New York 10017

**Fujisawa Healthcare, Inc.**
**Fujisawa USA, Inc.**
Kathleen McGuan
Andrew Hurst
Reed Smith LLP
1301 K Street, N.W.
Suite 1100, East Tower
Washington, DC  20005

**Genzyme Corporation**
Brien T. O'Connor
Eric Christofferson
Ropes & Gray LLP
One International Place
Boston, MA  02110

**Gilead Sciences, Inc.**
Robert S. Litt
Jessica Medina
Rebecca Dubin
Arnold & Porter LLP
Thurman Arnold Building
555 Twelfth Street, NW
Washington, DC  20004-1206

**Hoffmann-La Roche Inc.**
Kevin Sullivan
Grace Rodriguez
John Shakow
King & Spalding LLP
1700 Pennsylvania Avenue, NW
Washington, DC  20006-4706

**Forest Laboratories, Inc.**
**Forest Pharmaceuticals, Inc.**
William Hardie
Johnstone Adams
Post Office Box 1988
Mobile, Alabama  36633-1988

**Fujisawa Healthcare, Inc.**
**Fujisawa USA, Inc.**
Richard L. Sharff, Jr.
Bradley, Arant, Rose & White
1819 Fifth Avenue North
Birmingham, Alabama  35203-2104

**Genzyme Corporation**
Julia Boaz Cooper
BRADLEY, ARANT, ROSE &
WHITE, LLP
1819 5th Avenue North
Birmingham, Alabama  35203-2104

**Gilead Sciences, Inc.**
Robert Eckinger
Michael Wade
Adams & Reese LLP
Concord Center
2100 Third Avenue North
Suite 1100
Birmingham, Alabama 35203

**Hoffmann-La Roche Inc.**
Edward S. Sledge, III
Archibald T. Reeves, IV
McDowell, Knight, Roedder & Sledge,
LLC
Post Office Box 350
Mobile, Alabama  36601

**Immunex Corporation**
David J. Burman
Kathleen M. O'Sullivan
Zoe Philippides
Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099

**IVAX Corporation**
**IVAX Pharmaceuticals, Inc.**
Bruce Wessel
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, California  90067-4276

**Johnson & Johnson**
**ALZA Corporation**
**Janssen Pharmaceutica Products, L.P.**
**McNeil-PPC, Inc.**
**Ortho Biotech Products, L.P.**
**Ortho-McNeil Pharmaceutical, Inc.**
William F. Cavanaugh
Andrew D. Schau
Erik Haas
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York 10036-6710

**K-V Pharmaceutical Company**
Robert S. Litt
Justin Antonipillai
Michael Rinaldi
Arnold & Porter
Thurman Arnold Building
555 Twelfth Street, NW
Washington, DC  20004-1206

**Immunex Corporation**
W. Stancil Starnes
Starnes & Atchison LLP
7th Floor
100 Brookwood Place
Post Office Box 598512
Birmingham, AL  35259-8512

**IVAX Corporation**
**IVAX Pharmaceuticals, Inc.**
George W. Walker, III
Copeland, Franco, Screws & Gill, P.A.
Montgomery, AL 36101-0347

**IVAX Corporation**
**IVAX Pharmaceuticals, Inc.**
Robert F. Northcutt
James H. McLemore
Capell & Howard, P.C.
150 South Perry Street [36104]
Post Office Box 2069
Montgomery, Alabama 36102-2069
Telephone: (334) 241-8000
Telecopier: (334) 323-8888

**K-V Pharmaceutical Company**
Robert Eckinger
Michael Wade
Adams & Reese LLP
Concord Center
2100 Third Avenue North
Suite 1100
Birmingham, Alabama 35203

24

**King Pharmaceuticals, Inc.**
**Monarch Pharmaceuticals, Inc.**
Gary Greenberg
Louis J. Scerra, Jr.
Greenberg Traurig, LLP
One International Place
Boston, MA  02110

**King Pharmaceuticals, Inc.**
**Monarch Pharmaceuticals, Inc.**
Sam Blair
John Starnes
Baker Donelson Bearman Caldwell &
Berkowitz, P.C.
165 Madison Avenue
Suite 2000
Memphis, TN 38103

**MedImmune, Inc.**
Steve Umin
James Hayes
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC  20005-5901

**MedImmune, Inc.**
Lee H. Copeland
Copeland, Franco, Screws & Gill, P.A.
Post Office Box 347
Montgomery, Alabama  36101-0347

**Merck & Co., Inc.**
John Townsend
Robert Reznick
Robert Funkhouser
Hughes Hubbard & Reed LLP
1775 I Street N.W.
Washington, DC  20006-2401

**Merck & Co., Inc.**
Robert C. Brock
Robert Huffaker
Rushton, Stakely, Johnson & Garrett,
P.A.
P.O. Box 270
Montgomery, AL  36101-0270

**Mylan Laboratories Inc.**
**Mylan Pharmaceuticals Inc.**
**UDL Laboratories, Inc.**
Gary Greenberg
Louis J. Scerra, Jr.
Greenberg Traurig, LLP
One International Place
Boston, MA  02110

**Mylan Laboratories Inc.**
**Mylan Pharmaceuticals Inc.**
**UDL Laboratories, Inc.**
David Long-Daniels
Greenberg Traurig, LLP
3290 Northside Parkway, Suite 400
Atlanta, Georgia  30327

**Novartis Pharmaceuticals**
**Corporation**
William D. Coleman
James N. Walter, Jr.
Capell & Howard, P.C.
Post Office Box 2069
Montgomery, Alabama  36102-2069

**Novo Nordisk**
F.M. Haston, III
Bradly, Arant LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama  35203

**Organon Pharmaceuticals USA**
Edward S. Sledge, III
Archibald T. Reeves, IV
McDowell, Knight, Roedder & Sledge,
LLC
Post Office Box 350
Mobile, Alabama  36601

**Novartis Pharmaceuticals**
**Corporation**
Saul Morgenstern
Jane W. Parver
Mark Godler
Kay Scholer LLP
425 Park Avenue
New York, New York  10022-3598

**Novo Nordisk**
Richard Raskin
Michael Doss
Sidley Austin Brown & Wood
Bank One Plaza
10 South Dearborn Street
Chicago, Illinois  60603

**Organon Pharmaceuticals USA**
William Campos
David Covey
Sedgwick, Detert, Moran & Arnold LLP
125 Broad Street
New York, New York   10004

**Par Pharmaceutical, Inc.**
Richard Cooper
Paul K. Dueffert
Thomas J. Roberts
Catherine Levy
Williams & Connolly LLP
725 12th Street, NW
Washington, DC  20005

**Par Pharmaceutical, Inc.**
George W. Walker
Copeland, Franco, Screws & Gill, P.A.
Post Office Box 347
Montgomery, Alabama  36101-0347

**Pfizer Inc.**
**Agouron Pharmaceuticals, Inc.**
**Pharmacia Corporation**
**Pharmacia & Upjohn Company**
**G.D. Searle, LLC**
John C. Dodds
Kimberly K. Heuer
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, Pennsylvania  19103

**Purdue Pharma, L.P.**
Lori A. Schechter
Morrison & Foerster LLP
425 Market Street
San Francisco, California  94105-2482

**Roche Laboratories, Inc.**
Kevin Sullivan
Grace Rodriguez
John Shakow
King & Spalding LLP
1700 Pennsylvania Avenue, N.W.
Washington, DC  20006-4706

**Pfizer Inc.**
**Agouron Pharmaceuticals, Inc.**
**Pharmacia Corporation**
**Pharmacia & Upjohn Company**
**G.D. Searle, LLC**
Scott Stempel
Morgan Lewis & Bockius, LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004

**Pfizer Inc.**
**Agouron Pharmaceuticals, Inc.**
**Pharmacia Corporation**
**Pharmacia & Upjohn Company**
**G.D. Searle, LLC**
Philip H. Butler
George R. Parker
Bradley, Arant, Rose & White LLP
Alabama Center for Commerce Bldg.
401 Adams Avenue, Suite 780
Montgomery, Alabama  36104

**Purdue Pharma, L.P.**
Harlan Prater
Lightfoot, Franklin & White, L.L.C.
The Clark Building
400 20th Street North
Birmingham, Alabama  35203-3200

**Roche Laboratories, Inc.**
Edward S. Sledge, III
Archibald T. Reeves, IV
McDowell, Knight, Roedder & Sledge,
LLC
Post Office Box 350
Mobile, Alabama  36601

**Sandoz, Inc.**
Wayne Cross
Michael Gallagher
Brendan Woodard
White & Case
1155 Avenue of the Americas
New York, New York  10036-2787

**Sanofi-Synthelabo Inc.**
Kevin Sullivan
Grace Rodriguez
John Shakow
King & Spalding LLP
1700 Pennsylvania Avenue, N.W.
Washington, DC  20006-4706

**Schering-Plough Corporation**
**Warrick Pharmaceuticals**
**Corporation**
Brien T. O'Connor
John T. Montgomery
Ropes & Gray LLP
One International Place
Boston, MA  02110

**Schering-Plough Corporation**
**Warrick Pharmaceuticals**
**Corporation**
John A. Henig, Jr.
Copeland, Franco, Screws & Gill, P.A.
P.O. Box 347
Montgomery, AL 36101-0347

**Sandoz, Inc.**
C. Clay Torbert, III
Capell & Howard, P.C.
150 South Perry Street
Montgomery, Alabama  36104

**Sanofi-Synthelabo Inc.**
Richard H. Gill
Copeland, Franco, Screws & Gill, P.A.
Post Office Box 347
Montgomery, Alabama  36101-0347

**Schering-Plough Corporation**
**Warrick Pharmaceuticals**
**Corporation**
J. Steven Baughman
Christopher May
Ropes & Gray LLP
One Metro Center
700 12th Street N.W., Suite 900
Washington, D.C. 20005

**SmithKline Beecham Corporation**
**d/b/a GlaxoSmithKline**
Joseph P. Babington
HELMSING LEACH HERLONG
NEWMAN & ROUSE
150 Government St.
Suite 2000
Mobile, Alabama 36602
Telephone: (251) 432-5521
Facsimile: (251) 432-0633

**SmithKline Beecham Corporation
d/b/a GlaxoSmithKline**
Mark H. Lynch
Geoffrey E. Hobart
Ronald G. Dove, Jr.
COVINGTON & BURLING
1201 Pennsylvania Avenue NW
Washington, D.C.  20004
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

**SmithKline Beecham Corporation
d/b/a GlaxoSmithKline**
Frederick G. Herold
DECHERT LLP
1117 California Avenue
Palo Alto, CA 94304
Telephone: (650) 813-4930
Facsimile: (650) 813-4848

**SmithKline Beecham Corporation
d/b/a GlaxoSmithKline**
Thomas H. Lee II
DECHERT LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103-2793
Telephone: (215) 994-2994
Facsimile: (215) 994-2222

**SmithKline Beecham Corporation
d/b/a GlaxoSmithKline**
Mark D. Seltzer
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
Telephone: (617) 523-2700
Facsimile: (617) 523-6850

**Takeda Pharmaceuticals North
America, Inc.**
Robert Stauffer
Anthony C. Porcelli
Jenner & Block LLP
1 IBM Plaza
Suite 4200
Chicago, Illinois  60611

**Takeda Pharmaceuticals North
America, Inc.**
Joseph C. Espy, III
Melton, Espy & Williams
Post Office Drawer 5130
Montgomery, Alabama  36103

**TAP Pharmaceutical Products, Inc.**
Toni Ann Citera
Jones Day
222 East 41st Street
New York, New York  10017-6702

**TAP Pharmaceutical Products, Inc.**
James R. Daly
Jeremy P. Cole
Jones Day
77 West Wacker Drive, Suite 3500
Chicago, Illinois  60601

**TAP Pharmaceutical Products, Inc.**
Betsy Collins
Leah Poyntner
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia  30309-3424

**TEVA Pharmaceutical Industries LTD.**
W. Joseph McCorkle, Jr.
Balch & Bingham, LLP
2 Dexter Avenue
Montgomery, AL  36104

**Watson Pharmaceuticals, Inc.**
**Watson Laboratories, Inc.**
**Watson Pharma, Inc.**
Douglas B. Farquhar
Hyman, Phelps & McNamara, P.C.
700 Thirteenth Street, N.W., Suite 1200
Washington, DC  20005

**Wyeth Pharmaceuticals, Inc.**
**Wyeth, Inc.**
Craig Holden
Kelly Davidson
Ober, Kaler, Grimes & Shriver
120 East Baltimore Street
Baltimore, Maryland  21202-1643

**TEVA Pharmaceutical Industries LTD.**
Elizabeth I. Hack
Elizabeth Finberg
Sonnenschein Nath & Rosenthal LLP
1301 K Street, NW
Suite 1600 East Tower
Washington, DC 20005

**TEVA Pharmaceutical Industries LTD.**
F. Inge Johnstone
Balch & Bingham LLP
1710 6th Avenue North
P.O. Box 306
Birmingham, AL  35201-0306

**Watson Pharmaceuticals, Inc.**
**Watson Laboratories, Inc.**
**Watson Pharma, Inc.**
Steven F. Casey
Balch & Bingham LLP
Post Office Box 306
Birmingham, Alabama  35201-0306

**Wyeth Pharmaceuticals, Inc.**
**Wyeth, Inc.**
Maibeth J. Porter
Lee E. Bains, Jr.
Maynard, Cooper & Gale, P.C.
2400 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama  35203-2618

**Wyeth Pharmaceuticals, Inc.**
**Wyeth, Inc.**
Peck Fox
Maynard, Cooper & Gale, P.C.
201 Monroe Street
Suite 1650
Montgomery, Alabama  36104-3720

/s/ Lisa W. Borden
One of the Attorneys for Defendants
King Pharmaceuticals, Inc. and
Monarch Pharmaceuticals, Inc.

# EXHIBIT A



10694707
Mar 1 2006
4:24PM

# IN THE CIRCUIT COURT OF
## MONTGOMERY COUNTY, ALABAMA

STATE OF ALABAMA,          )
                             )
Plaintiff,                 )
                             )
v.                          )       CV –05-219
                             )
ABBOTT LABORATORIES, INC.; et al.,   )
                             )
Defendants.            )

### MOTION TO DISMISS COUNTERCLAIM OF
### DEFENDANTS KING PHARMACEUTICALS, INC.
### AND MONARCH PHARMACEUTICIALS, INC.

Plaintiff, State of Alabama, hereby moves this Court to dismiss the Counterclaim of Defendants King Pharmaceuticals, Inc. and Monarch Pharmaceuticals, Inc. (collectively referred to as "King") pursuant to Rules 12(b)(6) and 13(d) of the Alabama Rules of Civil Procedure, as well as the Alabama Constitution.  As further grounds for said Motion, the State shows unto the Court as follows:

### STANDARD OF LAW

Rule 12(b)(6) of the Alabama Rules of Civil Procedure states in pertinent part as follows:

> Every defense, in law or in fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim or third party claim, shall be asserted in the responsive pleading if one is required, except that the following defenses may at the option of the pleader be made by motion:...(6) failure to state a claim upon which relief can be granted.

A Complaint can be dismissed if it appears that the Plaintiff can prove no set of facts in support of the claim which would entitle Plaintiff to relief upon some cognizable law. *Barton v. Alabama Electric Cooperative*, 487 So.2d 884 (Ala. 1986).



**EXHIBIT**

_A_

Rule 13(d) of the Alabama Rules of Civil Procedures states as follows:

> *Counterclaim against the State of Alabama.* These rules shall not be construed to enlarge beyond the limits now fixed by law the right to assert counterclaims or to claim credits against the State of Alabama or an officer or agency thereof.

## LEGAL ARGUMENT

### The State of Alabama Enjoys Complete Sovereign Immunity, Thereby Barring Any Recovery by King From The Counterclaim.

It is well settled under Alabama law that the State of Alabama is immune from suit. "The State is immune from suit and its immunity cannot be waived by the legislature or by any other State Authority." *Druid City Hospital Board v. Epperson*, 378 So.2d 696 (Ala. 1979). In *Liberty National Life Insurance Company v. University of Alabama Health Services Foundation, P.C.*, 881 So.2d 1013 (Ala. 2003), the Alabama Supreme Court analyzed the State's immunity as follows:

> Recently, this Court restated long-settled principles concerning the immunity of the State of Alabama from suit and the precedent, firmly supported by the doctrine of stare decisis, which holds that an action contrary to the State's immunity is an action over which the courts of this State lack subject matter jurisdiction. The long-standing legal principle of state sovereign immunity is written into Alabama's Constitution. Article I, § 14, Alabama Constitution of 1901, provides that the State of Alabama shall never be made a defendant in any court of law or equity. Under the provision, the State and its agencies have absolute immunity from suit in any court. Neither the State nor the Alabama State Port Authority has the power to waive that immunity. It is familiar law in this state that § 14 wholly withdraws from the Legislature, or any other state authority, the power to give consent to a suit against the state. This Court has recognized the almost invincible wall of the state's immunity as established by the people through their Constitution. Therefore, it is clear that neither the Legislature nor the State Docks had the power to waive, either expressly or impliedly, the state's immunity under § 14 and thereby consent to a

damages action against the state.  We have held that the circuit court is without jurisdiction to entertain a suit against the State because of Sec. 14 of the Constitution. And this Court has said that it will take notice of the question of jurisdiction at any time or even ex mero motu.  Therefore, it appears that a trial court or appellant court should, at any stage of the proceedings, dismiss a suit when it becomes convinced that it is a suit against the State and contrary to Sec. 14 of the Constitution.  This constitutionally guaranteed principle of sovereign immunity, acting as a jurisdictional bar, precludes a court from exercising subject-matter jurisdiction. Without jurisdiction, a court has no power to act and must dismiss the action. The question of jurisdiction is always fundamental, and if there is an absence of jurisdiction over either the person, or the subject matter, a court has no power to act, and jurisdiction over the subject matter cannot be created by waiver or consent.

*Liberty National Life Insurance Company v. University of Alabama Health Services Foundation, P.C.*, 881 So.2d at 1026-1027 (internal citations omitted).

King's counterclaim is clearly against the State of Alabama and the State of Alabama only[1].  Accordingly, the State is entitled to sovereign immunity.  Furthermore, none of the counts set forth in the Counterclaim state a claim under which relief can be granted to King.

Under Rule 13(d) of the Alabama Rules of Civil Procedure, it is clear that a counterclaim against the State is disallowed.  The Alabama Supreme Court has long held that the State cannot be made a Defendant in a counterclaim.  "Under Sec. 14 of the Constitution of Alabama of 1901, the State cannot be made a defendant in any court of law or equity in this provision of the Constitution is as applicable to cross bills seeking affirmative relief against the State as to original bills."  *State v. Gill*, 29 Ala. 77, 66 So.2d 141 (1953).   "The State is as immune from counterclaims seeking affirmative relief as it

---

[1]    See Answer, Defenses and Counterclaim of Defendant's King Pharmaceuticals, Inc. and Monarch Pharmaceuticals, Inc to the State of Alabama's Second Amended Complaint at page 46, "King incorporates its answer and defenses as set forth above and submits the following for its counterclaim against the State of Alabama."

is from original complaints." *Virginia Sarradett v. University of South Alabama Medical Center*, 484 So.2d 426, 427 (Ala. 1986, citing State v. Gill, supra; *Alabama Girls Industrial School v. Reynolds*, 143 Ala. 579, 42 So.2d 114 (1904).)

## CONCLUSION

King's counterclaim names only the State of Alabama as a Defendant. Pursuant to well-established case law, the State of Alabama is immune from suit. This immunity clearly applies to counterclaims. Accordingly, the King counterclaim is due to be dismissed because it fails to state a claim upon which relief can be granted.

Jere L. Beasley (BEA020)
W. Daniel "Dee" Miles, III (MIL060)
Clinton C. Carter (CAR112)
Deputy Attorneys General
**BEASLEY, ALLEN, CROW,**
**METHVIN, PORTIS & MILES, P.C.**
Post Office Box 4160 (36103-4160)
272 Commerce Street
Montgomery, Alabama 36104
Telephone:   (334) 269-2343

Caine O'Rear III (ORE003)
Windy C. Bitzer (BIT005)
Deputy Attorneys General
**HAND ARENDALL, L.L.C.**
Post Office Box 123
Mobile, Alabama 36601
Telephone:  (251) 432-5511

Roger L. Bates (BAT006)
**HAND ARENDALL, L.L.C.**
1200 Park Place Tower
2001 Park Place North
Birmingham, Alabama 35203
Telephone:  (205) 324-4400

4

## CERTIFICATE OF SERVICE

I hereby certify that I have on this the 1st of March, 2006, electronically served a true and correct copy of the foregoing pleading on counsel of record by transmission to LNFS, pursuant to Case Management Order No. 2.

_____
OF COUNSEL

# EXHIBIT B

B CJB1 706102 v1
2900506-000001 03/31/2006

10706249

Mar 2 2006
4:26PM

# IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

STATE OF ALABAMA,     )
             )
  Plaintiff,      )
             )
v.            )  CV 2005-219
             )
ABBOTT LABORATORIES, INC.; et al., )
             )
  Defendants.     )

## OPPOSITION OF DEFENDANTS KING PHARMACEUTICALS, INC. AND MONARCH PHARMACEUTICALS, INC. TO PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIM

Defendants King Pharmaceuticals, Inc. and Monarch Pharmaceuticals, Inc. (collectively "King"), submit the following in opposition to the State of Alabama's motion to dismiss King's Counterclaim:

In its motion, the State argues that it is entitled to the absolute protection of sovereign immunity. While it is true that Sec. 14 of the Alabama Constitution of 1901 provides that "the State of Alabama shall never be made a defendant in any court of law or equity," and that Alabama's courts have observed that "the wall of immunity erected by Sec. 14 is *nearly impregnable* . . . ." *E.g., Alabama A&M Univ. v. Jones*, 895 So.2d 867, 872-73 (Ala. 2004)(emphasis added), there are indeed limited exceptions to the sovereign immunity of the State.

In *Aland v. Graham*, 250 So.2d 677 (Ala. 1971), the Court listed four general categories of cases which are not barred by Sec. 14:

 (a) Actions brought to compel State officials to perform their legal duties;

 (b) Actions brought to enjoin State officials from enforcing an unconstitutional law;

 (c) Actions to compel State officials to perform ministerial acts; and



EXHIBIT

B

(d) Actions brought under the Declaratory Judgments Act, seeking construction of a statute and how it should be applied to a given situation.

The *Aland* court expressly recognized that this list might not be exhaustive. Other opinions indicate that an action for repayment of moneys erroneously paid to the State is not barred by Sec. 14.[1]   For example, in *Alabama Dept. of Environmental Mgmt. v. Town of Lowndesboro*, 2005 WL 791239 (Ala. Civ. App. 2005), Presiding Judge Crawley, concurring specially, expressly recognized that "[i]n appropriate circumstances, Sec. 14 does not bar a proceeding against the State for the recovery of moneys that do not belong to the State . . . ." A number of cases have allowed suits seeking such repayments. In *Dept. of Industrial Relations v. West Boylston Mfg. Co.*, 42 So. 2d 787 (Ala. 1949), the Alabama Supreme Court permitted recovery of a refund of contributions to the unemployment-compensation fund. *See also, Glass v. Prudential Ins. Co. of America*, 22 So. 2d 13 (1945)(statute requiring that taxes paid under protest be held in trust pending determination of their legality did not violate Sec. 14); *Ex parte McCurley*, 412 So.2d 1236 (Ala. 1982)(sovereign immunity did not bar a judgment requiring the State to return fines and costs that it had imposed on a criminal defendant after her conviction was reversed on appeal); *Horn v. Dunn*, 79 So. 2d 11 (1955)("No judgment against the State was sought or granted.  True, the decree may ultimately touch the State treasury.  Yet, the State treasury suffers no more than would, had the Commissioner initially performed his bounded duty.)

The Counterclaim asserted by King here is precisely the type of action permitted by the cases cited above; that is, an action to recover moneys that have been erroneously paid to the

---

[1]      In the *ADEM* case, the court declined to allow an award of attorneys' fees.  The concurrence distinguished that situation from the cited cases, noting that "the award of attorney fees in this case, [] would be paid from the State treasury and not from funds that were improperly collected . . . ." and would "result in the type of direct affect on the financial status of the state treasury that is prohibited by Sec. 14."

2

State by King. As set forth in the Counterclaim, King has overpaid Medicaid rebates to the State since the first quarter of 2003. Those funds have never rightfully belonged to the State, and should be returned to King. Because King does not seek "damages" or other remuneration to be paid from the State's treasury, but instead seeks only the return of funds that rightfully belong to it, King's Counterclaim is not barred.


LISA W. BORDEN (WRI-027)
SAM BERRY BLAIR

Attorneys for Defendants
King Pharmaceuticals, Inc.
Monarch Pharmaceuticals, Inc.

OF COUNSEL:

BAKER, DONELSON, BEARMAN
      CALDWELL & BERKOWITZ, P.C.
1600 SouthTrust Tower
Birmingham, Alabama 35203
(205) 328-0480


BAKER, DONELSON, BEARMAN
      CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue
Suite 2000
Memphis, TN 38103

## Certificate of Service

I hereby certify that the foregoing Opposition of Defendants King Pharmaceuticals, Inc. and Monarch Pharmaceuticals, Inc. to State's Motion to Dismiss Counterclaim has been served upon all counsel of record via electronic transmission to LNFS, pursuant to the Court's Case Management Order No. 2, this ____ day of March, 2006.


_____

Attorney for Defendants

# EXHIBIT C

IN THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR MONTGOMERY COUNTY
MONTGOMERY, ALABAMA


STATE OF ALABAMA,              )
                              )
        Plaintiffs,            )
                              )
vs.                           )      CV-2005-219-PR
                              )
ABBOTT LABORATORIES,          )
INC., et al.                  )
                              )
        Defendants.           )


TRANSCRIPT OF PROCEEDINGS
FRIDAY, MAY 19, 2006
COURTROOM 4-C
BEFORE THE HONORABLE CHARLES PRICE
PRESIDING CIRCUIT COURT JUDGE

<u>APPEARANCES</u>:

For the Plaintiffs:     CLINTON C. CARTER
                        ROGER BATES
                        DEE MILES
                        Attorneys at Law


For the Defendants
King Pharmaceticals
and Monarch
Pharmaceuticals:        SAM BERRY BLAIR
                        LISA W. BORDEN
                        Attorneys at Law


For the Defendant
Pfizer Company:         PHILIP H. BUTLER
                        Attorney at Law


For the Defendant
Merck & Company:        F. CHADWICK MORRISS
                        Attorney at Law


Denise L. Gordon
Official Court Reporter
(334) 832-1330

EXHIBIT

C

1          (The following proceedings occurred

2          before the Honorable Charles Price,

3          Presiding Circuit Court Judge, in regard

4          to the above-styled cause, commencing on

5          Friday, May 19, 2006:)

6     THE COURT:  State of Alabama versus Abbott

7  Laboratories.  Motion to dismiss.

8     State your name, starting over here, and who

9  you represent.

10    MR. BLAIR:  Sam Blair.  I'm from Memphis,

11  Tennessee.

12    THE COURT:  You represent --

13    MR. BLAIR:  And we represent King with Lisa

14  Borden.

15    THE COURT:  Okay.  King.  All right.

16    MR. CARTER:  Good morning, Your Honor.  Clint

17  Carter with Beasley Allen for the State.

18    THE COURT:  Okay.

19    MR. BATES:  Good morning, Your Honor.  Roger

20  Bates with Hand Arendall for the state.

21    THE COURT:  All right.

22    MR. MILES:  Dee Miles, Beasley Allen for the

23  State.

24    THE COURT:  Who is representing Monarch?

25    MR. BLAIR:  We do.

3

```
 1              THE COURT:  Okay.  You're representing both
 2       King and Monarch?
 3              MR. BLAIR:  Yes, Your Honor.
 4              THE COURT:  All right.  You have a motion to
 5       dismiss and a counterclaim.  All right.
 6              State your motion.
 7              MR. BLAIR:  It's actually our counterclaim
 8       and their motion.
 9              THE COURT:  Okay.  Your motion.
10              MR. CARTER:  That's right, Judge.  This case
11       is in the posture where King has filed a
12       counterclaim to our complaint.  We have filed a
13       motion to dismiss King's counterclaim.
14              As the Court is aware, this case arises from
15       the State's initial filing of a fraud case against
16       79 pharmaceutical manufacturers for the
17       intentional inflation of the average wholesale
18       price.  In essence, the case from the State's side
19       is that the defendants have intentionally
20       misrepresented a price there which the State
21       relied upon, causing the Alabama State Medicaid
22       agency to overpay.
23              In response to that, King filed a
24       counterclaim.  The counterclaim on its face
25       without question is against the State of Alabama.
```

4

```
1        Our threshold defense and our threshold reason for

2    this Court to dismiss the counterclaim is that it

3    is a direct action against the State.  And as this

4    Court is well-aware, Section 14 of the Alabama

5    Constitution precludes any and all direct actions

6    against the State for money.  So from the

7    threshold issue, we say the counterclaim is due to

8    be dismissed because it's in violation of Section

9    14 of the Constitution.

10        Now, the Alabama Supreme Court has said that

11   this bar on filing suits against the State is

12   nearly impregnable, which I take to mean that

13   King's argument is the almost pregnant argument

14   because there are some few, limited exceptions to

15   when the State can be sued.  And they're set forth

16   in the briefs, and they are this:

17        Actions brought to compel state officials to

18   do their official duties.  The counterclaim does

19   not fall under those parameters.

20        Actions brought to enjoin State officials

21   from enforcing an unconstitutional law.  No

22   allegation is made for that exception in King's

23   counterclaim.

24        Actions to compel State officials to perform

25   ministerial acts is an exception.  No allegation
```

5

```
 1        for that is made in King's counterclaim.
 2             And actions for declaratory judgments are
 3        listed.  No action for that is mentioned in King's
 4        counterclaim.
 5             So as a threshold issue, it's a direct action
 6        against the State.  It's barred by the
 7        constitution.  The Alabama Supreme Court has
 8        recognized four narrow exceptions, none of which
 9        apply to King's counterclaim.
10             So what King is asking this Court to do is
11        either overrule the Alabama State Constitution or
12        judicially create a new exception to the Alabama
13        State Constitution.  And we submit to this Court
14        based on the case law in our brief that this is
15        plain and simple, a direct cause of action against
16        the State for money, which is precluded by the
17        state constitution.
18             The fact that it's a counterclaim, Judge,
19        does not at all change the analysis.
20             THE COURT:  All right.
21             MR. CARTER:  The case law submitted in our
22        brief says it's very clear for a direct action or
23        counterclaim, it's barred by the State.
24             THE COURT:  All right.  What says the
25        defense?
```

6

```
 1          MR. BLAIR:  We're going to break up the
 2     argument, Your Honor.  I'm going to tell you the
 3     factual background so you can understand what our
 4     claim is about.  The factual background is real
 5     simple; it's this:
 6          King is requested to pay rebates by the
 7     State.  The State actually pays reimbursements to
 8     the pharmacy when they sell a drug.  And I want to
 9     try to go through an example so you can
10     understand.  Say a pill costs a dollar.  We sell
11     it to a wholesaler, and they probably paid -- they
12     pay 98 cents.  They get a 2 percent discount.
13     The pharmacist buys that drug, tells the State,
14     "We sold this drug to a Medicaid beneficiary."
15     The State pays the pharmacist for that
16     reimbursement, WAC plus 9.2 percent or AWP minus
17     10.
18          Now, they talk about this AWP fraud case, but
19     the State has the option to pay either way.  And
20     actually, Alabama pays WAC plus 9.2.  So in other
21     words, they pay a dollar plus 9.2 cents.  So they
22     pay a dollar and nine cents.
23          Then they ask King to pay a rebate.  And
24     that's what this counterclaim is about.  They ask
25     us to pay a rebate, and the rebate is typically
```

7

1     calculated as average manufacturer price, which

2     would be very simply, the 2 percent discount.  So

3     it would be 98 cents.  You have to multiply 15.1

4     percent times that.  So roughly 15 cents would be

5     a normal rebate.  So King would pay the State 15

6     cents.

7          Except in this case, King has had to pay a

8     lot more.  And, in fact, sometimes more than the

9     reimbursement amount.  King made some errors in

10    its -- actually, it's in their complaint -- they

11    made some errors in their rebate calculations.

12         One of the errors they made was just a --

13    I'll say, it was a dumb error.  They sold to U.S.

14    Surgical -- excuse me -- U.S. Prison Services

15    drugs.  And they thought they were a governmental

16    entity.  And so they sold them drugs.  And these

17    are round numbers; it's jut by way of example.

18    But instead of selling them for a dollar or 98

19    cents, they would sell the drug for 50 cents.

20    They thought they were a governmental entity.

21         Well, there are two ways to calculate a

22    rebate.  One is 15 percent AMP, which would in

23    that example would produce roughly a 15 percent

24    rebate.

25         Or another way is that you would take the AMP

8

1    and subtract the best price so that you would sell

2    to a commercial company.  Well, King didn't think

3    U.S. Prison Services was a commercial company, so

4    they didn't include that in their calculation.

5        In fact, it is a commercial company; it's not

6    a governmental entity.  So their best price is 50

7    cents.  So 98 cents minus 50 cents.  And the

8    rebate should be 48 cents, not 15 cents.

9        So the government investigated King.  King

10   has agreed to a settlement that at the time of our

11   answer and counterclaim wasn't complete, but it is

12   now complete.  Our settlement produced -- get

13   this -- a

14   hundred-and-twenty-something-million-dollar

15   payment during this investigation.  So we have two

16   things to talk about; that plus the next three

17   years.  That settlement represents payments from

18   1994 to -- through 2002.

19       Not only did we pay $120 something million,

20   but actually the calculation was, we underpaid $60

21   something million.  The agreement was, we had to

22   pay double.  The difference in 15 cents and 48

23   cents is 33 cents.  We pay double, so we paid an

24   extra 66 cents for this drug from 1994 to 2002 to

25   everybody, including the State of Alabama.

9

1      We have an agreement with the State of

2   Alabama that Troy King signed, and it says, among

3   other things, that we're paying this money, and

4   the State gets 2.5 -- 2.4 something, almost $2.5

5   million.  From the first quarter of 2003 through

6   2005, while they were being investigated, King

7   goes, We're not to going to make anymore mistakes,

8   so we're going to overpay the rebates to all the

9   states, including Alabama."  And that's what the

10  counterclaim is about.

11      And we admittedly overpaid it.  And the

12  statement -- and the CMS, the federal arm of HSS

13  that runs the Medicaid-Medicare program, they know

14  we overpaid.  So in the settlement agreement it

15  says that King has used a methodology that

16  resulted in -- It says, King is overpaying its

17  quarterly rebates to Medicaid and to state rebate

18  programs.  "Nothing in this agreement shall limit

19  King's right to recover those overpayments from

20  the State."

21      This is the agreement with Alabama and King.

22  So there's no doubt we've overpaid for the last

23  three years.  No doubt whatsoever.  And we're

24  talking about maybe substantial money.  Sometimes

25  our rebates -- and I know this is hard to

10

1    believe -- our rebates exceed the entire cost of

2    their reimbursement.  Their cases that they paid

3    too much, we've already paid them more in these 3

4    years for some drugs than they paid.  They made

5    money on these drugs.

6         So with that factual background, I wanted you

7    to realize there's no doubt we've overpaid.  And

8    in this agreement that we didn't really have too

9    much say in what was put in the agreement, it's

10   acknowledged that we overpaid for these last three

11   years.  And those are the overpayments we want to

12   get back.

13        And I think Ms. Borden is going to talk about

14   the law to give you -- I wanted to give you the

15   factual background.  She's going to talk about the

16   law.

17        MS. BORDEN:  The State argues that this claim

18   is barred by sovereign immunity.  And, certainly,

19   we recognize that as Mr. Carter said in almost

20   every case, the State is immune from suit.

21        The four exceptions that he mentioned are

22   certainly not the sole and only exceptions that

23   the court has recognized exist.  In fact, the case

24   from which those exceptions came -- and they're

25   cited in our opposition to the motion -- is the

1    case of *Aland v. Graham*, in which the Alabama

2    Supreme Court considered a case and decided that

3    those four exceptions which were the only ones

4    that might arguably had applied in that case,

5    didn't apply.  But what it said was that without

6    professing to cover every situation that might

7    have arisen, there are four general categories.

8    And it listed those categories that Mr. Carter

9    mentioned.

10          But in a number of other cases, the court has

11    also recognized that there are other exceptions.

12    And the particular one that we're concerned with

13    here is that a number of cases have recognized

14    that where for some reason there has been an

15    erroneous payment of money to the State, an

16    overpayment, a payment that shouldn't have

17    occurred at all, then the State is bound to give

18    that money back.  And those claims are not barred

19    by sovereign immunity.

20          And as mentioned in our opposition, for

21    example, in a recent case, the *Alabama Department*

22    *of Environmental Management v. the Town of*

23    *Lowndesboro*, again, a case in which the court

24    decided that the particular exceptions did not

25    apply in that case, the court in a concurrence

12

1  discussed the fact that sovereign immunity does

2  not bar a proceeding against the State for moneys

3  that do not belong to the State or that have not

4  been properly acquired by the State.

5       And the court in concurrence there listed a

6  number of cases that support that proposition.  In

7  addition, there's a -- there was a case cited in

8  our opposition, *Ex parte McCurley*, a fairly old

9  case, 1982, in which the complainant was convicted

10  of selling a drug and paid a fine and court costs.

11  Later on on appeal, it was determined that the

12  drug that she was convicted of selling hadn't

13  actually been classified as a controlled

14  substance, and her conviction was overturned.

15       And she said, Well, now I want my fine and my

16  court costs back because I was wrongly convicted.

17  The State said, No, no.  You can't claim that

18  because we're immune from those kinds of claims.

19  And what the court wound up saying was, No,

20  immunity doesn't apply here because this is simply

21  an erroneous payment.  It's not money that's

22  coming from the treasury.  It's not money that is

23  making a direct effect on the treasury as those

24  sovereign immunity cases say is barred.  It's

25  simply money that has come into possession of the

```
1     State erroneously, and there's no bar --

2          THE COURT:  All right.

3          MS. BORDEN:   -- to the State being required

4     to give that money back.

5          THE COURT:  Mr. Carter, if the claim -- if

6     the counterclaim is to recover money that they

7     claim have been overpaid to the State, that's not

8     a suit against the State for money on a complaint

9     saying that you have caused some injury or some

10    tort of some contract.  It's just a claim that

11    you're overpaid, we have a right for a refund.

12         MR. CARTER:  Except that there's a very

13    specific administrative remedy that must be

14    exhausted by the manufacturers before they can

15    ever bring a claim for it.  And that, Judge, is

16    under federal law.  The important thing that --

17         THE COURT:  Federal law?

18         MR. CARTER:  Federal law, exactly.  The

19    Medicare federal law.  Everything they're talking

20    about, their ability to get moneys back for

21    rebate overpayment --

22         THE COURT:  No, no no.  If they have overpaid

23    the State of Alabama by erroneously calculating or

24    miscalculating some rebate or refunds, why -- how

25    does federal law and the federal Medicaid Act
```

14

1    apply to simply claims that we overpaid you,

2    whether they can prove it or not, and we're

3    entitled to the money back?

4    MR. CARTER:  Well, there's a big difference

5    between what our lawsuit is about and rebates.

6    Our lawsuit has absolutely nothing to do with

7    rebates.  We don't make any claim for rebates.

8    So when you talk about AWP and WAC versus

9    rebates, you're already mixing apples and oranges.

10    THE COURT:  So what you're saying -- You're

11    saying their counterclaim should not be part of

12    this suit.  If they have a claim against the State

13    of Alabama for the rebate, they can just file a

14    lawsuit against the State of Alabama and make that

15    claim, based upon the agreement that he said --

16    the lawyer said Troy King signed.

17    MR. CARTER:  Except that they can't even file

18    a lawsuit because right here, Judge, is a sample

19    rebate agreement.  May I approach?

20    THE COURT:  Hold on a minute.  I have to take

21    a call.

22    (There was a brief interruption of the

23    proceedings.)

24    MS. BORDEN:  Judge, may I --

25    THE COURT:  Let him finish.

15

```
 1        MS. BORDEN:  I wanted to object to it just
 2   for the record.
 3        THE COURT:  All right.  On what grounds?
 4        MS. BORDEN:  It hasn't been pled.  Their
 5   motion is based solely on sovereign immunity and
 6   failure to state a claim.  They've not pled
 7   anything about this rebate agreement.
 8        THE COURT:  All right.
 9        MS. BORDEN:  It's not in the record.
10        THE COURT:  Overruled.  Go ahead.
11        MR. CARTER:  Judge, let me approach and show
12   you two things, if I may.  One is the language of
13   the counterclaim itself, which sets forth -- they
14   cite right there the federal Medicaid law.
15        So the agreement between Alabama State
16   Medicaid and King Pharmaceuticals with respect to
17   the rebate agreement is governed by federal law.
18   Specifically, it's governed by a rebate agreement.
19        And I'd like to supplement the record and
20   have this rebate agreement introduced into
21   evidence.  But I want to show it to the Court.
22   This is a sample.  It applies to all rebate
23   agreements between Alabama Medicaid and the
24   pharmaceutical companies that pay rebates.
25        If you look at the rebate, Judge, on page 7,
```

1    Section V, the agreement very clearly sets forth a

2    dispute resolution process.  See where it says

3    Medicaid Utilization Information?  Mr. Blair was

4    talking about, "Well, we paid on the wrong thing,

5    we should have paid for this.  We didn't pay for

6    that."  All of that is utilization.  Utilization

7    just means how much drugs are being bought and

8    used.  So when they pay a rebate, it's based on

9    the utilization.

10       And this agreement says, manufacturer, if you

11   have a disagreement or a complaint about how the

12   rebate was calculated, you've got to go through

13   this very specific dispute resolution process.

14   There's no evidence that the dispute resolution

15   process was followed in this case.

16       So it's our position that if you think the

17   State of Alabama owes you money for rebates, then

18   you have to go through the -- exhaust your

19   administrative remedies -- and even then, Judge,

20   it's a federal question lawsuit --

21       THE COURT:  All right.

22       MR. CARTER:  -- completely separate and

23   apart.

24       And let me say this about the settlement,

25   right quick:  If they're saying the settlement is

17

1     some sort of bar, or has anything to do with our

2     case that we filed over the AWPs and WACs, then

3     they need to file the appropriate motion.  It's

4     not a counterclaim.  It's not the appropriate

5     vehicle to enforce this case.

6              THE COURT:  All right.  Go ahead.

7              MS. BORDEN:  That's not what our counterclaim

8     is about.  We're not claiming that our settlement

9     agreement bars their suit.  Although, certainly, I

10    don't want to suggest that rebate payments are not

11    relevant ultimately to the damages, if any, that

12    the State may have suffered.  Because if they say

13    they've overpaid, and yet we've paid them more

14    than they have paid us, certainly, we think that's

15    relevant.  But that's not the counterclaim.

16             With respect to this agreement, if the Court

17    will read the aspect of the agreement that's

18    pointed out by Mr. Carter, what it deals with is a

19    situation where the state provides utilization

20    information on which we are to calculate rebate,

21    and we say, "No, State, you're wrong, we don't owe

22    you that much.  Your information is wrong about

23    the utilization."  That's not this case either.

24             In this case what we're saying is, we,

25    because of earlier errors in calculation, that

1    we -- that we concede were made, and for which

2    we've now paid settlement, made a decision to

3    overcalculate based on utilization information we

4    were provided.

5         THE COURT:  Well, then, what does this on

6    page 8, "In the event the State and the

7    manufacturer are not able to resolve the

8    discrepancy within 60 days, CMS shall require the

9    State to make available to the manufacturer the

10   State hearing mechanism available under the

11   Medicaid program."  Now, what does that mean?

12        MS. BORDEN:  Well, what I'm saying, Judge, is

13   that applies to the situation where the -- where

14   we dispute utilization information that the

15   State's providing us and we're not able to work

16   that dispute out.  That's not this case.

17        We're not saying in any respect that

18   Alabama's utilization information, which they tell

19   us, you know, how much of a particular drug has

20   been reimbursed, for example.  We're not saying

21   that we're disputing any of that information.

22        What we're saying is, that given that

23   information, we have --

24        THE COURT:  Well, it says, "The manufacturer

25   shall pay the State Medicaid Agency that portion

19

1    of the rebate amount..." So this deals with

2    rebate.

3        MS. BORDEN:  Yes, sir, but only -- only in

4    the circumstance where the issue is that there's

5    some dispute about the utilization information on

6    which the rebate's calculated.

7        THE COURT:  Well --

8        MS. BORDEN:  And there is no dispute.

9        THE COURT:  Well, if your client has overpaid

10    the State of Alabama, then my position is they

11    have a right to try to get the money back.  Now,

12    the question is, what mechanism should they use to

13    get the money back.  Is it -- what's the name of

14    that agency over there?

15        MS. BORDEN:  CMS.

16        THE COURT:  No, no.  The one that you go

17    before, the board.

18        MS. BORDEN:  Oh.  The Board of Authorization?

19        THE COURT:  Adjustment --

20        MS. BORDEN:  Board of Adjustment.

21        THE COURT:  -- or here on the counterclaim,

22    or a lawsuit based on these federal regulations.

23    Just what mechanism should you use?  And that's

24    what I have to go through.

25        MS. BORDEN:  Yes, sir.

1          THE COURT:  Well, why shouldn't the

2     counterclaim lie in this case?

3          MR. CARTER:  The counterclaim shouldn't lie

4     in this case because there is a specific

5     administrative remedy that must be exhausted.

6          THE COURT:  What is that administrative

7     remedy?

8          MR. CARTER:  It's set forth in this document

9     I gave you.

10          THE COURT:  She says that doesn't apply to

11     rebates.

12          MR. CARTER:  Well, we disagree with her

13     position.  We believe that this document, this

14     rebate agreement governs any and all disputes over

15     rebates between the Alabama Medicaid Agency and

16     the manufacturers.

17          And I think that when she says that -- I

18     guess their position is they don't dispute the

19     utilization,  they just paid wrong.

20          THE COURT:  Well, now, this says, "that

21     portion of the rebate amount."  So it deals with

22     rebate.

23          MS. BORDEN:  I'm not saying that it doesn't

24     deal with rebates.  What I'm saying is, it

25     specifies particular disputes about rebates that

21

```
1      it governs.  It doesn't say this governs every

2      dispute about a rebate.

3              THE COURT:  Oh, I understand that.

4              MS. BORDEN:  It says it governs particular --

5              THE COURT:  But you have a -- you have a

6      remedy.  In the event that the State and the

7      manufacturer is not able to resolve the

8      discrepancy, the State hearing mechanism available

9      under the Medicaid 42 -- or federal regulation,

10     Section 447.253(c).

11             What is -- What does that regulation say?

12             MS. BORDEN:  If I may, Judge, the discrepancy

13     to which it refers is the one that's on page 7.

14     And that's a discrepancy, a dispute between the

15     State and the manufacturer about utilization

16     information.  And that is not what we have.

17             MR. BLAIR:  Your Honor, may I say something?

18     Maybe I can clarify this.

19             THE COURT:  Yes.

20             MR. BLAIR:  When they talk about utilization,

21     the State will tell King, "We bought a thousand

22     pills of Altace," our drug.

23             THE COURT:  Yeah.

24             MR. BLAIR:  "And you need to pay us rebates

25     on a thousand pills."
```

1          THE COURT:  Go ahead.

2          MR. BLAIR:  That's utilization.  We have

3      never challenged utilization in the history of

4      King.  Not once has King challenged the State on

5      you didn't sell a thousand pills -- or reimburse a

6      thousand pills, you only reimbursed 500.

7          The reason that I know that is, we didn't

8      have the computer software to do that.  Some

9      companies can do that.

10         THE COURT:  All right.

11         MR. BLAIR:  We can't because we weren't -- so

12     we have never challenged utilization.  And that's

13     what this is talking about.

14         THE COURT:  What we say -- we agree with

15     everything you say, State.  You say you reimbursed

16     a thousand pills.  We just miscalculated our

17     rebate, and we overpaid it.  So we say we can file

18     this counterclaim.

19         MR. BLAIR:  I do also make the point that we

20     asked the State to make sure, don't file anymore

21     briefs; don't file anymore cases.  You know, I

22     tried to get a scheduling order -- a briefing

23     schedule.  I got an agreement with them not to

24     bring any new information into this hearing.  And

25     we get a new information in this hearing.

23

1        We haven't seen this sample.  But it's not

2     signed --

3          THE COURT:  Is there a difference in a rebate

4     and a rebate?

5          MR. BLAIR:  There is a difference two ways:

6     Once you take the utilization, you can calculate a

7     rebate.  Or to say we don't like to pay this

8     rebate, we're going to say you didn't sell a

9     thousand pills, you reimbursed 500 pills.  So you

10    can challenge it two ways.  But rebates are

11    rebates; you're right.

12         THE COURT:  All right.  Why shouldn't the

13    counterclaim lie?

14         MR. CARTER:  Because rebates deal with

15    utilization.  The agreement that I gave you deals

16    with the remedies with respect to how they can go

17    about recovering if they think they overpaid.  But

18    interestingly, the agreement I gave you talks

19    about adjustments made in the future.

20         In other words, if King goes through the

21    administrative process, and it's determined that,

22    yes, King did overpay, then there is an agreement

23    to adjust prices in the future.  It doesn't

24    address going backwards.  And that's because we

25    still, the State has immunity.

24

 1              THE COURT:  Well, it's not State immunity in

 2       that they are suing the State to get money from

 3       the treasury back the State has, and not owed.

 4              What they're saying, "We overpaid you, so

 5       it's really not your money in the first place."

 6       So it's not invading the treasury.  We're just

 7       suing to get our money back.

 8              That's different than having a claim against

 9       the State for some alleged injury.  And the State

10       has to go into the treasury to get money that has

11       not been overpaid.

12              All right.  Anything else on King?

13              MS. BORDEN:  No, sir.

14              THE COURT:  How about Monarch?

15              MR. BLAIR:  We're in the same boat.

16              THE COURT:  Both of them are the same

17       argument?

18              MR. BLAIR:  Yes, sir.

19              THE COURT:  All right.  Thank you.

20              Anything else you want to put in the record?

21              MR. CARTER:  Just, Your Honor, that we

22       believe there's an administrative process in place

23       that King must follow before they can file a

24       direct action or a counterclaim against the State.

25       And we still believe that the counterclaim is

1    barred by sovereign immunity.

2        THE COURT:  All right.  Thank you.

3        Now --

4        Yes?

5        MR. BATES:  You haven't heard from me today.

6    I wanted to make just one comment.

7        Notwithstanding this idea about not

8    submitting cases and so forth.  I think it would

9    be instructive to the Court, and I'd like to get

10   it for you, the Patterson decision, which you may

11   remember.  It was a taxpayer lawsuit when they

12   filed a class action trying to get refunds

13   directly from the State treasury without going

14   through the administrative process to seek refunds

15   through the proper revenue.

16       THE COURT:  Well, yeah, but --

17       MR. BATES:  That case said you can't do it

18   until you go through the administrative process

19   was my point.

20       THE COURT:  Yeah, but under the Code, the

21   Revenue Code, they set up exactly how you're

22   supposed to file and exhaust the administrative

23   remedies, etc.

24       MR. BATES:  Yes, sir.

25       THE COURT:  That's a little different than

1    this, isn't it?

2         MR. BATES:  I don't think so.  Because I

3    think this agreement that Mr. Carter gave you

4    prescribes that very process between Medicaid and

5    the manufacturers.  If we could submit that one

6    case to you, Your Honor.

7         THE COURT:  Yeah, you can submit it.

8         All right.  Anything else?

9         MS. BORDEN:  Just an opportunity to respond

10   to whatever they're going to say about that.

11        THE COURT:  That will be fine.

12        Now, are the representatives of all of these

13   cases here; Coleman, Richard Gill, and others?  I

14   have to get all of these cases on schedule.  All

15   of these cases are together, so I have to get them

16   on schedule.

17        Where is Richard Gill and Coleman,

18   representing the class -- all of the

19   pharmaceutical companies?

20        MS. BORDEN:  Judge, I don't think --

21        THE COURT:  I know they were not coming today

22   for this purpose, because these are specific

23   orders -- motions.

24        MR. BLAIR:  They're aware of the schedule.

25        THE COURT:  Well, they're --

27

1          MR. BLAIR:  Well, it just involved King.  I

2     don't think anybody else cared.

3          THE COURT:  Well, that's true.  And I

4     understand that.  King and Monarch.  In fact, one

5     of them called, and said, "Judge, that motion

6     doesn't -- that's just King an Monarch, it doesn't

7     involve the whole group."

8          MR. BLAIR:  King and Monarch are pretty

9     unique.

10          THE COURT:  Yeah.  So what I think we need to

11     do, then, is put the law clerk with you all, and

12     y'all get a trial date for all these cases; all of

13     them go together; way out some place, and start

14     working back so we can get the special masters

15     involved, and see what we need to do on this case.

16     Because otherwise, they're just going to sit

17     around.  And that's not going to happen.

18          So are y'all ready to do that, although

19     Coleman and Gill are not here?

20          MR. BLAIR:  There are 79 defendants, and I

21     don't want to speak --

22          THE COURT:  Well, yes, and they all go

23     together.  You know, I'm going to give you a trial

24     date outside, and then --

25          MR. BUTLER:  Judge?

28

```
 1           THE COURT:  Yes.
 2           MR. BUTLER:  I'm here for the Pfizer Company
 3      just for observance of this hearing.
 4           THE COURT:  Right.
 5           MR. BUTLER:  But it will be the position, I
 6      think, of all the defendants that there shouldn't
 7      be just one trial.
 8           THE COURT:  Well, it's going to be one trial.
 9           MR. BUTLER:  Sir?
10           THE COURT:  Just one trial.  All of these
11      matters -- one trial.  I'm not setting 79 separate
12      trials.  That's just absolutely not what I'm going
13      to do.
14           MR. BUTLER:  Well, we want an opportunity to
15      address that issue.
16           THE COURT:  Well, you'll have an opportunity
17      to address it.
18           Yes.
19           MR. MORRISS:  Your Honor, Chad Morriss, I
20      represent Merck.  And we certainly take the
21      position that before the Court sets a trial date,
22      we'd like an opportunity to be heard on the issue
23      of whether it will be one trial or 79 trials.  And
24      I don't think this is the appropriate venue to do
25      that.
```

29

```
 1          THE COURT:  All right.  Well, I need to set a
 2     matter -- a scheduling conference a couple of
 3     weeks from now that all lawyers of record have to
 4     be here.  And that's the way we'll do it.
 5          MR. BUTLER:  That will be good.
 6          THE COURT:  All right.  Thank you.
 7               (The proceedings in the above-referenced
 8                case were concluded.)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

30

CERTIFICATE

STATE OF ALABAMA )

MONTGOMERY COUNTY)


I, Denise L. Gordon, Official Court Reporter of the Fifteenth Judicial Circuit, do hereby certify as follows:

That I reported in shorthand the foregoing proceedings in the foregoing styled cause at the time and place stated heretofore;

That I later reduced my shorthand notes to computer-aided transcription, and the foregoing pages numbered 2 through 29, both inclusive, contain a full, true, and correct transcript of the proceedings and testimony as herein set out;

That I am neither of kin or of counsel to the parties to said cause, nor in any manner interested in the results thereof.

Done this 23rd day of May, 2006.


/s/Denise L. Gordon
Official Court Reporter

# EXHIBIT D

# IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

STATE OF ALABAMA,                    )
                                     )
    Plaintiff,              )
                                     )
v.                                   )        CV 2005-219
                                     )
ABBOTT LABORATORIES, INC.; et al.,   )
                                     )
    Defendants.             )

## SUPPLEMENTAL OPPOSITION OF DEFENDANTS
## KING PHARMACEUTICALS, INC. AND MONARCH PHARMACEUTICALS, INC.
## TO PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIM

Defendants King Pharmaceuticals, Inc. and Monarch Pharmaceuticals, Inc. (collectively in the singular "King"), submit the following supplemental opposition to the State of Alabama's motion to dismiss King's Counterclaim:

### Introduction

At the May 19 hearing on the State's Motion to Dismiss, the State raised a previously unasserted argument that it alleges requires dismissal of King's counterclaim. Specifically, the State argues that King cannot pursue its counterclaim because it has failed to exhaust an administrative remedy that it alleges is provided in a rebate agreement between King and the State. Plaintiff's counsel provided the Court with a "Sample" Rebate Agreement ("Sample Agreement") containing the alleged administrative remedy language and cited *Patterson v. Gladwin Corp.*, 835 So. 2d 137 (Ala. 2002) [1] in support of its assertion that King's counterclaim should be dismissed. Regardless of the last minute authority raised by the State in their oral

---

[1] King's counsel for approximately six (6) weeks made numerous efforts prior to the hearing to obtain plaintiff's counsel's agreement to a briefing schedule, and to ascertain whether the State intended to cite any additional authorities to which it might need to be prepared to respond. On May 5, 2006, Plaintiff's counsel assured King that there was no need for a briefing schedule, and that "we do not plan to submit any further briefs or cases to the Court regarding the hearing set for May 19, 2006." (Letter from Clint Carter to Sam Blair dated May 5, 2006 (attached hereto as **Exhibit A**).

**EXHIBIT**

D

rebuttal argument, and to the extent King is able to respond within the one week period the Court

allowed, without resort to discovery, King responds as follows:

*Sample Rebate Agreement Is Not Applicable to the Counterclaim*

There are several fatal technical, substantive and procedural problems with the Sample

Agreement tendered to the Court at the hearing during the State's rebuttal argument, but King

prefers to challenge the substance of the Sample Agreement first.  Without waiving the technical

arguments below, it is clear that the Sample Agreement does not govern the issues raised in the

Counterclaim filed by King.    First, the Sample Agreement defines Medicaid Utilization

Information ("MUI") as follows:

> I.    DEFINITIONS
>
> (n) "Medicaid Utilization Information" means the information on
> the total number of units of each ... Manufacturer's ... Drugs ...
> The Medicaid Utilization Information to be supplied includes:
> 1) NDC number; 2) Product name; 3) Units paid for during the
> quarter by NDC number; 4) Total number of prescriptions paid for
> during the quarter by NDC number; and 5) Total amount paid
> during the quarter by NDC number.
>
> (Sample Agreement, p. 3-4.)

"NDC" is the National Drug Code for each drug as further defined in Section I. (o) and

"Unit" represents each tablet or capsule of a manufacturer's drug, defined at Section I. (cc).

(Sample Agreement, p. 4.)

> Section I. (dd) "Unit Rebate Amount" is defined as follows:
>
> "Unit Rebate Amount" means the Unit amount computed by the
> Health Care Financing Administration to which the Medicaid
> utilization information may be applied ...
>
> (Sample Agreement, p. 5.)

The State relies upon Section V entitled: "Dispute Resolution – Medicaid Utilization

Information," and that Section V provides in part the following:

(a) In the event that in any quarter a discrepancy in the **Medicaid Utilization Information** …

(b) If the Manufacturer in good faith believes the State Medicaid Agency's **Medicaid Utilization Information** is erroneous …

(c) The State and the manufacturer will use their best efforts to resolve the discrepancy [in the Medicaid Utilization Information] …

(d) Nothing in this section shall preclude the right of the Manufacturer to audit the **Medicaid Utilization Information** reported (or required to be reported) by the State.

(Sample Rebate Agreement, p. 7-8.) (emphasis added).

It is clear that this Dispute Resolution – Medicaid Utilization Information Section V of the Sample Rebate Agreement is applicable to disputes regarding the Medicaid Utilization Information which is a defined term in the Sample Agreement. Those disputes would include NDC numbers, product name, units, number of prescriptions and amount reimbursed by the State during any quarter. King does not and has never challenged the Medicaid Utilization Information from the State of Alabama regarding the number of units reimbursed by the State. The Counterclaim has absolutely nothing to do with the Medicaid Utilization Information including the NDCs, product name, and the units reimbursed by the State and paid to the pharmacies.

King hereby confirms to the Court that it does not challenge the Medicaid Utilization Information in its Counterclaim against the State.

No "discrepancy" in the Medicaid Utilization Information exists and no "dispute" in the Medicaid Utilization Information exists. Thus, Section V entitled Dispute Resolution – Medicaid Utilization Information is not applicable to the Counterclaim filed by King.

As the Court correctly understood at the hearing, King has overpaid the State a liquidated amount of monies and is entitled to receive its liquidated overpayment back from the State.

These liquidated monies do not belong in the coffers of the State or the Treasury of the State. Because those liquidated funds do not belong to the State they may be litigated in this Court and required to be returned to King by this Court.

The only other administrative remedy provided in the Sample Agreement is contained in Section VI, entitled "Dispute Resolution -- Prescription Drugs Access and State Systems Issues." That Section expressly deals with "[a] State's failure to comply with the drug access requirements of section 1927 of the Act." Clearly, there is no such issue raised by King's Counterclaim.

The State is attempting to persuade this Court to find and imply terms in a contract that do not exist. Section V of the Sample Agreement itself is clear and unambiguous. Overpayment as claimed by King in the Counterclaim doe not involve MUI. Overpayments are not mentioned in Section V of the Sample Agreement and are not required by the terms of the Sample Agreement to be resolved by ADR or administrative proceedings. Here (assuming that the State and King are parties to the Sample Agreement), the parties have expressly, and narrowly, defined the types of disputes to which the administrative remedies provisions are to be applied – namely discrepancies or disputes involving MUI. If the parties had desired that other types of disputes, such as the one raised by King's Counterclaim, be subject to the administrative remedies provisions, they certainly could, and would, have so provided.

Courts cannot construe a contract to create an implied term which would be inconsistent with the express terms of the contract. *See Bailey v. Liberty Mutual Ins. Co.*, 451 So. 2d 279, 281 (Ala. 1984). Accordingly, the Alabama Supreme Court has repeatedly refused to expand alternative dispute resolution agreements beyond their express terms. *See Prudential Securities Inc. v. Micro-Fab, Inc.*, 689 So. 2d 829, 831 (Ala. 1997) ("This Court has applied the well-

settled rule that the enforcement of arbitration agreements, while favored by Federal Law as sound public policy, must be governed by the plain terms of the agreements themselves -- that the courts are not to twist the language of a contract to achieve a result favored by federal policy but contrary to the intent of the parties."). Courts should, therefore, consider only the plain language contained in the contract when construing Alternative Dispute Resolution contract provisions. *See id.*

### Technical, Procedural and Substantive Issues

King objects to the new issue asserted by the State, which was issue was not pled or briefed prior to the hearing and did not form a basis for the State's Motion to Dismiss. The argument, as more fully discussed above, depends upon the terms of the Sample Agreement provided to the Court by plaintiff's counsel. Yet, the Sample agreement is outside the pleadings and should not provide a basis for dismissal.

Moreover, the Sample Agreement has not been properly entered in the record, as currently the Court has only counsel's unsworn assertions as to its applicability and its import. Such assertions do not substitute for proper testimony, and King has had no opportunity to rebut them with its own evidence.

In addition, the State cannot support its motion to dismiss on the basis of the Sample Agreement, a document that is outside the pleadings and not a part of the record upon which the Court should decide the motion. Because, as discussed below, there is a complete dearth of evidence concerning the applicability of the Sample Agreement, or any actual agreement, to the circumstances presented by King's counterclaim, the Court should simply ignore the Sample Agreement. If the State wishes to pursue such an argument, it should be required to do so by

way of a motion for summary judgment, and King should have a reasonable opportunity to take appropriate discovery and otherwise adequately respond.

The unsigned Sample Agreement provides no evidence concerning the terms of any binding contract between the parties. The Sample Agreement presented by plaintiff's counsel was merely a form that was not signed by any party, and which did not name King or any other defendant as a party to it. "No contract can be formed without an offer, acceptance, consideration, and mutual assent to the terms essential to the contract." *Ex parte Holland Manufacturing Co.*, 689 So. 2d 65, 66-67 (Ala. 1996) (unsigned blanket purchase order alone could not establish mutual assent to contract term excluding defendant from liability). As its name illustrates, the document submitted by the State at oral argument is merely a "sample." The Sample Agreement presented has not been executed by King. In fact, King's name does not even appear anywhere in the Sample Agreement.

The Sample Agreement purports to be an agreement between "The Secretary of Health and Human Services" and "The Manufacturer Identified in Section XI of this Agreement." However, Section XI does not identify King, or any particular manufacturer, as a party to the agreement. Because there is no evidence that the Sample Agreement represents a binding contract, the administrative remedy provision contained therein cannot be enforced against the parties. In the current posture of the record, the Court could just ignore the Sample Agreement.

### Conclusion

In conclusion, if the Sample Agreement is binding on King, the dispute resolution section regarding Medicaid Utilization Information has no applicability to King's Counterclaim of a liquidated overpayment of monies when King has not disputed Medicaid Utilization Information. Affirmatively, King does not challenge, dispute or allege any discrepancy in the Medicaid

Utilization Information provided by the State of Alabama. Furthermore, the Sample Agreement was not provided to King in a timely manner, was not entered into the record properly, is not executed and, in fact, does not have the word King in the document. Consequently, the State of Alabama's Motion to Dismiss King's Counterclaim should be denied.

LISA W. BORDEN (WRI-027)
SAM BERRY BLAIR (pro hac vice)

Attorneys for Defendants
King Pharmaceuticals, Inc.
Monarch Pharmaceuticals, Inc.

OF COUNSEL:

BAKER, DONELSON, BEARMAN
        CALDWELL & BERKOWITZ, P.C.
1600 SouthTrust Tower
Birmingham, Alabama  35203
(205) 328-0480


BAKER, DONELSON, BEARMAN
        CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue
Suite 2000
Memphis, TN 38103

## Certificate of Service

I hereby certify that the foregoing Opposition of Defendants King Pharmaceuticals, Inc. and Monarch Pharmaceuticals, Inc. to State's Motion to Dismiss Counterclaim has been served upon all counsel of record via electronic transmission to LNFS, pursuant to the Court's Case Management Order No. 2, this 26th day of May 2006.

_____
Attorney for Defendants

# Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.

JERE LOCKE BEASLEY
J. GREG ALLEN
MICHAEL J. CROW
THOMAS J. METHVIN
J. COLE PORTIS
W. DANIEL MILES, III
R. GRAHAM ESDALE, JR.
JULIA ANNE BEASLEY
RHON E. JONES
LABARRON N. BOONE
ANDY D. BIRCHFIELD, JR.
RICHARD D. MORRISON
C. GIBSON VANCE
J. P. SAWYER
C. LANCE GOULD
JOSEPH H. AUGHTMAN
DANA G. TAUNTON

J. MARK ENGLEHART
CLINTON C. CARTER
BENJAMIN E. BAKER, JR.
DAVID B. BYRNE, III
TED G. MEADOWS
GERALD B. TAYLOR, JR.
FRANK WOODSON
KENDALL C. DUNSON
J. PAUL SIZEMORE
SCARLETTE M. TULEY
CHRISTOPHER E. SANSPREE
ROMAN ASHLEY SHAUL
W. ROGER SMITH, III
P. LEIGH O'DELL
D. MICHAEL ANDREWS
BENJAMIN L. LOCKLAR

*Attorneys at Law*
218 COMMERCE STREET
POST OFFICE BOX 4160
MONTGOMERY, ALABAMA
36103-4160
(334) 269-2343

TOLL FREE
(800) 898-2034

TELECOPIER
(334) 954-7555

BEASLEYALLEN.COM

LARRY A. GOLSTON, JR.
MELISSA A. PRICKETT
JOHN E. TOMLINSON
KIMBERLY R. WARD
NAVAN WARD, JR.
WESLEY CHADWICK COOK
WILLIAM N. ROBERTSON, V

ALSO ADMITTED IN ARIZONA
ALSO ADMITTED IN ARKANSAS
ALSO ADMITTED IN FLORIDA
ALSO ADMITTED IN GEORGIA
ALSO ADMITTED IN KENTUCKY
ALSO ADMITTED IN MINNESOTA
ALSO ADMITTED IN MISSISSIPPI
ALSO ADMITTED IN MISSOURI
ALSO ADMITTED IN NEW YORK
ALSO ADMITTED IN OHIO
ALSO ADMITTED IN OKLAHOMA
ALSO ADMITTED IN SOUTH CAROLINA
ALSO ADMITTED IN TENNESSEE
ALSO ADMITTED IN TEXAS
ALSO ADMITTED IN WASHINGTON, D.C.
ALSO ADMITTED IN WEST VIRGINIA

JAMES W. TRAEGER
1955-1987

RONALD AUSTIN CANTY
1963-2004

## TELECOPY TRANSMITTAL REPORT

**DATE:**          5/5/2006

**TO:**            Mr. Sam B. Blair, Jr.

**TELECOPIER**
**NUMBER:**        1-901-577-2303

**FROM:**          Clinton C. Carter

**NO. PAGES:**     2

**RE:**            Alabama v. Abbott

If you have problems with transmission, please call   Michelle Lysdale   at (334) 269-2343

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### \* IMPORTANT NOTICE \*

*THE INFORMATION CONTAINED IN THIS FAX MESSAGE IS ATTORNEY PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT, THE READER IS HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE.*



EXHIBIT

A

*Michelle Lysdale*
Legal Secretary to Clint Carter
**BEASLEY, ALLEN, CROW,**
**METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Post Office Box 1460 (36103)
Montgomery, Alabama 36104
1.800.898.2034 ext. 372
334.495.1372 - direct dial
334.954.7555 - facsimile

*Michelle Lysdale*
Legal Secretary to Clint Carter
**BEASLEY, ALLEN, CROW,**
**METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Post Office Box 1460 (36103)
Montgomery, Alabama 36104
1.800.898.2034 ext. 372
334.495.1372 - direct dial
334.954.7555 - facsimile

# Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.

| | | *Attorneys at Law* | | |
|---|---|---|---|---|
| JERE LOCKE BEASLEY | DANA G TAUNTON | | LARRY A. COLSTON, JR. | ALSO ADMITTED IN ARIZONA |
| J GREG ALLEN | J MARK ENGLEHART | 218 COMMERCE STREET | MELISSA A PRICKETT | ALSO ADMITTED IN ARKANSAS |
| MICHAEL J CROW | CLINTON C. CARTER | POST OFFICE BOX 4160 | JOHN E. TOMLINSON | ALSO ADMITTED IN FLORIDA |
| THOMAS J METHVIN | BENJAMIN E. BAKER, JR | MONTGOMERY, ALABAMA | KIMBERLY R. WARD | ALSO ADMITTED IN GEORGIA |
| J. COLE PORTIS | DAVID B. BYRNE, III | 36103-4160 | NAVAN WARD. JR. | ALSO ADMITTED IN KENTUCKY |
| W. DANIEL MILES, III | TED G. MEADOWS | (334) 269-2343 | WESLEY CHADWICK COOK | ALSO ADMITTED IN LOUISIANA |
| R. GRAHAM ESDALE, JR. | GERALD B. TAYLOR, JR. | | WILLIAM H. ROBERTSON. V | ALSO ADMITTED IN MINNESOTA |
| JULIA ANNE BEASLEY | FRANK WOODSON | TOLL FREE | | ALSO ADMITTED IN MISSISSIPPI |
| RHON E. JONES | KENDALL C. DUNSON | (800) 898-2034 | | ALSO ADMITTED IN MISSOURI |
| LABARRON N. BOONE | J. PAUL SIZEMORE | | OF COUNSEL: | ALSO ADMITTED IN NEW YORK |
| ANDY D. BIRCHFIELD, JR. | SCARLETTE M TULEY | TELECOPIER | BENJAMIN L. LOCKLAR | ALSO ADMITTED IN OHIO |
| RICHARD D. MORRISON | CHRISTOPHER E. SANSPREE | (334) 954-7555 | | ALSO ADMITTED IN OKLAHOMA |
| C. GIBSON VANCE | ROMAN ASHLEY SHAUL | | | ALSO ADMITTED IN SOUTH CAROLINA |
| J. P. SAWYER | W. ROGER SMITH. III | BEASLEYALLEN COM | | ALSO ADMITTED IN TENNESSEE |
| C LANCE GOULD | P. LEIGH O'DELL | | | ALSO ADMITTED IN TEXAS |
| JOSEPH H AUGHTMAN | D. MICHAEL ANDREWS | | | ALSO ADMITTED IN WASHINGTON, D.C. |
| | | | | ALSO ADMITTED IN WEST VIRGINIA |

JAMES W. TRAEGER
1933-1987

RONALD AUSTIN CANTY
1962-2004

May 5, 2006

<u>VIA FACSIMILE 901-577-2303 & U.S. MAIL</u>
Mr. Sam B. Blair, Jr.
**BAKER, DONELSON, BEARMAN,**
 **CALDWELL & BERKOWITZ**
First Tennessee Building
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103

Re:  *State of Alabama v. Abbott Laboratories, Inc., et al.*
 *In the Circuit Court of Montgomery County, Alabama*
 Civil Action No. Cv-2005-219-PR

Dear Sam:

I am in receipt of your correspondence of April 25, 2006. This will confirm that we do not plan to submit any further briefs or cases to the Court regarding the hearing set for May 19, 2006. Please confirm that you also will not file any additional briefs or cases before the hearing.

Thank you for your time and cooperation. I look forward to hearing from you.

With kindest regards,

**BEASLEY, ALLEN, CROW,**
**METHVIN, PORTIS & MILES, P.C.**

CLINTON C. CARTER

CCC/mml