## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

STATE OF ALABAMA,            *
                            *
    Plaintiff,           *
                            *
v.                          *    Civil Action No.: 2:06cv00920-MHT
                            *
ABBOTT LABORATORIES, INC,    *
et al.,                     *
                            *
    Defendants.          *

## PLAINTIFF'S SUPPLEMENTAL
## BRIEF IN SUPPORT OF MOTION TO REMAND

Plaintiff, the State of Alabama ("the State"), submits the following supplemental brief in support of its Motion to Remand filed on October 20, 2006. Noting that the Court will take the State's motion under submission without further briefing on October 31, 2006, the State wishes to (i) alert the Court to a federal decision on point issued in Hawaii four days ago rejecting Dey's removal arguments, and (ii) respond to arguments which the State anticipates Dey may make in its brief opposing remand.

## I.    Hawaii Magistrate Judge Rejects Dey's Arguments.

One week after the State filed its Motion to Remand in this Court, a United States Magistrate Judge for the District of Hawaii flatly rejected the very same removal arguments made by Dey in the instant case and denied Dey's motion for leave to file a supplemental notice of removal as "futile." *See* Amended Order Denying Defendant Dey, Inc.'s Motion to File Supplemental Notice of Removal, *State of Hawaii v. Abbott*

*Laboratories, Inc.*, CV-06-437 DAE-BMK (D. Haw. Oct. 27, 2006), attached hereto as Exhibit A.

Specifically, Magistrate Judge Barry M. Kurren held that Dey's receipt of the federal *qui tam* suit does not meet the "order or other paper" requirement of § 1446(b), because, generally, the "order or other paper" requirement is met only by "documents generated within the state court litigation." *Id.* at pp. 9-10 (citations omitted). Magistrate Judge Kurren further held that the *qui tam* action does not provide the district court with the original subject matter jurisdiction required for removal under § 1441(a), and Dey's attempt to supplement its notice of removal fails substantively as well as procedurally. *Id.* at pp. 7, 12-15. In his analysis, Magistrate Judge Kurren noted that "the language, legislative history, and context of § 3732(b) all indicate that it grants the district courts not original jurisdiction, but supplement jurisdiction." *Id.* at p. 13. This is exactly what the State of Alabama has argued in its original brief in support of remand.

## II.    Dey Can Cite No Authority Supporting Original Federal Jurisdiction.

Dey asserts that 31 U.S.C. § 3732(b) confers original jurisdiction over the State's claims and not just supplemental jurisdiction over those claims. While Dey is expected to argue that the absence of the term "original" in § 3732(b) is of no moment, Dey cannot cite a single case in which a federal court has determined that § 3732(b) constitutes a basis of "original" federal subject matter jurisdiction, making a state law claim removable to federal court.

The only case cited by Dey in support of its Notice of Removal is *United States ex rel. LaCorte v. Merck & Co.*, 2004 U.S. Dist. LEXIS 4860, at *25 (E.D. La. Mar. 23,

2004), in which the State of Louisiana <u>chose and was permitted to</u> intervene in a federal False Claims Act case under § 3732(b) with claims founded solely upon Louisiana state law. *Id.* at *23-24. *LaCorte* does not support the wholly unprecedented removal carried out by Dey.

Similarly, in *U.S. v. Sequel Contractors, Inc.*, 402 F. Supp. 2d 1142, 1148-49 (C.D. Cal. 2005), which the State expects Dey to cite, Orange County intervened in a false claims act suit where the relator originally filed the suit in federal court under both the federal False Claims Act and the State of California's False Claims Act. The district court held that it had jurisdiction over Orange County's state law claims under § 3732(b). *Id.* In *U.S. ex rel. Anthony v. Burke Eng'g Co.*, 356 F. Supp. 2d 1119, 1120 (C.D. Cal. 2005), which Dey may also cite, the plaintiff/relator brought both federal False Claims Act and California False Claims Act claims in federal court against the defendant, who moved to dismiss the state claims for lack of subject matter jurisdiction. The court denied the motion to dismiss, concluding that it had jurisdiction over the state false claims act claims pursuant to § 3732(b). *Id.*

Thus, none of these cases supports Dey's position that § 3732(b) confers original jurisdiction making a state claim removable. These cases simply involve classic "supplemental jurisdiction" situations (under either § 1367(a) or § 3732(b)), where state claims are asserted in addition to federal claims originally filed in federal court.

Dey cannot cite a single case which has held that the unsealing of a federal *qui tam* action makes a pending state case removable to federal court under § 3732(b). If this Court were to so hold, it would be the first court in the country to do so. Because federal

courts are courts of <u>limited</u> jurisdiction, remand must be ordered if there is any doubt as to whether this Court has subject matter jurisdiction over the action. *Jerrell v. Kardoes Rubber Co.,* 348 F. Supp. 2d 1278, 1283 (M.D. Ala. 2004). Here, there is much more than a doubt; there is almost absolute certainty that remand is required.

**III.    Dey's "Other Paper" Cases Are Not Applicable.**

As it has done in previous briefs, Dey may rely upon a few certain cases in support of its argument that service of the federal *qui tam* complaint falls within the "other paper" provision of 28 U.S.C. § 1446(b). Each of these cases is inapposite for the reasons stated below.

In *Doe v. American Red Cross,* 14 F.3d 196 (3[d] Cir. 1993), plaintiffs sued the American Red Cross in state court contending that they contracted AIDS through contaminated blood transfusions and that their injuries were caused by the negligence of the Red Cross. Red Cross removed the case, arguing that the "sue or be sued" provision of its charter conferred federal jurisdiction. The district court rejected this argument and remanded the case. After remand, and while the case was still pending in state court, the Supreme Court held in *American Nat'l Red Cross v. S.G.,* 505 U.S. 247 (1992) that the "sue or be sued" provision of the Red Cross's charter conferred federal jurisdiction and expressly authorized the Red Cross to remove "any state-law actions it is defending." *American Red Cross*, 14 F.3d at 197-98. The court took great pains to limit its holding to the unique circumstances of the case: "We take an extremely confined view of this case and our holding is equally narrow." *Id.* at 202. The court repeatedly noted that the "order" in the intervening Supreme Court case was "an unequivocal order directed to a

4

party to the pending litigation, explicitly authorizing it to remove any cases it [was currently] defending." *Id.* Indeed, the court stated that for an "order" to fall within section 1446(b), it must come from a court superior in the same judicial hierarchy, be directed at a particular defendant, and expressly authorize that same defendant to remove an action against it in another case involving similar facts and legal issues. *Id.* at 203. Finally, *American Red Cross* made clear that its holding was limited to the term "order" in section 1446(b); it expressly did not interpret the term "other paper." *Id.* at 202.

In *Green v. R.J. Reynolds Tobacco Co.*, 274 F.3d 263 (5th Cir. 2001), plaintiffs sued defendant tobacco companies in state court for wrongful death. Defendants removed, arguing that a federal statute preempted plaintiffs' state law claims. The district court granted plaintiffs' remand motion, concluding that the federal statute did not preempt state law. After remand, and while the case was pending, the Fifth Circuit decided a case (*Sanchez v. Liggett & Myers, Inc.*, 187 F.3d 486 (5th Cir. 1999), holding that the federal statute did preempt state law. Defendants again removed and plaintiffs again filed a remand motion. The *Green* court concluded that the facts of the case fell within the narrow exception of *American Red Cross* because the defendants in the state court action were also defendants in *Sanchez* and the two cases involved similar factual situations and legal conclusions. The court noted that although *Sanchez* did not explicitly authorize defendants to remove pending state court cases, *Sanchez* had a similar effect as the Supreme Court decision had on the defendant in *American Red Cross*, *i.e.*, the defendants could not be sued under Texas law. *Green*, 274 F.3d at 268. Like *American Red Cross*, *Green* limited its holding to the specific circumstances of the case: "The

similarities between this case and *Sanchez* bring this case within the <u>limited parameters</u> of *American Red Cross.* We therefore hold that the *Sanchez* opinion, under these <u>very narrow circumstances</u>, was an "order" for purposes of § 1446(b) removal." *Id.* at 268 (emphasis added).

Courts have uniformly limited *American Red Cross* to circumstances in which the Supreme Court expressly authorizes removal of specific pending cases. *See, e.g., Elm v. Soo Line R.R.,* 2006 WL 1426594, at *3 (D. Minn. May 22, 2006); *Craft v. Philip Morris Cos.,* 2006 WL 744415, at *6-7 (E.D. Mo. Mar. 17, 2006); *Black v. Brown & Williamson Tobacco Corp.,* 2006 WL 744414, at *7 (E.D. Mo. March 17, 2006); *Deaker v. Bell Helicopter Textron, Inc.,* 1995 WL 559359, at *2 (S.D. Tex. Sept. 21, 1994). Subsequent cases have also noted the narrow reach of the *Green* exception. *State of Wisconsin v. Abbott Laboratories,* 390 F. Supp. 2d 815, 824-25 (W.D. Wis. 2005); *Ervin v. Stagecoach Moving and Storage, Inc.,* 2004 WL 1253401, at *2 n.3 (N.D. Tex. June 8, 2004).

The limited holdings of *American Red Cross* and *Green* are wholly inapplicable to the instant case because the federal *qui tam* complaint is not an "order" issued by a superior court in the judicial hierarchy; indeed, it is not an "order" of any kind, and certainly not an "order" within the meaning of section 1446(b). And to the extent Dey argues that the federal *qui tam* complaint is an "other paper," the cases are of no help, because they expressly limited their holdings to the term "order" in section 1446(b). Finally, the federal *qui tam* complaint does not expressly authorize Dey to remove the

Alabama action, nor does it have the effect of prohibiting Alabama from suing under state law.[1]

Dey may also cite *Yarnevic v. Brink's, Inc.*, 102 F. 3d 753 (4th Cir. 1996), to argue that an "other paper" need not originate in the underlying state court action to support removal of the action. It is important to note, however, that *Yarnevic* is not so broad as to permit removal based on an occurrence not instigated by the plaintiff. Indeed, the "other paper" at issue in *Yarnevic* was the plaintiff's memorandum in support of his motion to remand, and the circumstances giving rise to removal based on diversity jurisdiction were "created by a voluntary act of the plaintiff." *Id.* at 755. The court explained the rationale behind the rule that diversity may be created after the filing of a complaint through voluntary acts of a plaintiff, as follows:

> . . . although a defendant should not be allowed to change his domicile after the complaint is filed for the sole purpose of effectuating removal, there is no reason to protect the plaintiff against the adverse consequences of his own voluntary acts.

*Id.* at 754-55. Indeed, *Yarnevic* supports the State's argument that, because it has done nothing voluntarily or otherwise to make this action removable, the case is not removable and should be remanded.

Other cases expected to be cited by Dey are similarly distinguishable. In *Hamilton v. Hayes Freight Lines,* 102 F. Supp. 594 (E.D. Ky. 1952), the "collateral proceeding" was not "collateral" at all, but rather a "continuation" of the prior proceeding in which the defendant sought to set aside and vacate the underlying judgment entered in favor of the

---

[1] Magistrate Judge Kurren held that even under *American Red Cross* and *Green*, neither the federal *qui tam* complaint nor the order unsealing it constitutes an "order or other paper" for purposes of § 1446(b). *See* Exhibit A, at pp. 11-12.

plaintiff.  In *iGames Entm't, Inc. v. Ryan*, 2004 WL 2538285 (E.D. Pa. Nov. 9, 2004), the "other papers" consisted of documents, including a press release, which the plaintiff attached to pre-complaint discovery in the subject case and which the plaintiff itself generated.  These cases do not defeat the State's argument that § 1446(b) applies to events occurring within the state court action being removed and/or that the event making the case removable must be the result of a voluntary act of the plaintiff.  To the contrary, these cases support the State's position that because it has done nothing to make this case removable, it is therefore not removable.

## IV.    The Arizona Case Is Inapposite.

In the unlikely event that Dey cites as support for its position a recent order from the MDL judge denying the State of Arizona's motion to remand, that argument should be completely disregarded.  *See In re:  Pharm. Indus. Average Wholesale Price Litig.*, 2006 WL 3019193 (D. Mass. Oct. 24, 2006).  Among other reasons, any reference to that order would be an inappropriate attempt by Dey to revisit the same arguments made by Dey and the other Defendants in the first removal, which arguments were soundly rejected by this Court.  The MDL judge's decision regarding the Arizona case was based on an interpretation of *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), and its applicability under certain circumstances to particular claims made in the pharmaceutical drug pricing litigation.  The decision not to remand Arizona's case had absolutely nothing to do with circumstances involving the unsealing of a False

Claims Act complaint against Dey, which are the only grounds cited by Dey for this second removal.[2]

Over one year ago when addressing the first removal, this Court determined that the principles discussed in *Grable* did not establish federal jurisdiction over the State of Alabama's claims in this case. *State of Alabama v. Abbott Laboratories, Inc., et al.*, No. 2:05cv647-T (M.D. Ala. Aug. 11, 2005). In similar cases, other district courts also remanded the state law claims, notwithstanding the Defendants' attempts to apply *Grable*. *See Commonwealth of Pennsylvania v. Tap Pharm. Prods.*, 415 F. Supp. 2d 516, 524-25 (E.D. Pa. 2005); *State of Wisconsin v. Abbott Labs.*, 390 F. Supp. 2d 815, 823 (W.D. Wis. 2005).[3] This argument for removal is a dead issue in the instant case.

In addition (though further distinguishing is unnecessary), the MDL judge has previously recognized that, while the particular nature of Arizona's case merits retention in federal court, claims such as those made by Alabama are due to be remanded to state court. Arizona claimed not only Medicaid damages for itself, but also claimed damages under the *parens patriae* doctrine on behalf of all Medicare Part B beneficiaries residing in the state. In contrast, Alabama sues only for itself and makes no *parens patriae* claims on behalf of Medicare beneficiaries. While concluding that Arizona's claims on behalf of Medicare Part B beneficiaries raised a substantial federal issue under the factors set forth in *Grable*, the MDL judge distinguished cases, like Alabama's, where relief is sought

---

[2] In its removal petition, Dey acknowledges that it lost the *Grable* argument on the first removal and that it is not relying on *Grable* as a basis for this second removal. *See* Notice of Removal, ¶¶ 33-35. Therefore, even Dey must concede that any reference to the MDL judge's denial of Arizona's motion to remand is wholly inappropriate.

[3] *See also* Amended Finding and Recommendation That Plaintiff State of Hawaii's Motion to Remand Be Granted, *State of Hawaii v. Abbott Laboratories, Inc., et al.*, CV-06-437 DAE-BMK, at p.11 (D. Haw. Oct. 27, 2006), attached hereto as Exhibit B.

solely under the state Medicaid statute. In fact, she recently remanded the State of Florida's pharmaceutical pricing case which pursues claims on behalf of the Medicaid system governed by Florida statute. *In re: Pharm. Indus. Average Wholesale Price Litig.*, 2006 WL 2563453, at *9 (D. Mass. Sept. 6, 2006). In that case, the MDL judge held that no actual, substantial, and disputed federal issue was implicated under *Grable* by Florida's claims, and remand was ordered. *Id.* at *10.

Therefore, even under the MDL judge's *Grable* analysis, the Alabama case should be remanded.

## CONCLUSION

For the reasons stated in Plaintiff's Motion to Remand, its Brief in Support of Motion to Remand, and this Supplemental Brief in Support of Motion to Remand, the State requests this Court to remand this action to the Circuit Court of Montgomery County, Alabama immediately and to award attorney fees and costs.

s/ Troy King
TROY KING
ATTORNEY GENERAL

STATE OF ALABAMA
300 State House
11 S. Union Street
Montgomery, Alabama 36130

Email: tking@ago.state.al.us

s/ Jere L. Beasley
Jere L. Beasley (BEA020)
W. Daniel "Dee" Miles, III (MIL060)
Clinton C. Carter (CAR112)
Deputy Attorneys General
BEASLEY, ALLEN, CROW, METHVIN, PORTIS
& MILES, P.C.
P. O. Box 4160

10

Montgomery, AL  36103-4160
(334) 269-2343
(334) 954-7555 (facsimile)

Email:  jere.beasley@beasleyallen.com
        dee.miles@beasleyallen.com
        clint.carter@beasleyallen.com

s/ Caine O'Rear III
Caine O'Rear III (ORE003)
Windy C. Bitzer (BIT005)
Deputy Attorneys General
HAND ARENDALL, L.L.C.
P. O. Box 123
Mobile, AL  36601
(251) 432-5511
(251) 694-6375 (facsimile)

Email:  corear@handarendall.com
        wbitzer@handarendall.com

Roger L. Bates (BAT006)
Deputy Attorney General
HAND ARENDALL, L.L.C.
1200 Park Place Tower
2001 Park Place North
Birmingham, AL  35203
(205) 324-4400
(205) 322-1163 (facsimile)

Email:  rbates@handarendall.com

Attorneys for the State of Alabama

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel.  I further certify that I have, on this day, served this pleading to counsel of record through the LexisNexis File and Serve system, pursuant to Case Management Order No. 2.

s/ Caine O'Rear III

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| STATE OF HAWAII, | ) | |
| | ) | |
| Plaintiff, | ) | CV. NO. 06-00437 DAE-BMK |
| | ) | |
| vs. | ) | AMENDED ORDER DENYING |
| | ) | DEFENDANT DEY, INC.'S |
| ABBOTT LABORATORIES, INC.; | ) | MOTION FOR LEAVE TO FILE |
| ALPHARMA USPD, INC.; | ) | SUPPLEMENTAL NOTICE OF |
| APOTHECON, INC.; | ) | REMOVAL |
| ASTRAZENECA | ) | |
| PHARMACEUTICALS LP; | ) | |
| ASTRAZENECA LP; AVENTIS | ) | |
| PHARMACEUTICALS, INC.; | ) | |
| AVENTIS BEHRING LLC n/k/a/ | ) | |
| ZLB BEHRING LLC; BARR | ) | |
| LABORATORIES, INC.; BAXTER | ) | |
| HEALTHCARE CORPORATION; | ) | |
| BAYER CORPORATION; BEN | ) | |
| VENUE LABORATORIES, INC.; | ) | |
| BOEHRINGER INGELHEIM | ) | |
| PHARMACEUTICALS, INC.; | ) | |
| BOEHRINGER INGELHEIM | ) | |
| ROXANE, INC. f/k/a ROXANE | ) | |
| LABORATORIES, INC.; BRISTOL- | ) | |
| MYERS SQUIBB CO.; | ) | |
| CENTOCOR, INC.; DEY, INC.; | ) | |
| FOREST PHARMACEUTICALS, | ) | |
| INC.; GLAXOSMITHKLINE | ) | |
| PHARMACEUTICALS, | ) | |
| HOFFMAN-LAROCHE, INC.; | ) | |
| HOSPRIA, INC.; IVAX | ) | |
| CORPORATION, INC.; IVAX | ) | |
| PHARMACEUTICAL, INC.; | ) | |
| JANSSEN PHARMACEUTICAL | ) | |
| PRODUCTS, LP; JOHNSON & | ) | |

EXHIBIT A

JOHNSON, INC.; MCNEIL-PPC,           )
INC.; MERCK & CO., INC.;             )
MYLAN LABORATORIES, INC.;            )
MYLAN PHARMACEUTICALS,               )
INC.; NOVARTIS                       )
PHARMACEUTICALS                      )
CORPORATOIN; ORTHO                   )
BIOTECH PRODUCTS, LP; PAR            )
PHARMACEUTICAL COS., INC.;           )
PFIZER, INC.; PHARMACIA              )
CORPORATION; ROCHE                   )
LABORATORIES, INC.; PUREPAC          )
PHARMACEUTICAL CO.;                  )
SANDOZ, INC.; SCHERING-              )
PLOUGH CORPORATION; SICOR            )
PHARMACEUTICALS, INC. f/k/a/         )
GENSIA SICOR                         )
PHARMACEUTICALS, INC.; TAP           )
PHARMACEUTICAL PRODUCTS,             )
INC.; TEVA                           )
PHARMACEUTICALS USA, INC.;           )
WARRICK PHARMACEUTICALS              )
CORPORATION; WATSON                  )
PHARMACEUTICALS, INC.;               )
WATSON PHARMA INC., f/k/a            )
SCHEIN PHARMACEUTICALS,              )
INC.; WATSON LABORATORIES,           )
INC.; DOE CORPORATIONS 1-            )
100; DOE ENTITIES 1-100.             )
                                     )
            Defendants.              )
_____       )

## ORDER DENYING DEFENDANT DEY, INC.'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL NOTICE OF REMOVAL

Defendant Dey, Inc. ("Dey") seeks leave to file a supplemental notice of removal in order to add a new substantive basis for removal, namely, that the federal government's service upon Dey of a recently unsealed *qui tam* complaint pursuant to the federal False Claims Act, 31 U.S.C. § 3729-32 (2000) (FCA) made this case removable under 28 U.S.C. §§ 1441 and 1446(b). After careful consideration of the Motion and the submissions and arguments of counsel, the Motion is hereby DENIED. This Motion is futile because the new substantive basis for removal is without merit.

## PROCEDURAL HISTORY AND BACKGROUND

Plaintiff State of Hawaii ("the State") filed this action in the Circuit Court of the First Circuit of Hawaii on April 27, 2006, alleging that Defendants "engage[d] in an unlawful scheme to cause Hawaii and its citizens to pay inflated prices for prescription drugs." (Pl.'s Mem. Sup. Mot. 5-6.) Specifically, the State claims that Defendants published phony "average wholesale prices" ("AWPs") and engaged in other deceptive acts that led to overpayments by both the State Medicaid program and individual Medicare beneficiaries in Hawaii. The State

3

alleges that these actions violated the Hawaii False Claims Act, the Hawaii Unfair or Deceptive Practices Act, and constituted common law intentional and/or negligent misrepresentation and unjust enrichment. The State alleges no federal causes of action.

Defendants filed a notice of removal on August 10, 2006. Defendants assert in this notice of removal that federal jurisdiction exists because the Medicare-based claims raise a substantial federal question. The State filed a motion to remand on August 25, 2006. A hearing on the remand motion was scheduled for October 12, 2006. During the evening of October 11, Defendant Dey filed the present Motion, asking the Court for leave to file a supplemental notice of removal.

Dey asserts that an additional basis for removal arose on September 11, 2006 after it had already filed its original notice of removal on August 10. This new ground claimed by Dey was the unsealing of <u>Ven-A-Care of the Florida Keys, Inc. ex. rel. United States v. Dey, Inc.</u>, Civ. No. 05-11084-MEL (D. Mass. filed August 22, 2006) (unsealed Sept. 9, 2006). The suit is a federal *qui tam* action brought on behalf of the United States by Ven-A-Care of the Florida Keys, Inc. ("Ven-A-Care") alleging that by reporting inflated AWPs, Dey violated the FCA. Dey now argues that the FCA provides an additional, independent basis for

4

jurisdiction that will allow it to remove this case to federal court.

At the hearing on October 12, the Court requested that the parties brief Dey's Motion. The State's Answer was submitted on October 18, and Dey's Reply was submitted October 19. A hearing was held on October 20, 2006.

## LEGAL STANDARD

Cases filed in state court may be removed to federal district court when the district courts have original subject matter jurisdiction over the case. 28 U.S.C. § 1441(a) (2000).[1] District courts of the United States have original subject-matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (2000). District courts also have supplemental jurisdiction over related claims and parties. See, e.g., 28 U.S.C. § 1367(a) (2000). Supplemental jurisdiction does not provide a basis for removal. Sygenta Crop Protection, Inc. v. Henson, 537 U.S. 28, 34 (2002) (holding that "[a]ncillary jurisdiction . . . cannot provide the original jurisdiction that petitioners must show in order to qualify for removal under § 1441"); Ahearn

---

[1]Section 1441(a) provides, in part, that "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

v. Charter Township of Bloomfield, 100 F.3d 451, 456 (6th Cir. 1996).

Even where original jurisdiction does exist, certain procedural requisites must be met in order to remove a case. Specifically, where the case is not initially removable, the defendant must file a notice of removal in the appropriate district court "within thirty days after the receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . ." 28 U.S.C. § 1446(b) (2000).

Where these procedural requisites are not met, or where the district court lacks subject matter jurisdiction, the case must be remanded to state court. See 28 U.S.C. § 1447(c) (2000). The removal statue is strictly construed in favor of remand and there is a "strong presumption against removal." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). The defendant "always has the burden of establishing that removal is proper." Id.

## DISCUSSION

Dey moves the Court for leave to supplement its notice of removal to include the Ven-A-Care FCA complaint as an additional, newly-arisen basis for removal. However, an attempt to remove the case on this new ground would be

both procedurally and substantively defective.  Procedurally, Dey's notice of the
Ven-A-Care suit does not meet the "order or other paper" requirement of §
1446(b).  Substantively, the Ven-A-Care suit still does  not provide the Court with
the original subject matter jurisdiction required for removal under § 1441(a).
Because Dey will not ultimately be able to remove the case on this new ground it
asserts, it would be futile to allow Dey to supplement its notice of removal.

## I.  PROCEDURAL ISSUES: § 1446(b)

### A.  Supplementing a Notice of Removal

A defendant may only remove a case within thirty days of receipt of
the initial pleading or an "order or other paper" that indicates the case is
removable.  28 U.S.C. § 1446(b).  After the expiration of the thirty day period, a
defendant is generally not allowed to amend the notice to add new grounds for
removal.  Arco Envtl. Remediation v. Dep't of Health and Envtl. Quality, 213 F.3d
1108, 1117 (9th Cir. 2000).  However, where a new ground for removal arises
during the pendency of the litigation, some courts have allowed the notice of
removal to be supplemented to set forth the newly-arisen ground even after the
expiration of the thirty-day time period.  See Davis v. Life Investors Ins. Co. of
America, 214 F.Supp.2d 691, 694 (S.D. Miss. 2002).  That is precisely what Dey

seeks to do here.

Dey argues that the Ven-A-Care FCA suit created a new ground for removal and that Dey should be permitted to supplement its notice of removal to include the new ground.[2] In this unique situation, Dey will not be procedurally barred from supplementing its notice of removal if it is able to meet the other procedural and jurisdictional requisites for removal.

## B. Relation Back

Dey argues not only that it should be allowed to supplement its notice of removal, but that this supplemented notice of removal should relate back to its original notice of removal under Federal Rule of Civil Procedure 15(d). Federal Rule of Civil Procedure 15(c) provides that an amendment or supplementation of a pleading relates back to the date of the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . . ." F.R.C.P. 15(c).

---

[2]The State does not seriously contest Dey's motion on this particular issue. It merely argues, in a footnote, that the motion should be denied "because of Dey's undue delay in filing it." (Pl.'s Mem. Opp. 2-3 n.1.) Because Dey filed the motion to supplement within thirty days of receiving notice of the Ven-A-Care FCA suit, however, the motion was not untimely.

Dey's supplemental notice of removal will not relate back to the original notice of removal. First, Dey provides no support for the proposition that a notice of removal constitutes a "pleading" within the meaning of Rule 15(c). In fact, Rule 7 of the Federal Rules of Civil Procedure indicates that "pleading" is a limited term:

> There shall be a complaint and an answer; a reply to a counterclaim denonminated as such; an answer to a cross-claim; a third-party complaint . . . and a third party answer, if a third-party complaint is served. No other pleading shall be allowed . . . ."

F.R.C.P. 7(a).

Second, even if a notice of removal were considered a pleading, the "claim or defense" asserted in Dey's supplement would not "ar[i]se out of the conduct, transaction or occurrence" asserted in its original notice of removal. <u>See</u> F.R.C.P. 15(c). The "claim or defense" that Dey now seeks to assert is its claim that the service of the Ven-A-Care FCA complaint created a new ground for jurisdiction that did not previously exist. In fact, it is only because Dey is asserting a "claim or defense" based on a new occurrence that Dey is not barred from supplementing its original notice of removal under the general rule prohibiting the amendment of removal notices. Dey's supplemental notice of removal, if allowed, will not relate back to its original removal notice.

## C. "Order or Other Paper"

Because Dey's supplemental notice of removal will not relate back to its original notice of removal, Dey's new notice of removal must be able to independently meet the procedural requirements of 1446(b). Section 1446(b) allows a defendant to file a notice of removal only after receiving "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . ." 28 U.S.C. § 1446(b). Dey contends that its receipt of the Ven-A-Care FCA complaint (or alternatively, the order unsealing the Ven-A-Care complaint) constituted just such a "receipt . . . of an . . . order or other paper," § 1446(b). While there may well be some instances in which a pleading or decision in a different case can meet the "other paper or order" requirement, this is not such an instance.

Generally, the "order or other paper" requirement of 1446(b) is met only by "documents generated within the state court litigation," Rose v. Beverly Health & Rehabilitation Services, Inc., 2006 WL 2067060 (E.D. Cal. 2006). According to the State, because the Ven-A-Care complaint and the order unsealing it are documents filed outside of the state case, they do not constitute an "order or other paper."

Dey, however, urges the Court to apply a narrow exception to this

10

general rule. Specifically, Dey asks the Court to follow two cases that have held external documents involving a sufficient nexus of parties and issues to be "order or other paper" for the purposes of 1446(b): <u>Doe v. American Red Cross</u>, 14 F.3d 196 (3d Cir. 1993) and <u>Green v. R.J. Reynolds Tobacco Co.</u>, 274 F.3d 263 (5th Cir. 2001). In <u>Doe</u>, a Supreme Court decision in a related case constituted an "order" where the decision expressly authorized that very same defendant to remove all actions against it to federal court. 14 F.3d at 201. In <u>Green</u>, a federal Court of Appeals decision in a related case also constituted an "order" where it involved the same defendants, a similar factual situation, the same legal issue, and precluded the defendants in <u>Green</u> from being sued under Texas law. 274 F.3d at 263. Even though the decision in the related case in <u>Green</u> did not specifically address removal, as had the related Supreme Court decision in <u>Doe</u>, the <u>Green</u> court reasoned that its effect was the same: it prohibited suit against the defendant in state court. <u>Id.</u> The federal forum was the only remaining available forum. <u>See id.</u>

That is not the case here. While the Ven-A-Care complaint does involve the same defendant, and arguably involves similar factual situations and legal issues, it does nothing to prohibit suit against Dey in state court. Nor does the order unsealing the Ven-A-Care complaint prohibit suit against Dey in state

court in any way.  Thus, even under Doe and Green, neither the Ven-A-Care

complaint nor the order unsealing it would constitute an "order or other paper" for

the purposes of § 1446(b).[3]  Because the requirements of § 1446(b) are not met, the

case is not removable and Dey's attempt to supplement the notice of removal

would be futile.


## II.  JURISDICTIONAL ISSUES: §1441(a)

In addition to failing procedurally under § 1446(b), Dey's attempt to

supplement its notice of removal would also fail substantively under § 1441(a).

Under § 1441(a), cases filed in state court may only be removed if the federal

district court has "original jurisdiction" over the matter.  § 1441(a).  Dey argues

that the Ven-A-Care suit, by invoking the FCA, gives the Court the necessary

original jurisdiction.  Dey contends that whenever a plaintiff sues under the FCA,

31 U.S.C. § 3732(b) automatically grants to federal courts original jurisdiction

over related suits by state government.

Specifically, § 3732(b) states:

> The district courts shall have jurisdiction over any action brought
> under the laws of any State for the recovery of funds paid by a State

---

[3]Moreover, it is questionable whether a complaint constitutes an order in the same way a
decision of a United States Court of Appeals or the United States Supreme Court does.

or local government if the action arises from the same transaction or occurrence as an action brought under section 3730.

§ 3732.  Dey contends that the "jurisdiction" referred to in the statute is actually "original jurisdiction."  Therefore, Dey argues, § 3732 gives the district courts original jurisdiction over this case because the Ven-A-Care action was brought under § 3730, because this case is brought by a state government, and because the action arguably arises from the same transaction or occurrence as the Ven-A-Care action.[4]

Dey's arguments are not persuasive.  As the State demonstrates, the language, legislative history, and context of § 3732(b) all indicate that it grants the district courts not original jurisdiction, but supplemental jurisdiction.

First, the language of § 3732(b) indicates that the jurisdiction it confers is dependent, not independent.  Federal jurisdiction under § 3732(b) exists

---

[4]    Dey also makes the novel argument that regardless of whether original jurisdiction is directly conferred on the district courts by § 3732(b), it is indirectly conferred on them by 28 U.S.C. § 1331.  Section 1331 provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Dey contends that because the False Claims Act is a law of the United States, and because § 3732(b) provides the State with the ability to intervene in the Ven-A-Care case, that the state case now arises under the laws of the United States just as if the State had alleged a federal cause of action against Dey.

Putting aside the tautological nature of this argument, common sense and basic principles of statutory construction dictate that Dey's argument must be false.  If Dey is correct, then all grants of supplemental jurisdiction would also simultaneously be grants of original jurisdiction.  Even the supplemental jurisdiction statute itself, 28 U.S.C. § 1367, would grant original jurisdiction under Dey's construction of § 1331.  This is obviously incorrect, and Dey did not pursue this argument at the hearing.

only where there is another independent action separately grounded in the original jurisdiction. Section 3732(b) does not stand on its own, but serves only to add jurisdiction for related actions: in short, it exists to supplement the original jurisdiction the district courts have over suits brought directly under the FCA.

Second, the legislative history of § 3732(b) supports the conclusion that it allows – but does not force – states to intervene in FCA actions. This section was added at the urging of the National Association of the State Atttorney's General, and was intended to "allow[] State . . . governments to join State law actions with False Claims Act actions brought in Federal district court." S. Rep. No. 345, 99th Cong., 2nd Sess., at 16 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5281. Similarly, courts interpreting the FCA have recognized that the purpose of § 3732(b) is to authorize "permissive intervention by states for recovery of state funds." SCS Business & Technical Inst., Inc., 173 F.3d, 870, 880 (D.C. Cir. 1999). Without § 3732(b), states would be barred from intervening in FCA actions by §3730(b)(5). Id. It seems unlikely that § 3732(b) was ever intended to be able to force states into a federal forum without alleging any federal causes of action.

Third, the broader context of Congressional action further supports the conclusion that § 3732(b) gives district courts supplemental, not original, jurisdiction. Had Congress wanted to create original jurisdiction, it would have

used the words "original jurisdiction." as it has in numerous other places. See, e.g., 15 U.S.C. 6614( c)(1) ("the district courts of the United States shall have original jurisdiction of any Y2K action that is brought as a class action"); 5 U.S.C. § 9007 (stating that "district courts of the United States shall have original jurisdiction" over long-term care insurance claims); 12 U.S.C. § 1441(a)(11) ("any civil action, suit, or proceeding to which the Thrift Depositor Protection Oversight Board is a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction").[5]

The language, legislative history, and context all indicate that § 3732(b) does not grant the district courts original jurisdiction over related claims brought by state governments. Rather, it grants them only supplemental jurisdiction. Because supplemental jurisdiction cannot be a basis for removal, Sygenta Crop Protection, Inc., 537 U.S. at 34, the Ven-A-Care suit does not provide Dey with an additional substantive basis for removing this case. Dey's motion to amend its notice of removal on this ground would be futile.

---

[5] Furthermore, it makes sense that Congress did not use the term "supplemental jurisdiction" in § 3732(b), since it was not until 1990 that the various pre-existing types of supplemental jurisdiction was codified as "supplemental jurisdiction" by 28 U.S.C. § 1367. Section 3732(b) was passed in 1986, four years before this change in the way supplemental jurisdiction was approached.

<u>CONCLUSION</u>

For the foregoing reasons, Dey's Motion is hereby DENIED on the grounds of futility.

IT IS SO ORDERED.

DATE: Honolulu, Hawaii, October 27, 2007



/s/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

<u>State of Hawaii v. Abbot Labs., Inc.;</u> AMENDED ORDER DENYING DEFENDANT DEY, INC.'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL NOTICE OF REMOVAL; CV No. 06-00437 DAE-BMK.                    16

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| STATE OF HAWAII, | ) | |
| | ) | |
| Plaintiff, | ) | CV. NO. 06-00437 DAE-BMK |
| | ) | |
| vs. | ) | AMENDED FINDING AND |
| | ) | RECOMMENDATION THAT |
| ABBOTT LABORATORIES, INC.; | ) | PLAINTIFF STATE OF HAWAII'S |
| ALPHARMA USPD, INC.; | ) | MOTION TO REMAND BE |
| APOTHECON, INC.; | ) | GRANTED |
| ASTRAZENECA | ) | |
| PHARMACEUTICALS LP; | ) | |
| ASTRAZENECA LP; AVENTIS | ) | |
| PHARMACEUTICALS, INC.; | ) | |
| AVENTIS BEHRING LLC n/k/a/ | ) | |
| ZLB BEHRING LLC; BARR | ) | |
| LABORATORIES, INC.; BAXTER | ) | |
| HEALTHCARE CORPORATION; | ) | |
| BAYER CORPORATION; BEN | ) | |
| VENUE LABORATORIES, INC.; | ) | |
| BOEHRINGER INGELHEIM | ) | |
| PHARMACEUTICALS, INC.; | ) | |
| BOEHRINGER INGELHEIM | ) | |
| ROXANE, INC. f/k/a ROXANE | ) | |
| LABORATORIES, INC.; BRISTOL- | ) | |
| MYERS SQUIBB CO.; | ) | |
| CENTOCOR, INC.; DEY, INC.; | ) | |
| FOREST PHARMACEUTICALS, | ) | |
| INC.; GLAXOSMITHKLEIN | ) | |
| PHARMACEUTICALS, | ) | |
| HOFFMAN-LAROCHE, INC.; | ) | |
| HOSPRIA, INC.; IVAX | ) | |
| CORPORATION, INC.; IVAX | ) | |
| PHARMACEUTICAL, INC.; | ) | |
| JANSSEN PHARMACEUTICAL | ) | |
| PRODUCTS, LP; JOHNSON & | ) | |

EXHIBIT B

JOHNSON, INC.; MCNEIL-PPC,                )
INC.; MERCK & CO., INC.;                  )
MYLAN LABORATORIES, INC.;                 )
MYLAN PHARMACEUTICALS,                    )
INC.; NOVARTIS                            )
PHARMACEUTICALS                           )
CORPORATOIN; ORTHO                        )
BIOTECH PRODUCTS, LP; PAR                 )
PHARMACEUTICAL COS., INC.;                )
PFIZER, INC.; PHARMACIA                   )
CORPORATION; ROCHE                        )
LABORATORIES, INC.; PUREPAC               )
PHARMACEUTICAL CO.;                       )
SANDOZ, INC.; SCHERING-                   )
PLOUGH CORPORATION; SICOR                 )
PHARMACEUTICALS, INC. f/k/a/              )
GENSIA SICOR                              )
PHARMACEUTICALS, INC.; TAP                )
PHARMACEUTICAL PRODUCTS,                  )
INC.; TEVA                                )
PHARMACEUTICALS USA, INC.;                )
WARRICK PHARMACEUTICALS                   )
CORPORATION; WATSON                       )
PHARMACEUTICALS, INC.;                    )
WATSON PHARMA INC., f/k/a                 )
SCHEIN PHARMACEUTICALS,                   )
INC.; WATSON LABORATORIES,                )
INC.; DOE CORPORATIONS 1-                 )
100; DOE ENTITIES 1-100.                  )
                                          )
            Defendants.                   )
                                          )
_____       )

## FINDING AND RECOMMENDATION THAT PLAINTIFF STATE OF HAWAII'S MOTION FOR REMAND BE GRANTED

Before the Court is Plaintiff State of Hawaii's Motion for Remand. After careful consideration of the Motion, memoranda, and arguments of counsel, the Court herebey FINDS & RECOMMENDS that Plaintiff's Motion be GRANTED.

## BACKGROUND

Plaintiff State of Hawaii (the "State") filed this action in the Circuit Court of the First Circuit of Hawaii, alleging that Defendants "engage[d] in an unlawful scheme to cause Hawaii and its citizens to pay inflated prices for prescription drugs." (Pl.'s Mem. Supp. Mot. 5-6.) Specifically, the State claims that Defendants published phony "average wholesale prices" ("AWPs") and engaged in other deceptive acts that led to overpayments by both the State Medicaid program and Medicare beneficiaries in Hawaii. The State alleges that these actions violated the Hawaii False Claims Act, the Hawaii Unfair or Deceptive Practices Act, and constituted common law intentional and/or negligent misrepresentation and unjust enrichment.

3

The State filed its original Complaint on April 27, 2006. No Defendant was served with the Complaint prior to July 21, 2006. However, on May 25, Defendants Schering-Plough Corporation ("Schering Plough") and its subsidiary Warrick Pharmaceuticals Corporation ("Warrick") served the State with a Notice of Deposition.

Defendants removed this case to federal court on August 10, 2006. On September 12, 2006, a Conditional Transfer Order for this case was filed by the Judicial Panel on Multidistrict Litigation to transfer the case to the District of Massachusetts for consolidated pretrial proceedings with a number of similar cases. (Defs.' Mem. Opp. Mot. Ex. A.)

The State now moves for remand for lack of subject matter jurisdiction and untimely filing of the notice of removal.

LEGAL STANDARD

District courts of the United States have original subject-matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (2000). Generally, the plaintiff can only invoke this federal question jurisdiction by pleading a cause of action created by federal law. Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S.

4

308, 125 S.Ct. 2363, 2366 (2005).

In certain cases, however, federal question jurisdiction exists even absent a federal cause of action. Id. at 2366-67. Federal courts have subject matter jurisdiction over state law claims that "implicate significant federal issues." Id. at 2367. Under Grable, significant federal issues are implicated when the state law claims (1)"necessarily raise a stated federal issue," (2) which are "actually disputed and substantial," (3) and which "a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id. In Grable, the meaning of a federal tax provision that implicated the government's ability to satisfy its claims from the property of delinquents constituted a significant federal issue sufficient to create federal jurisdiction. Id. at 2368. A significant federal issue did not exist, however, where a state law tort claim involved an allegation that a drug company had violated a federal branding law. Merrell Dow Pharm., Inc. v. Thomson, 478 U.S. 804 (1986).

When a case involving a federal question is originally filed in state court, the defendants may remove it to federal court. 28 U.S.C. § 1441(b). Removal notices must be filed "within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ." 28

U.S.C. § 1446(b).

Where removal is not proper, the case must be remanded to state court.  See 28 U.S.C. § 1447(c) (2000).  The removal statue is strictly construed in favor of remand and there is a "strong presumption against removal."  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).  The defendant "always has the burden of establishing that removal is proper."  Id.

## DISCUSSION

The State moves for remand of this case on two grounds: first, that the notice of removal was untimely; second, that the Court lacks subject matter jurisdiction over this case.  Although the State's first argument fails, its second argument prevails.  This case does not implicate federal issues significant enough for this court to exercise subject matter jurisdiction.

## I. TIMELINESS

To be timely, a notice of removal must be filed "within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ." 28 U.S.C. § 1446(b).  A defendant's right to remove is

6

triggered only by formal process, "not by mere receipt of the complaint unattended by any formal service." Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 348 (1999). On its face, Defendants' removal action is timely. The notice of removal was filed on August 10, 2006, less than thirty days after the first Defendant was formally served on July 21.

Nonetheless, the State argues that by serving it with a deposition notice, Schering Plough and Warrick constructively waived service. The State further argues that this waiver of service started the thirty-day removal period for all Defendants, and that therefore the notice of removal was untimely because it was filed more than thirty days after the first Defendant allegedly waived service.

The State's argument fails for two reasons. First, it is not enough for a defendant to constructively waive service. Under Murphy Bros., a defendant must "agree[] to waive service" in order to start the thirty day removal period. 526 U.S. at 348. There was no such agreement to waive service here.

Second, even if one of the Defendants had agreed to waive service, the thirty day removal period would not have commenced. The only United States Court of Appeals to explicitly address the issue since Murphy Bros. held that under Murphy Bros., the thirty day removal period only begins after the last defendant is served. See Marano Enter. of Kansas v. Z-Teca Rests., 254 F.3d 753, 757 (8th Cir.

2001). The last-served rule has similarly been followed by Ninth Circuit district courts since Murphy Bros.. See, e.g., Tomlinson Black North Idaho v. Kirk-Hughes, 2006 WL 1663591 (D. Idaho June 8, 2006). Because the last Defendant had not even been formally served by August 10, Defendants' notice of removal was timely filed under § 1446(b).

## II. FEDERAL QUESTION JURISDICTION

The State also moves for remand on the grounds that the Court lacks subject matter jurisdiction over this case. Here, the State prevails.

Defendants seek to remove this case based on the narrow, but long-standing exception that certain cases implicate federal issues significant enough for federal courts to exercise jurisdiction over them although no federal claims or causes of action are stated. Defendants argue that Hawaii's claim to recover Medicare Part B co-payments on behalf of Hawaii Medicare Part B beneficiaries is just such a case, and that "it requires the resolution of issues of federal law under the Medicare statutes and regulations." (Notice of Removal 7.) In particular, Defendants argue that "[t]he meaning of AWP under the Medicare statute is in dispute and will determine whether the State can succeed on its theory of the case." (Defs.' Mem. Opp. 14.)

8

Whether the meaning of AWP under the Medicare statute actually does implicates a significant federal issue is governed by <u>Merrell Dow</u> and the three-part test of <u>Grable</u>.  Here, it is not disputed that the state law claims meet the threshold requirement of "necessarily rais[ing] a stated federal issue," <u>Grable</u> 125 S.Ct. 2368.  What Defendants bear the burden of showing here is (1) that the meaning of AWP in the Medicare statute is "actually disputed and substantial," <u>id.</u>, and (2) that this is the type of case that "a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities," <u>id.</u>  Any doubts will be resolved in favor of remand.  <u>Gaus</u>, 980 F.2d at 566.

A.  <u>"Actually Disputed and Substantial"</u>

Defendants are unable to meet their burden of showing that the meaning of the Medicare provisions at issue are either actually disputed or substantial enough to create federal jurisdiction.  First, and most importantly, Defendants fail to show that determining the meaning of AWP is "substantial" under <u>Grable</u> and <u>Merrell Dow</u>.  Defendants argue that because Medicare is "an entirely federal program," the  federal courts "have a special responsibility to entertain claims on behalf of Medicare beneficiaries." (Defs.' Mem. Opp. Mot. 17-

18.)  Additionally, they argue, "inconsistent determinations of what AWP was

understood to mean under the Medicare statute in these various cases could create

collateral confusion and inconsistencies in the administration of federally

supported Medicaid programs." (Defs. Mem. Opp. Mot. 18-19.)

Defendants' position receives some support from Judge Saris' recent

ruling in State of Arizona v. Abbot Laboratories, Inc., MDL No. 1456, Civ. No.

01-12257-PBS (D. Mass. Oct. 24, 2006). In State of Arizona, Judge Saris

concluded that the meaning of AWP is substantial because (1) "[t]he government

has a strong national interest in prohibiting fraud upon medicare beneficiaries

because fraudulent acts threaten Medicare's integrity"; (2) how AWP is interpreted

will greatly effect the Medicare litigants in Arizona and also in other states; and,

(3) determining the meaning of AWP "directly impacts the viability and

effectiveness of the federal Medicare program."  MDL No. 1456, Civ. No. 01-

12257-PBS, Slip Opinion at 8-9.

The State, however, contends that it cannot be the case that mere

construction of a federal statute, by itself, is sufficient to create federal jurisdiction.

If it were, the State argues, "then any time the interpretation of a federal statute

arises in the context of a state law claim, federal jurisdiction would exist." (Pl.'s

Reply 5.)  Moreover, the State argues, the issue is not substantial because AWP is

no longer the standard for reimbursement under Medicare.

     The State prevails, Judge Saris' recent ruling notwithstanding.   Just like the claims in <u>Merrell Dow</u>, these are state law tort claims that rest in part on a federal standard.   This is a far different set of facts than in <u>Grable</u>, where the ability of the Internal Revenue Service to enforce the tax code through tax liens was at issue.   Here, the resolution of the meaning of AWP will have little effect on the future viability of the Medicare program since the AWP standard has been abandoned.   While it may well be the case that the meaning of AWP is a substantial issue for the parties, it is no longer a substantial issue for the federal government.

     Moreover, while Congress's failure to create exclusive federal jurisdiction for cases involving improper notice in tax foreclosure actions might well be attributed to oversight, the same cannot be said for the failure to create exclusive federal jurisdiction for violations of the Medicare statute.   In other words, if Congress had thought that AWP and other Medicare provisions implicated a substantial federal interest, it could have ensured that only federal courts would hear such cases.   It did not.

     Second, in addition to failing to show that the meaning of "AWP" is "substantial," Defendants also fail to show that the meaning of AWP is "actually

disputed." Defendants argue that the meaning of AWP is disputed because "there is evidence that Congress understood that AWPs did not represent the actual cost providers paid for the drugs . . . ." (Defs.' Mem. Opp. 15.) However, they neither produce evidence to this effect, nor do they even articulate a possible alternative meaning for "average wholesale price." While the meaning of AWP may be nominally disputed by Defendants, they have not shown that it is actually disputed.

This is the same conclusion reached, albeit for slightly different reasons, in Commonwealth of Pennsylvania v. Tap Pharmaceutical Products, Inc., 2005 U.S. Dist. LEXIS 19967 (E.D. Penn. 2005) (holding that "[t]he term 'average wholesale price' is not 'actually disputed' because the Commonwealth does not premise its claim on the construction of these words as they appear in the applicable Medicare statute and regulations) and Texas v. Abbot Laboratories., Inc. 2005 U.S. dist. LEXIS 42434 (W.D. Tex. 2005) (holding that "[i]t is clear that Plaintiffs do not premise their claims on the definition of the term 'Medicare AWP' . . . [and so] no court need ascribe any meaning to the term for either party to prevail). Defendants fail to meet their burden of showing that the State's claim involves issues that are actually disputed or substantial enough for federal jurisdiction to exist, and so the case must be remanded.

12

## B.  Disturbing the Balance

Additionally, it may well be the case that taking cases such as this would "disturb the congressionally approved balance of federal and state judicial responsibilities," Grable 125 S.Ct. 2368.  Unlike in Grable, where very few foreclosure cases were likely to implicate a federal interest, here, as in Merrell Dow, a substantial number of state tort cases are likely to implicate a federal statute.  This might disturb the congressionally approved balance and lead to the clogging of the federal courts.

In fact, several courts addressing this precise issue have determined just that.  See Wisconsin v. Abbott Laboratories, 390 F.Supp.2d 815 (W.D. Wis. 2005); Minnesota v. Pharmacia Corp., 2005 U.S. Dist. LEXIS 27638 (D. Minn. 2005). At least two courts, however, have found to the contrary.  In one instance, the decision was distinguished from Wisconsin (and from Merrell Dow) on the grounds that a federal contract was involved.  See Santa Clara v. Astra, USA, Inc., 401 F.Supp.2d 1022, 1030 (N.D. Cal. 2005) ("The instant case is also distinct: it involves a federal contract whereas none was at issue in Wisconsin.  The instant case therefore has a higher quotient of federal interest. . . . [because this is] the type of task that already falls to federal courts.") Here, as in Wisconsin and Minnesota, no federal contract is at issue.

The other case to the contrary is <u>State of Arizona</u>, MDL No. 1456, Civ. No. 01-12257-PBS, Slip Opinion at 9-11.  There, Judge Saris  found that "granting federal jurisdiction in the case does not open the door to a horde [of cases]: the horde has already stormed the door." <u>Id.</u>  While it may be that this particular horde has already stormed the door, the inquiry should rather focus on how many other hordes are gathered in wait on the horizon.  Allowing federal jurisdiction here, where only a federal standard is implicated, would likely lead to many other cases in unrelated matters being regularly removed to federal court.  Adjudication of this type of case could well disturb the congressionally approved balance between federal courts and state courts, providing an additional grounds for remand.

CONCLUSION

For the foregoing reasons, the Court FINDS and RECOMMENDS

that Plaintiff's Motion for Remand be GRANTED.


DATE: Honolulu, Hawaii, October 27, 2007



/s/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge


State of Hawaii  v. Abbot Labs., Inc.; AMENDED FINDING AND RECOMMENDATION
THAT PLAINTIFF'S MOTION FOR REMAND BE GRANTED; CV No. 06-00437 DAE-
BMK.