IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| STATE OF ALABAMA, | |
| Plaintiff, | Civil Action No. 2:06cv00920-MHT |
| -against- | |
| ABBOTT LABORATORIES, INC., et al., | |
| Defendant. | |

DEFENDANT DEY, L.P.'S BRIEF IN OPPOSITION
TO PLAINTIFF'S MOTION TO REMAND

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ............................................................................................... 6

ARGUMENT .................................................................................................................. 8

I.     THIS COURT HAS ORIGINAL JURISDICTION OVER THE ALABAMA
       ACTION UNDER 37 U.S.C .................................................................................. 8

       A.     This Court Has Original Subject Matter Jurisdiction Over This Action
              Because Section 3732(b) is An Independent Statutory Grant of
              Jurisdiction .............................................................................................. 8
       B.     This Action May Be Removed Under 1441 et seq ..................................... 11
              1.     Under Controlling Supreme Court Precedent This Case is
                     Removable ...................................................................................... 11
              2.     Alabama's Legislative History Argument Supports Dey ................... 13
              3.     Section 3732(b) Creates Jurisdiction Over Actions, Not
                     Supplemental Jurisdiction Over Claims............................................ 15
       C.     Federal Question Jurisdiction Also Exists Under 28 U.S.C ................................ 17

II.    DEY'S OCTOBER 11 NOTICE IS TIMELY UNDER 28 U.S.C .................................. 20

       A.     The "Other Paper" Need Not Arise from the State Court Action......................... 20
       B.     The Cases Upon Which Plaintiff Relies Are Inapposite..................................... 24
       C.     The "Voluntary Action" Rule Does Not Apply in This Case............................... 25
       D.     The Federal Qui Tam Action Against Dey is A Ground for Removal
              Separate and Apart from the Qui Tam Action against Abbott............................. 28
       E.     Par Pharmaceutical has Timely Consented to Removal ..................................... 30

III.   PLAINTIFF'S SEVERANCE ARGUMENTS ARE MERE GAMESMANSHIP ......... 31

CONCLUSION.............................................................................................................. 31

## TABLE OF AUTHORITIES

### CASES

Adams v. Charter Communications VII, LLC, 356 F. Supp. 2d 1268 (M.D. Ala. 2005) ...................................................................................................................30

Ahearn v. Charter Township of Bloomfield, 100 F.3d 451 (6th Cir. 1996) ......................16

Allen v. Monsanto Co., 396 F. Supp. 2d 728 (S.D.W.V. 2005) ........................................24

American National Red Cross v. S.G. and A.E., 505 U.S. 247 (1992) ...............4, 9, 11, 28

Ancar v. Murphy Oil U.S.A., Inc., Nos. 06-3246 - 06-3262, 2006 WL 2850445 (E.D. La. Oct. 3, 2006)...................................................................................................20

Avco Corp. v. Local 1010 of the International Union, 287 F. Supp. 132 (D. Conn. 1968) .....................................................................................................................24, 25

Beard v. Lehman Brothers Holdings, Inc., No. 2:06-CV-653, 2006 WL 2661170 (M.D. Ala. September 15, 2006)...................................................................................31

Black v. Brown & Williamson Tobacco Corp., No. 4:05CV01544, 2006 WL 744414 (E.D. Mo. March 17, 2006)..........................................................................24

Blair v. Shanahan, 38 F.3d 1514 (9th Cir. 1994), cert. denied, 514 U.S. 1066................14

Breuer v. Jim's Concrete of Brevard, Inc., 292 F.3d 1308 (11th Cir. 2002)......5, 11, 12, 32

Breuer v. Jim's Concrete of Breward, Inc., 538 U.S. 691 (2003) .............................5, 11, 12

Brierly v. Alusuisse Flexible Packaging, Inc., 184 F.3d 527 ( 6th Cir. 1999).............29, 30

Brill v. Countrywide Homes, 427 F.2d 446 (7th Cir. 2005)...............................................13

Broderick v. Dellasandro, 859 F. Supp. 176 (E.D.Pa. 1994).............................................21

Brown v. Pitches, 13 Cal. 3d 518 (Cal. 1975)......................................................................9

Burns v. Prudential Sec., Inc., No. 3:06CV748, 2006 WL 1932310 (N.D. Ohio July 10, 2006)...............................................................................................................24

California v. Keating, 986 F.2d 346 (9th Cir. 1993)........................................15, 17, 26, 28

City of Chicago v. International College of Surgeons, 522 U.S. 156 (1997) ....................26

Collings v. E-Z Serve Convenience Stores, Inc., 936 F. Supp. 892 (N.D. Fla. 1996) ..................................................................................................................29

Craft v. Philip Morris Cos., Inc., No. 4:05 CV 01531, 2006 WL 744415 (E.D. Mo. March 17, 2006) ..........................................................................................24

Crocker v. A.B. Chance Co., 270 F. Supp. 618 (S.D. Fla. 1967) ......................................29

Davis v. Life Investors Insurance Co. of American, Inc., 214 F. Supp. 2d 691 (S.D. Miss. 2002) ...............................................................................................27, 28

Doe v. American Red Cross, 14 F.3d 196 (3d Cir. 1993)......................................... passim

Dowd v. Alliance Mortgage Co., 339 F. Supp. 2d 452 (E.D.N.Y. 2004)..........................26

EEX Corp. v. ABB Vetco Gray, Inc., 161 F. Supp. 2d 747 (S.D. Tx. 2001) ....................18

Elm v. Soo Line R.R., No. 06-1817, 2006 WL 1426594 (D. Minn. May 22, 2006).........24

FDIC v. Otero, 598 F.2d 627 (1st Cir. 1979).....................................................................12

Fitzgerald v. Bestway Services, Inc, 284 F. Supp. 2d at 1317...........................................29

G.M. Sign, Inc. v. Global Sharp Solutions, Inc., 430 F. Supp. 2d 826 (N.D. Ill. 2006) ..................................................................................................................31

Goldstein v. Bear, Stearns & Co., Inc., No. 87CV149, 1988 WL 95135 (E.D.N.Y. Sept. 7, 1988) ..................................................................................................30

Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing., 545 U.S. 308 (2005)..........................................................................................2, 3, 23, 24

Green v. R.J. Reynolds Tobacco Co., 274 F.3d 263 (5th Cir. 2001)......................... passim

iGames Entertainment, Inc. v. Regan, No. 04-CV-4179, 2004 WL 2538285 ...................21

In Re Asbestos Litigation, No. CV01-1790, 2002 WL 649400 (D. Or. Feb. 1, 2002) ..................................................................................................................28

In Re Donington, Karcher, Salmond, Ronan & Reinone, P.A., 194 B.R. 750 (D.N.J. 1996)..............................................................................................................28

In Re Estate of Tabas, 879 F. Supp. 464 (E.D. Pa. 1995)..................................................16

In re Pharm. Industrial Average Wholesale Price Litigation, MDL No. 1456, 2006 WL 3029193 (D. Mass. Oct. 24, 2006)..........................................................................3

In re Pharm. Industrial Average Wholesale Price Litigation, 431 F. Supp. 2d 98
    (D. Mass. 2006)..........................................................................................23, 24

Insinga v. LaBella, 845 F.2d 249 (11th Cir. 1988)........................................................26, 28

International Paper Co. v. The Inhabitants of the Town of Jay, Maine, 887 F.2d
    338 (1st Cir. 1989) ...........................................................................................14

Johansen v. Employee Benefit Claims, Inc., 668 F. Supp. 1294 (D. Minn. 1987)......24, 27

Klink v. Metavante Corp., No. 02-73360, 2002 WL 31962610 (E.D. Mich. Dec.
    16, 2002) ...........................................................................................................24

Kocaj v. Chrysler Corp., 794 F. Supp. 234 (E.D. Mich. 1992) .........................................24

Krasnow v. Texaco, Inc., 773 F. Supp. 806 (E.D. Va. 1991) ............................................29

Lozano v. G.P.E. Controls, 859 F. Supp. 1036 (S.D. Texas 1994) ...................................24

Marano Enterprises v. Z-Teca Restaurants, L.P., 254 F.3d 753 (8th Cir. 2001) .........29, 30

Morsani v. Major League Baseball, 79 F. Supp. 2d 1331 (M.D. Fla. 1999) .....................24

Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999) ......28, 29, 30

N. America Van Lines, Inc. v. Coleman, 633 F. Supp. 632 (N.D. Ill. 1986) ....................16

Parker v. Scrap Metal Processors, Inc., 386 F.3d 993 (11th Cir. 2004) ..............................9

Pence v. Kleppe, 529 F.2d 135 (9th Cir. 1976) .................................................................10

Pennsylvania v. TAP Pharm. Products, Inc., 415 F. Supp. 2d 516 (E.D. Pa. 2005)..........23

Potter v. Carvel Stores, Inc., 203 F. Supp. 462 (D. Md.1962) aff'd...................................27

Rose v. Beverly Health and Rehabilitation Svcs., Inc., No. 1:06CV0067, 2006
    WL 2067060 (E.D. Cal. July 22, 2006) ..........................................................24

S.G and A.E. v. American National Red Cross, 938 F.2d 1494 (1st Cir. 1991)...............10

S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489 (5th Cir. 1996) .....................................26

Sanchez v. Liggett & Myers, Inc., 187 F.3d 486 (5th Cir. 1999) .................................21, 22

Save Our Sound Fisheries Association v. Callaway, 429 F. Supp. 1136 (D.R.I. 1977) ................................................................................................................10

Sclafani v. Insurance Co. of N. America, 671 F. Supp. 364 (D. Md. 1987) .....................24

Sebring Homes Corp v. T.R. Arnold & Associates, 927 F. Supp. 1098 (N.D. Ind. 1995) ................................................................................................................16

Simms v. Roclan Energy Services, Inc., 137 F. Supp. 2d 731 (W.D. La., 2001) ..........9, 18

State of Alabama v. Abbott Laboratories, Inc., et al., No. 2:05cv647-T (M.D. Ala. August 11, 2005) .............................................................................................3

State of Minnesota v. Pharmacia Corp., No. 05-1394 (PAM/JSM), 2005 WL. 2739297 (D. Minn. Oct. 24, 2005) .................................................................23

State of Wisconsin v. Abbott Laboratoriess, 390 F. Supp. 2d 815 (W.D. Wis. 2005) ...........................................................................................................23, 24

T.L.G v. M.E.H., 692 P.2d 1227 (Mont. 1984) ...................................................9

Tafuri v. Jeppson Sanderson Co., 25 F. Supp. 2d 1364 (S.D. Fla. 1998) ..........................16

Tamiami Partners, Ltd. v. Miccuksee Tribe of Indians of Florida, 177 F.3d 1212 (11 Cir. 1999), cert. denied, 529 U.S. 1018 (2000) ......................................31

Thomson v. Able Supply Co., 179 F. Supp. 2d 693 (W.D. Tex. 2002) ............................28

TMI Litigation Cases, 940 F.2d 832 (3rd Cir. 1991) ..........................................19

U.S. ex rel. Anthony v. Burke Engineering Co., 356 F. Supp. 2d 1119 (C.D. Cal. 2005) .................................................................................................................9

U.S. ex rel Thistlewaite v. Dowty,110 F.3d 861 (2d Cir. 1997) ...........................................8

U.S. v. Sequel Contractors, Inc., 402 F. Supp. 2d 1142 (C.D. Cal. 2005) .......................3, 8

United States ex rel. St. John LaCorte v. Merck & Co., No. 99-3807, 2004 U.S. Dist. LEXIS 4860 (E.D. La. March 24, 2004) ...................................................3, 23, 29

United States of America ex rel. Ven-A-Care of the Florida Keys, Inc. v. Dey, Inc. et al., Civil Action No. 05-11084-MEL (D. Mass.) .................................................1

United States v. Rice, 327 U.S. 742, 66 S. Ct. 835, 90 L. Ed. 982 (1946) ........................24

Weems v. Louis Dreyfus Corp., 380 F.2d 545 (5th Cir. 1967) .........................................27

Yarnevic v. Brinks, Inc., 102 F.3d 753 (4th Cir. 1996)......................................................21

Young v. Chubb Group of Insurance Cos., 295 F. Supp. 2d 806 (N.D. Ohio 2003)........20

ZB Holdings Inc. v. White, 144 F.R.D. 42 (S.D.N.Y. 1992)..............................................9

## STATUTES

31 U.S.C. § 3729 *et seq.*........................................................................................................18

31 U.S.C. § 3730(b)(5) ..........................................................................................................13

31 U.S.C. § 3732(b) ......................................................................................................*passim*

43 U.S.C. § 1349(b) .......................................................................................................10, 18

33 U.S.C. § 1365 ....................................................................................................................10

33 U.S.C. § 1365(a) .................................................................................................................9

33 U.S.C. § 1415(g) .................................................................................................................9

25 U.S.C. § 345....................................................................................................................9, 10

26 U.S.C. § 7424..............................................................................................................14, 15

28 U.S.C. § 1331 ............................................................................................................*passim*

28 U.S.C. § 1367 ....................................................................................................................16

28 U.S.C. § 1367(a) .................................................................................................................1

28 U.S.C. § 1367(c) ...............................................................................................................32

28 U.S.C. §1441(a) ..............................................................................................................5, 12

28 U.S.C. § 1441(c) ...............................................................................................................16

28 U.S.C. § 1441 *et seq.*..........................................................................................................1

28 U.S.C. § 1445 ....................................................................................................................15

28 U.S.C. § 1446(b) ....................................................................................................5, 20, 26

28 U.S.C. § 2323 ...................................................................................................14

28 U.S.C. § 2403(b) ..............................................................................................14

18 U.S.C. § 3626 ...................................................................................................14

31 U.S.C. §§ 3729-33 .......................................................................................7, 17

43 U.S.C. § 1331 *et seq* ...................................................................................1, 17

## MISCELLANEOUS

14A Wright, Miller, & Cooper, *Federal Practice and Procedure*, § 3732 at 520 ............21

C. Moore, 16 *Moore's Federal Practice* § 107.30[3][e] (3d ed. 2006) .............................26

H. R. Rep. No. 99-660, at 17 (1986)....................................................................................4

S. Rep. 99-345, at 16 (1986)................................................................................................3

1986 U.S.C.C.A.N. 5266, 5281 ...........................................................................................3

## PRELIMINARY STATEMENT

On October 11, 2006, Defendant Dey, L.P. ("Dey") removed this civil action from the Circuit Court of Montgomery County, Alabama (the "Alabama Action") to this Court with the consent of all Defendants pursuant to 28 U.S.C. § 1441 *et seq.*, 28 U.S.C. §§ 1331, 1367(a), and 31 U.S.C. § 3732(b). This action became removable on September 11, 2006, when the United States delivered to Dey's counsel the complaint in an action captioned *United States of America ex rel. Ven-A-Care of the Florida Keys, Inc. v. Dey, Inc. et al.*, Civil Action No. 05-11084-MEL (D. Mass.) (the "Federal *Qui Tam* Action"), brought pursuant to the federal False Claims Act, 31 U.S.C. § 3729 *et seq.* (the "FCA"). (A copy of the complaint in the Federal *Qui Tam* Action ("Federal *Qui Tam* Complaint") is annexed to Dey's Notice of Removal filed on October 11, 2006 ("October 11 Notice") as Exhibit A.)

Dey removed because jurisdiction was conferred upon this Court and the action therefore became removable when the United States government exercised its sovereignty over the same claims that Plaintiff State of Alabama ("Alabama," "State," or "Plaintiff") has asserted against Dey in this action by unsealing and serving Dey with the Federal *Qui Tam* Complaint. Alabama's predictable claims of "delay and obfuscation" are proven false by the fact that Dey has promptly complied with all of its discovery obligations notwithstanding the removal, adhering to the schedules set by the State Court prior to removal. In fact, Dey has produced more than half of a million pages of documents. Alabama, by contrast, has not produced any documents. *See* Declaration of Neil Merkl, dated October 31, 2006, filed herewith. Alabama's complaints about delay are simply a smokescreen intended to obscure the indisputable fact that the State's claim and the federal government's claim address the very same set of transactions (in which each have a partial interest). The removal statutes, 31 U.S.C. § 3732(b), and the multi-

district litigation ("MDL") process, all are designed to efficiently and fairly litigate multiple

actions like the ones now confronting Dey in coordinated federal actions. Allowing states and

the federal government to split their claims against Dey on the same transactions for the same

damages would force a comparatively small company like Dey to litigate the same claim over

and over again in multiple actions, a result that would be fundamentally unfair to Dey and that

would burden multiple courts with proceedings over the exact same dispute.

Defendants originally removed this case on July 13, 2005 on the grounds that

federal question jurisdiction existed under the Supreme Court's decision in *Grable & Sons Metal*

*Products, Inc. v. Darue Engineering & Manufacturing.* 545 U.S. 308 (2005). In its August 11,

2005 decision remanding the case, this Court held:

> After careful consideration of the state-law claims presented in this
> case, the court does not believe that the claims "necessarily raise a
> stated federal issue, actually disputed and substantial, which a
> federal forum may entertain without disturbing any
> congressionally approved balance of federal and state judicial
> responsibilities."

*State of Alabama v. Abbott Laboratories, Inc., et al.*, No. 2:05cv647-T (M.D. Ala. August 11,

2005) (quoting *Grable*, 545 U.S. at 314).[1] When the United States brought the Federal *Qui Tam*

Action against Dey, however, it triggered a wholly independent grant of federal subject matter

jurisdiction to adjudicate the Alabama Action under 31 U.S.C. § 3732(b):

> The district courts shall have jurisdiction over any action brought
> under the laws of any State for the recovery of funds paid by a
> State or local government *if the action arises from the same*

---

[1]     Just last week, in the United States District Court for the District of Massachusetts, Judge Saris reached a
contrary decision when she denied the State of Arizona's motion to remand in a case with allegations
substantially similar to those made by Alabama. She held that "the issue of the meaning of AWP under the
federal Medicare statute has national significance" and that "[a] federal forum provides experience,
solicitude and uniformity on this important federal issue." *In re Pharm. Ind. Average Wholesale Price
Litig.*, MDL No. 1456, 2006 WL 3019193, at *4 (D. Mass. Oct. 24, 2006) (attached hereto as Exhibit A).

> *transaction or occurrence as an action brought under section 3730*
> *[of Title 31].*

(emphasis added). By its plain language, this statute resolves the concerns articulated by this

Court in the August 11 opinion. Section 3732(b) reflects federal congressional policy, enacted at

the behest of the states, to allow all actions related to an action under the FCA to be efficiently

and uniformly adjudicated in federal courts. *See* S. Rep. 99-345, at 16 (1986), *as reprinted in*

1986 U.S.C.C.A.N. 5266, 5281.

This court need not consider legislative history, however, because section 3732(b)

is unambiguous. It applies to "any action". It does not matter that this action started in state

court. Section 3732(b) explicitly grants "jurisdiction" over "any action" that meets its terms.

The jurisdictional grant is unlimited: the "district courts shall have jurisdiction." This

unequivocally establishes original subject matter jurisdiction because section 3732(b) would

have allowed Alabama to bring this action in federal district court if it so desired. *See United*

*States ex rel. LaCorte v. Merck & Co. Inc.*, 2004 U.S. Dist. Lexis 4860, at \*23 (E.D. La. Mar. 24,

2004). This provision undeniably encompasses the Alabama Action because it explicitly extends

to "any action brought under the laws of any state for the recovery of funds paid by a state or

local government." 31 U.S.C. § 3732(b).

Alabama argues that Congress did not intend section 3732(b) of the FCA to grant

"original jurisdiction" because the word "original" is not in the statute, while in the same breath

arguing that the jurisdiction contemplated is merely "supplemental" even though that word is not

in the statute either. State of Alabama's Brief in Support of its Motion to Remand ("Alabama

Br.") at 20. The Supreme Court has rejected the argument that more explicit grants of

jurisdiction imply that a more "laconic" provision must necessarily be inadequate. *See American*

*Nat'l Red Cross v. S.G. and A.E.*, 505 U.S. 247, 259 (1992). Alabama's contortion is is of no

moment because original jurisdiction exists for removal purposes when there is a statutory grant

of jurisdiction even if the statute in question does not use the words "original" or "jurisdiction."

In *American Red Cross*, for example, the Supreme Court held that federal subject matter

jurisdiction was created without using the term "original jurisdiction." *See id*. at 248.

Alabama's related argument that the application of section 3732(b) was not intended to "expand"

the jurisdiction of the Federal court, (Alabama Br. at 24), is contradicted by the legislative

history of the FCA:

> Other amendments contained in the bill expand the jurisdiction of
> the Government in False Claims Act cases and grant the Federal
> District Courts jurisdiction over state claims for recovery of funds
> if the State claim arises from the same transaction as that involved
> in the Federal claim.

H. R. Rep. No. 99-660, at 17 (1986).

Alabama urges that the absence of any specific statutory removal provision or

reference to removal in the legislative history means that Congress did not intend to permit

removal. (Alabama Br. at 24.) This is completely wrong and is, in fact, contradicted by a

decision of the United States Supreme Court. When, as it did here, Congress grants jurisdiction

to the federal courts over an action, removal is presumptively allowed under 28 U.S.C. §1441(a),

the general removal statute. *See Breuer v. Jim's Concrete of Breward, Inc.*, 538 U.S. 691, 697-

98 (2003). A plaintiff's right to select its forum must give way to the defendant's right to

remove when there is a basis for federal jurisdiction: "Since 1948...there has been no question

that whenever the subject matter of an action qualifies for removal, the burden is on the plaintiff

to find an express exception." *Id.* at 698.[2]

---

[2]      The State may point to a recommendation by Magistrate Judge Kurren of the United States District Court for the District of Hawaii dated October 27, 2007, where he rejected Dey's removal argument as being without merit. Respectfully, Magistrate Judge Kurren's decision is wrong as a matter of law, and Dey is

(continued...)

Alabama argues that 28 U.S.C. § 1446(b)'s reference to "a copy of an amended pleading, motion, order or other paper" applies exclusively to paper filed in the same state action and only when the voluntary action of the plaintiff makes the case removable. Alabama overstates the rule. The Third and Fifth Circuits recognize that papers or orders from a separate action fall within section 1446(b) when a nexus exists between the two actions—even when the paper is not created by the voluntary act of the plaintiff. *See Green v. R.J. Reynolds Tobacco Co.*, 274 F.3d 263, 268 (5th Cir. 2001); *Doe v. American Red Cross*, 14 F.3d 196, 201-02 (3d Cir. 1993). The cases cited by Alabama concern "other papers" from wholly "unrelated" actions with no factual or legal nexus to the action being removed. *See infra* Point II.C.

Alabama likewise misconstrues the "voluntary act" cases. This case is no different from a case in which a plaintiff sues an out-of-state citizen; the citizen might remove. Here, Alabama sued to recover Medicaid funds that the federal government also claims. Alabama knew there was a possibility that its action could be removed if the federal government chose to file an action. Dey did not do anything to make the action removable. This is what happens with all removals based on federal statutory grants of jurisdiction for different classes of claims. For example, if a party becomes bankrupt, the action can be removed even in the absence of a voluntary act of the plaintiff. *See infra* Point II.C.

---

(...continued)

submitting objections to the District Judge. For example, Magistrate Judge Kurren asserts that section 3732(b) only exists to enable a state to join its claims into a pending federal FCA action and therefore is merely a form of supplemental jurisdiction which is not grounds for removal. Magistrate Judge Kurren failed to recognize that the statute says nothing about "claims," or joining claims or supplemental jurisdiction. On its face, section 3732(b) permits jurisdiction over an "action" simultaneously with another prior, pending "action" under the FCA. Under this provision, a state is not limited to joining its "claims" to the FCA "action" but can commence its own "action" in federal court. Among other things, the Magistrate Judge did not follow the controlling holdings in *Red Cross* and *Breuer*.

## STATEMENT OF FACTS

Dey manufactures and sells pharmaceutical products, including certain generic inhalation drugs which are effective in controlling asthma and are therefore popular. When Dey's products are dispensed by pharmacies to patients covered by Medicaid, the pharmacies are reimbursed under Medicaid programs jointly funded by the federal and state governments. The federal share of Medicaid varies depending on the state's per capita income compared to the national average. The federal share among the states varies by state and is at least 50% and as much as 83%. For example, in 2005, in Alabama, on each reimbursement for Medicaid-covered drugs, the federal government paid 70.83%.[3] Over the time period at issue, the federal share in Alabama has ranged from approximately 73% to approximately 69%.[4]

Between 2000 and September 2006, twenty-two states sued Dey and dozens of other pharmaceutical manufacturers alleging that the manufacturers caused higher Medicaid reimbursement payments to the providers by reporting certain benchmark prices known as average wholesale price ("AWP") and wholesale acquisition cost ("WAC") that were not equal to the actual acquisition cost. Some states like Alabama also seek damages for allegedly higher Medicare payments. The suits seek repayment of the allegedly improper "spread" between AWP-based and WAC-based reimbursement and some proxy for the alleged "true" acquisition price, as well as multiple damages, fines and penalties under various legal theories. Prior removals of a number of these cases resulted in several cases remaining in federal court, which were transferred to the MDL in Boston, and the remaining cases remanded to state courts.

---

[3]    See 68 Fed. Reg. 67676, 67677 (2003).

[4]    See http://aspe.hhs.gov/health/fmap.htm.

The Federal *Qui Tam* Action alleges the same case against Dey as is alleged in Alabama: that Dey caused higher Medicaid and Medicare payments to be paid to providers because Dey's reported AWP and WAC prices did not equal the actual acquisition costs paid by providers. The very same AWP and WAC prices reported by Dey to First Databank are at issue in both actions. As in Alabama, the Federal *Qui Tam* Action seeks recovery of the same allegedly illegal "spread" paid on Dey drugs. Both the Federal *Qui Tam* Action and the Alabama Action seek damages based on allegations that Dey caused the filing of false claims. The Federal *Qui Tam* complaint alleges that the "United States brings this action to recover treble damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729-33." (Federal *Qui Tam* Complaint ¶ 1.) Alabama likewise seeks compensatory and punitive damages under fraudulent misrepresentation, fraudulent concealment, wantonness and unjust enrichment causes of action.

Therefore, every individual claim for Medicaid reimbursement of Dey drugs in the Federal *Qui Tam* Action is at issue in the Alabama Action. For the drugs at issue in the Federal *Qui Tam* Action, every aspect of the Alabama Medicaid and Medicare transactions and reimbursements is at issue in both cases. As a result of the identity of parties and the transactions and occurrences underlying the claims, there is extensive overlap in the discovery and litigation of the Alabama and Federal *Qui Tam* Actions. Indeed, the same witnesses from Dey, Alabama and the federal agencies that administer Medicaid will testify in the Alabama action and in the Federal *Qui Tam* Action. As things stand, the same voluminous documents, including thousands of claims placed in issue by the complaints, will be used in both actions. Numerous third-party witnesses and experts will be called in both actions.

In light of the Federal *Qui Tam* Action that triggered federal jurisdiction, on

October 11, Dey removed 14 state court actions in which it is a defendant and supplemented the

notices of removals in Hawaii and Arizona, which had already been removed.

## ARGUMENT

I. **THIS COURT HAS ORIGINAL JURISDICTION OVER THE ALABAMA ACTION UNDER 37 U.S.C. § 3732(b) AND THE ACTION IS REMOVABLE UNDER 28 U.S.C. § 1441**

 A. **This Court Has Original Subject Matter Jurisdiction Over This Action Because Section 3732(b) is An Independent Statutory Grant of Jurisdiction**

When the terms of § 3732(b) are met, as they are here, the District Courts have

subject matter jurisdiction over the state law action. In *United States ex rel. Thistlethwaite v.*

*Dowty Woodville Polymer, Ltd.*, the United States Court of Appeals for the Second Circuit

stated:

> Moreover, it is obvious that a different part of § 3732 does indeed
> deal with subject matter jurisdiction, for subsection (b) provides
> expressly that the district courts 'shall have jurisdiction over any
> action brought under the laws of any State for the recovery of
> funds paid by a State or local government.'

110 F.3d 861, 866 (2d Cir. 1997) (citing 31 U.S.C. § 3732(b)). *See also United States v. Sequel*

*Contractors, Inc.*, 402 F. Supp. 2d 1142, 1148-1149 (C.D. Cal. 2005) ("Jurisdiction over the

state law claims is also specifically authorized by 31 U.S.C. § 3732(b)."); *United States ex rel.*

*Anthony v. Burke Engineering Co.*, 356 F.Supp.2d 1119, 1120 (C.D. Cal. 2005).

The State's contention that section 3732(b) does not provide "original

jurisdiction" is wrong; it is based solely on the absence of the word "original" from the broad

grant of "jurisdiction" of section 3732(b). The mere absence of the word is of no moment.

"Original jurisdiction" simply means jurisdiction to adjudicate a case in the first instance as

distinguished from appellate jurisdiction. *See ZB Holdings Inc. v. White*, 144 F.R.D. 42, 47

(S.D.N.Y. 1992) ("This Court understands 'original jurisdiction' to mean jurisdiction in the first instance over a viable lawsuit"); *T.L.G v. M.E.H.,* 692 P.2d 1227, 1228 (Mont. 1984) (*citing Brown v. Pitches*, 13 Cal.3d 518 (Cal. 1975)) ("The phrase 'original jurisdiction' means the power to entertain cases in the first instance, as distinguished from appellate jurisdiction").

Use of the unqualified term "jurisdiction" encompasses "original jurisdiction" because it permits the states to file "actions" in the federal courts. Congress uses different formulations when granting jurisdiction and does not always use the phrase "original jurisdiction." *See American National Red Cross v. S.G. and A.E.*, 505 U.S. 247, 248 (1992). Several statutes use the word "jurisdiction" without any modifying language to grant jurisdiction to the district courts to hear and determine disputes in the first instance. *See* 25 U.S.C. § 345 (providing that the "district courts are given jurisdiction to try and determine any action, suit, or proceeding" involving the allotment of Native American land); 33 U.S.C. § 1365(a) (providing that the "district courts shall have jurisdiction without regard to the amount in controversy or the citizenship of the parties" to entertain citizen suits for violations the Clean Water Act); 33 U.S.C. § 1415(g) (using the word "jurisdiction" to allocate to federal courts the power to hear actions for violations of the Marine Protection, Research and Sanctuaries Act of 1972); *see also Simms v. Roclan Energy Services, Inc.*, 137 F. Supp. 2d 731 (W.D. La., 2001) (allowing removal of action under 43 U.S.C. § 1349(b) which provides district courts jurisdiction over cases arising out of the outer Continental Shelf, but makes no mention of "original jurisdiction.").[5]

---

[5] Construing these statutes, courts have held that Congress intended to grant to the designated courts the jurisdictional power to hear disputes – *i.e.*, subject matter jurisdiction – despite the fact that the statutes did not expressly use the word "original." *See Parker v. Scrap Metal Processors, Inc.* 386 F.3d 993, 1008 (11th Cir. 2004) (finding subject matter jurisdiction over claim brought under 33 U.S.C. § 1365); *Save Our Sound Fisheries Ass'n v. Callaway*, 429 F. Supp. 1136, 1145 (D.R.I. 1977) (finding that court had jurisdiction over private citizen causes of action brought pursuant to 33 U.S.C. §§ 1365 and 1415). *Pence v. Kleppe*, 529 F.2d 135, 138 (9th Cir. 1976) ("On its face, this statute [25 U.S.C. § 345] is a grant of general
(continued...)

In *American National Red Cross*, the Supreme Court held a defendant may remove when jurisdiction is supplied by a "separate and independent" grant, regardless of whether the term "original jurisdiction" appears in the statute. In that case, plaintiffs filed a state law tort action in New Hampshire state court against the Red Cross. *Id*. at 248-249. The Red Cross removed the action to the district court, because a provision in its federal charter provided the Red Cross could "sue and be sued" in federal court. *Id*. at 249 (citing 36 U.S.C.§ 2; now 36 U.S.C. § 300105). The district court denied plaintiff's motion to remand, holding that the "sue and be sued" provision created original jurisdiction over claims involving the Red Cross. *Id*. The First Circuit found that the provision did not create jurisdiction for the purpose of removal and reversed, noting that Congress did not use the term "original jurisdiction" in enacting the statute. *S.G and A.E. v. American Nat'l Red Cross*, 938 F.2d 1494, 1500 (1st Cir. 1991). The Supreme Court rejected this textual argument, on which Alabama's argument hinges, and held that notwithstanding the absence of the words "original jurisdiction" the statute conferred original jurisdiction upon the federal district courts and, therefore, removal was allowed under section 1441:

> In this case we consider whether that "sue and be sued" provision confers original jurisdiction on federal courts with the consequence that the organization is thereby authorized to remove from state to federal court any law action it is defending. We hold that the clause does confer such jurisdiction.

*Red Cross,* 505 U.S. at 248.

Section 3732(b) is a far more explicit grant of jurisdiction than the provisions at issue in *American National Red Cross*. Indeed, it uses the word "jurisdiction" - and confers

---

(...continued)

jurisdiction to United States District Courts in actions such as this one"). In none of theses cases did the courts attach any significance to the fact that the grant of jurisdiction did not contain the word "original".

jurisdiction on the district courts to adjudicate "any action brought under the laws of any state" -

the specific circumstances that are present here. Section 3732(b) would even satisfy the dissent

in *American National Red Cross,* which argued that "nothing in the language of [the sue and be

sued provision] suggests that it has anything to do with regulating the jurisdiction of the federal

courts." 505 U.S. at 266 (Scalia, J., dissenting). Section 3732(b) is specifically directed at the

jurisdiction of federal courts in situations where the federal and state governments are seeking

recovery in separate actions that arise from the same transactions or occurrences.

**B.    This Action May Be Removed Under 29 U.S.C. § 1441 et seq.**

Alabama ignores the *Red Cross* holding and argues that section 3732(b) does no

more than provide a basis for supplemental jurisdiction and that federal case law precludes the

removal of state actions based solely on supplemental jurisdiction in order to "marr[y] up" with

actions already pending in federal court. This is not a correct statement of the law or of the

circumstances of this case.

**1.    Under Controlling Supreme Court Precedent This Case is Removable**

When a federal statute confers jurisdiction on the federal district courts the action

is presumptively removable under the general removal statute. *Breuer v. Jim's Concrete of

Brevard, Inc.*, 538 U.S. 691, 697-698 (2003). In *Breuer*, the Supreme Court affirmed the

Eleventh Circuit and the Middle District of Florida's denial of a remand motion that was

premised on the argument on which Alabama relies. In *Breuer*, the plaintiff sued his employer in

Florida state court. *Id.* at 693. The employer removed the case to federal court on the basis of a

provision in the Fair Labor Standards Act of 1938 ("FLSA") which provided that suit under the

FLSA "may be maintained . . . in any Federal or State court of competent jurisdiction." *Id.* at

693-694 (quoting 29 U.S.C. § 26(b)). The plaintiff moved to remand arguing, precisely as

Alabama now argues, that the statute did not permit removal. *Id.* The Eleventh Circuit and the

Supreme Court rejected this argument in a holding that controls here on the issue of whether removal is permitted under section 3732(b).

In both *Breuer* and this case there is no question that under the jurisdictional provision the respective plaintiffs "could have begun [their] action in the District Court." *Id*. at 694. Removal then follows under 28 U.S.C. § 1441(a) because nothing in either the FSLA or the FCA provision "looks like an express prohibition of removal, there being no mention of removal, let alone prohibition." *Id*. Except as "expressly provided by Congress", a statute that is silent on removal cannot, as Alabama suggests, be interpreted to prohibit removal because the removal statute permits removal when there is jurisdiction. As the Supreme Court held, the "need to take the express exception requirement seriously is underscored by examples of indisputable prohibitions of removal in a number of other statutes." *Id*. at 695. Alabama does not - and cannot - identify an express prohibition of removal based on section 3732(b).[6] The fact that Alabama chose to commence this action in state court does not block Dey's right to remove it under section 3732(b) because section 1441(a) allows a defendant to remove any action over which there is federal jurisdiction unless Congress "expressly" prohibits removal. *See Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 450 (7th Cir. 2005).

### 2.    Alabama's Legislative History Argument Supports Removal

Alabama argues that section 3732(b) acts only as an exception to the "general bar on intervention" codified at 31 U.S.C. § 3730(b)(5) which would otherwise prevent the states

---

[6]    An argument similar to Plaintiff's was also rejected by the First Circuit in *FDIC v. Otero*, 598 F.2d 627, 630 (1st Cir. 1979), when the FDIC urged that a defendant should not be able to use the general removal statute because Congress had only granted FDIC explicit authority to remove actions in which it was named, but remained silent as to the rights of others. The Court held that silence on removability does not restrict a defendant's right to use the general removal statute; when Congress intends to "create exceptions to the general rule of removability, it has done so in language much clearer than used here." 598 F.2d at 630.

-12-

from bringing state law claims related to pending *qui tam* actions. (Alabama Br. at 21-22.) This

argument actually supports Dey's position. Section 3730(b)(5) provides:

> When a person brings an action under this subsection, no person
> other than the Government may intervene or bring a related action
> based on the facts underlying the pending action.

Section 3730(b)(5), therefore, bars two different things: (1) "intervention" and (2)

commencement of "a related action". Therefore, once there is an FCA action such as that filed

against Dey, no one can bring a related action. According to Alabama's argument, if 3730(b)(5)

applied to the states, it would bar state actions like this one that were "related action[s]." If the

State is correct, however, and section 3732(b) was intended to remedy this, and allow the states

to intervene in the district courts, it also would allow them to bring a "related action." This is

because section 3732(b) specifically says "an action" may be brought; it is not limited to

intervention: "The district courts shall have jurisdiction over any action brought under the laws

of any State... ." 31 U.S.C. § 3732(b). Under Alabama's reading, moreover, section 3730(b)(5)

can be read to allow the related action to be filed only in federal court pursuant to 3732(b)(2)

("*the district courts shall* have jurisdiction").[7] Section 3732(b), therefore, allows

commencement of "actions" and is not limited to intervention. Since section 3732(b) allows the

state to commence an action in federal court, the federal courts have original jurisdiction and the

action may be removed.

Nothing in section 3732(b) even suggests it is limited to intervention. When

Congress has granted a right to intervene, it has done so explicitly by using the word "intervene."

---

[7]    On page 25 of its Brief in Support of the Motion to Remand, however, Alabama contradicts itself and
argues that section 3730(b)(5) does not apply to the states, but apparently acknowledges that some courts
hold that it does and that, section 3732(b) is meant to provide an exception. (Alabama Br. at 25.)
Nevertheless, the exception still is not limited; the statute's plain language encompasses commencement of
"related actions".

For example, in 28 U.S.C. § 2403(b), Congress explicitly granted states the right to intervene in federal cases that involve the constitutionality of a state statute affecting the public interest: "[T]he court shall certify . . . to the attorney general of the State [that the State is not a party], and shall permit the State to intervene . . . ." 28 U.S.C. § 2403(b). *See also International Paper Co. v. The Inhabitants of the Town of Jay, Maine*, 887 F.2d 338, 342 (1st Cir. 1989) (holding that state could not intervene because the facts of the case did not fall under the express language of section 2403(b)); *Blair v. Shanahan*, 38 F.3d 1514, 1522 (9th Cir. 1994), *cert. denied*, 514 U.S. 1066.[8]

Alabama devotes pages (Alabama Br. at 21-24) to arguing that the legislative history shows section 3732(b) is "permissive" (*id.* at 20); benefits only the states - allows the states to intervene in pending federal actions; "enhances the options" of the states (*id.* at 22); and "broadens the choices" (*id.* at 23) of the states. Even if it were true that the principal purpose was to permit the states the option of filing in federal court, it undermines Alabama's argument because it concedes – as it must – that this provision gives the states the right to commence "actions" in the federal courts, which also confirms that the provision confers original jurisdiction to the federal courts to adjudicate state actions. Plaintiff's argument—that Congress' silence on the issue of removability in the legislative history implies that actions cannot be removed—was rejected by Supreme Court in *Breuer*. *See infra* Point I.B.1. Congress knows

---

[8]     Other federal statutes granting a right to intervene also use the word "intervene" and identify with specificity who may exercise the right to intervene. In 18 U.S.C. § 3626, Congress identified the parties who may seek intervention and conspicuously used the word intervene: "Any State or local official including a legislator or unit of government . . . shall . . . have the right to intervene . . . ." 18 U.S.C. § 3626(a)(3)(F). In 28 U.S.C. § 2323, Congress specifically identified "[c]ommunities, associations, corporations, firms, and individuals" as the parties who "may intervene". 28 U.S.C. § 2323. Likewise, in 26 U.S.C. § 7424 Congress used the word "intervene" and identified the United States as the party that may exercise the right to intervene granted in that section.

how to preclude removal where it wishes to do so; it has specifically done so for a number of

different types of actions. *See* 28 U.S.C § 1445. In stark contrast, it did not provide that FCA-

related actions would not be removable, and it is not for the courts to rewrite the statute to do

what Congress chose not to do.

### 3.    Section 3732(b) Creates Jurisdiction Over Actions, Not Supplemental Jurisdiction Over Claims

Original jurisdiction over the Alabama Action exists based on the independent

grant of jurisdiction provided under section 3732(b). This grant of jurisdiction is not

supplemental because the states are granted the right to commence "actions" in federal courts.

There is no requirement the states intervene in the pending action. If Congress had intended

section 3732(b) to grant only supplemental jurisdiction, it would have expressly limited the

statute to adjudicate state "claims" in the already existing FCA action as it did when it enacted

28 U.S.C. § 1367, the "supplemental jurisdiction" statute that applies only to *claims*. Section

3732(b), by contrast, applies to "*actions*," a term "not limited to specific claims, but . . .

synonymous with the term 'case' in the constitutional sense." *California v. Keating*, 986 F.2d

346, 348 (9th Cir. 1993) (citations omitted). Section 3732(b), therefore, provides for original

jurisdiction over independent cases, such as this one brought by Alabama. There is no limiting

language in section 3732(b). Alabama's argument that Congress did not use the term

"supplemental jurisdiction" when it enacted section 3732(b) because it had not yet enacted 28

U.S.C. § 1367 misses the point. This argument is disingenuous. The concept of supplemental

jurisdiction, either ancillary or pendent, clearly existed before and was only codified in section

1367; it was not invented in 1990. Congress could have limited the jurisdictional grant by using

the modifying terms "ancillary" or "pendent", which were in common use at the time; it also

could have barred removal as it does in other statutes (as noted above). It did neither.

Alabama cites to several cases where parties improperly removed state actions on the grounds that original jurisdiction existed based on the supplemental jurisdiction statute. *In Re Estate of Tabas*, 879 F. Supp. 464, 467 (E.D. Pa. 1995) (rejecting removal based on supplemental jurisdiction because section 1367 "is not . . . an independent source of removal jurisdiction"); *Ahearn v. Charter Township of Bloomfield*, 100 F.3d 451, 456 (6th Cir. 1996) (holding that "[t]he supplemental-jurisdiction statute is not a source of original subject-matter jurisdiction . . . ." (citations omitted)); *Sebring Homes Corp v. T.R. Arnold & Assocs.*, 927 F. Supp. 1098, 1101 (N.D. Ind. 1995) (holding that "a removal petition . . . may not base subject matter jurisdiction on the supplemental jurisdiction statute . . . ."); *Tafuri v. Jeppson Sanderson Co.*, 25 F. Supp. 2d 1364, 1368–69 (S.D. Fla. 1998) (rejecting defendants' argument that supplemental jurisdiction provides a basis for removal). Plaintiff also cites to one case where a state action was improperly removed under 28 U.S.C. § 1441(c) on the grounds that a party attempted to consolidate the state action with a pending federal action. *N. Am. Van Lines, Inc. v. Coleman*, 633 F. Supp. 632, 634 (N.D. Ill. 1986) (rejecting the argument that an attempt to consolidate the state action with a pending federal action justifies removal where there existed no original jurisdiction over the state action).

Once again, Alabama misses the point. First, as noted above, Congress displayed no intent to confer "supplemental" jurisdiction under the FCA, so these cases are entirely irrelevant. Second, none of these cases involves a statutory grant of "jurisdiction" that allows the commencement of "actions" in the "district courts", such as that relied upon by Dey. Unlike supplemental jurisdiction provided under section 1367(a), section 3732(b) grants federal "jurisdiction over any action brought under the laws of any State," allowing such a state action to be properly brought in or removed to federal court. Although pendency of the Federal *Qui Tam*

Action triggers jurisdiction, it does not require that the "claims" be included in the same action. Section 1334 similarly grants the federal courts jurisdiction "related to" pending federal bankruptcy actions. *See infra* Point II.C.

### C.   Federal Question Jurisdiction Also Exists Under 28 U.S.C. § 1331

While the grant of statutory jurisdiction contained in section 3732(b) creates an independent and sufficient basis for removal of this action, this Court also has original jurisdiction over the action pursuant to 28 U.S.C. § 1331, which provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The assertion of federal sovereignty in the Federal *Qui Tam* Action causes the claims here to arise under the FCA, a law of the United States.

As plainly stated in the Federal *Qui Tam* Complaint, the Federal *Qui Tam* Action arises under the FCA, a federal statutory scheme that governs the prosecution of cases by either a *qui tam* relator or the United States. In the "jurisdiction" section of the federal Complaint, the United States asserts that the District of Massachusetts "has subject matter jurisdiction to entertain this action under §§1331 [federal question] and 1345 [United States as plaintiff]." Federal *Qui Tam* Complaint at ¶ 8. From the face of the Federal *Qui Tam* Complaint, the federal question arises under the FCA, 31 U.S.C. §§ 3729-33.

Two of the provisions of the FCA invoked by the United States in bringing the Federal Action are section 3730 and section 3732(b), the provision that grants jurisdiction to the federal courts over "state action[s]." This federal statutory arrangement confers on this Court original jurisdiction under 28 U.S.C. § 1331, because with the assertion of federal sovereignty in the Federal *Qui Tam* Action brought against Dey, the Alabama Action now arises under a law of the United States – namely 31 U.S.C. § 3729 *et seq*. The Alabama state claim has been

federalized by the federal government's simultaneously claiming at least 50% of the amount claimed by Alabama.

While this precise issue has not been addressed in an FCA context, there are a number of instructive decisions relating to federal statutory schemes governing matters of national significance that confer federal question jurisdiction for the federal courts to adjudicate state claims. For example, the Outer Continental Shelf Act, 43 U.S.C. § 1331 *et seq*. ("OCSLA") provides federal courts with jurisdiction of

> cases and controversies arising out of, or in connection with . . .
> any operation conducted on the outer Continental shelf which
> involves exploration, developments, or production of the minerals,
> of the subsoil and seabed of the outer Continental Shelf.

43 U.S.C. § 1349(b). Claims that fall within the OCSLA grant of jurisdiction are cases that "arise under" federal law for removal purposes, even though they may be based on state law. Such actions may be removed to federal court even though they present only claims under state law because "federal district courts have federal question jurisdiction over claims which fall under OCSLA." *Simms v. Roclan Energy Services, Inc.*, 137 F. Supp. 2d 731, 734 (W.D. La. 2001). In such circumstances, there exists a "'federal question' – in the constitutional sense – regardless of its borrowing substance from the states." *EEX Corp. v. ABB Vetco Gray, Inc.*, 161 F. Supp. 2d 747, 751 (S.D. Tx. 2001)

The FCA, like OCSLA, includes a specific grant of subject matter jurisdiction over an action based on state law when "the action arises from the same transaction or occurrence as an action brought under section 3730." 31 U.S.C. § 3732(b). While the Alabama Action may be premised on state law, Alabama seeks to recover damages from the same alleged scheme that is now at issue in the FCA claims asserted by the United States. Upon the unsealing of the parallel Federal *Qui Tam* Action that implicates the same transactions and occurrences

asserted in the Alabama Action, the federal courts have federal subject matter jurisdiction over the Alabama Action pursuant to 31 U.S. C. § 3732(b) and 28 U.S.C. § 1331.

Therefore, Alabama's state action seeking recovery of Alabama funds arising from the same transactions involved in the Federal Action – precisely the situation here – presents a case arising under federal law – the FCA – and is removable pursuant to 28 U.S.C. §§ 1331 and 1441(a).

As the Third Circuit noted in *TMI Litigation Cases*, federal statutory schemes (like the FCA) are a proper exercise of federal sovereignty under the Constitution and permit the creation of "arising under" federal question jurisdiction:

> Where Congress creates a right of action, and formulates [sic] substantive federal provision applicable to that action, the action arises under federal law despite the fact that the same wrong may previously have been actionable under state law. Were the rule otherwise, actions which today may be brought under the Federal Tort Claims Act, the Outer Continental Shelf Lands Act and other federal statutes would not arise under federal law because, prior to enactment of the federal statute, actions based on the identical occurrence could have been brought in a state court. The federal nature of the right to be established is decisive.

940 F.2d 832, 857-858 (3d Cir. 1991), *cert. denied*, 503 U.S. 906 (1992). In a similar vein, the federal statutory scheme in the FCA for adjudication of federal and state actions seeking recovery of government funds, as is the case here, becomes a federal question once the United States brings its FCA action. Removal here is fully consistent with the federal scheme and advances the rights under the federal laws implicated by the parties suing Dey.

## II.   DEY'S OCTOBER 11 NOTICE IS TIMELY UNDER 28 U.S.C. § 1446(b)

Dey's October 11 Notice is timely under the second paragraph of 28 U.S.C. § 1446(b). This provision restarts the clock on a defendant's time to notice removal under circumstances that exist here:

> If the case stated by the initial pleading is not removable, a notice
> of removal may be filed within thirty days after receipt by the
> defendant, through service or otherwise, of a copy of an amended
> pleading, motion, order or other paper from which it may first be
> ascertained that the case is one which is or has become
> removable... .

28 U.S.C. § 1446(b). Dey's October 11 Notice was filed on October 11, 2006, within thirty (30)

days after Dey's counsel's receipt of a copy of the Federal *Qui Tam* Complaint and the Order

from the District of Massachusetts unsealing the Complaint (the "Order").

### A.    The "Order or Other Paper" Need Not Arise from the State Court Action

Plaintiff argues that the Federal *Qui Tam* Complaint that Dey received cannot

constitute either an "order" or "other paper" for purposes of section 1446(b) because it does not

emanate from the Alabama Action. Plaintiff is wrong. If an "order or other paper" emanates

from a different case that has a nexus to the action being removed and has an effect on the basis

for removal, that "order or other paper" restarts the thirty (30) day clock for removal under

§ 1446(b). *See Green v. R.J. Reynolds Tobacco Co.*, 274 F.3d 263, 267-68 (5th Cir. 2001); *Doe

v. American Red Cross*, 14 F.3d 196, 202-03 (3d Cir. 1993); *Young v. Chubb Group of Ins. Cos.*,

295 F. Supp. 2d 806, 808 (N.D. Ohio 2003); *Ancar v. Murphy Oil U.S.A., Inc.*, Nos. 06-3246 –

06-3262, 2006 WL 2850445, at *3 (E.D. La. Oct. 3, 2006). Pleadings and "other paper[s]" from

related actions with common parties also qualify under 1446(b) when there is a sufficient

"nexus" between the actions. *See iGames Entertainment Inc. v. Regan*, No. 04-CV-4179, 2004

WL 2538285, at *4 (E.D. Pa. Nov. 9, 2004).

In *Yarnevic v. Brink's, Inc.*, the Fourth Circuit held that it would consider the new

information concerning the plaintiff's citizenship in support of removal notwithstanding that the

information was not obtained from the state court filings, but was first disclosed by the plaintiff

in his remand motion in federal court:

> The "motion, order or other paper" requirement is broad enough to include any information received by the defendant, "whether communicated in a formal or informal manner." *Broderick v. Dellasandro*, 859 F.Supp. 176, 178 (E.D.Pa. 1994) (quoting 14A Wright, Miller, & Cooper, *Federal Practice and Procedure*, § 3732 at 520).

*Yarnevic*, 102 F.3d 753, 755 (4th Cir. 1996) (emphasis added). In *iGames Entertainment, Inc. v. Regan*, the United States District Court for the Eastern District of Pennsylvania held that "documents associated" with one action qualified as "other paper" for removal of another action where there was a "sufficient nexus" between the two cases. 2004 WL 2538285, at *4. The District Court found that documents associated with a related action constituted "other papers" under section 1446. *Id*. (citing *Hamilton v. Hayes Freight Lines, Inc*, 102 F. Supp. 594, 596 (E.D. Ky. 1952)).

In *Green*, the Fifth Circuit held that documents from another case can serve as a basis for removal under section 1446(b), if the other case shares similar defendants, factual issues, and legal issues. 274 F.3d at 267-68. The court in *Green* specifically addressed the question of whether the Fifth Circuit's decision in another case, *Sanchez v. Liggett & Myers, Inc.*, 187 F.3d 486 (5th Cir. 1999), could constitute an "order" sufficient to restart defendants' time to remove under section 1446(b), and the court considered the same factors relevant to the question of whether an "other paper" from a different action can restart defendants' time to remove. 274 F.3d at 266-67. Following the Third Circuit in *Doe,* the Fifth Circuit held that appellate court decisions, emanating from a case different than the one being removed, qualified as an "order" restarting the thirty day clock for a second removal if there was a nexus between the two actions:

> The Third Circuit [in *Doe*], however, has held that in very limited circumstances, similar to those here – a decision by a court in an unrelated case, but which involves the same defendant, a similar

> factual situation, and the question of removal – can constitute an
> "order" under § 1446(b).

*Green*, 274 F.3d at 267. The Fifth Circuit found that the defendants in *Sanchez* and the
defendants in *Green* overlapped and the two cases also involved a similar factual situation and
similar legal issues. *Id.* at 268. Moreover, although the *Sanchez* decision did not explicitly
discuss removal, the *Green* court held that the decision in *Sanchez* was sufficient under *Doe*
since the *Sanchez* decision barred Texas state law actions against the defendants, removing the
only obstacle to removal of the action to federal court. *Id.*

   These circuit court decisions completely undercut Plaintiff's notion that the "order
and other paper" is limited to orders or other papers issued in the Alabama Action. Moreover,
the nexus the Courts relied on was far more tenuous than the complete overlap that exists
between the Federal *Qui Tam* and Alabama Actions. For example, in *Doe*, the Third Circuit
found that the two cases both involved the same defendant and the operative decision in one case
triggered the jurisdictional basis for removing a different case pending in state court. 14 F.3d at
202-03. In *Green*, the Fifth Circuit, applying *Doe*, found that the two different actions involved
the same defendants and similar factual and legal issues. 274 F.3d at 268.

   Here, as noted in the October 11 Notice, Dey received a pleading in the Federal
*Qui Tam* Action on September 11, 2006 and later obtained a copy of the District of
Massachusetts' Order that authorized the United States to unseal the Federal *Qui Tam*
Complaint. These documents comfortably fit within the § 1446(a) provision of an "amended
pleading, order or other paper" from which it could first be ascertained that the Alabama Action
had become removable by the fact that the United States brought a false claims action under
§ 3730. Of course, the overlap between the Federal *Qui Tam* Action and the Alabama Action is
far more complete than was the case in either *Doe* or *Green*. In fact, by claiming the "federal

share" of Medicaid, the federal government is purporting to divest the state of more than 50% of its claim in this case. As detailed above, the transactions and occurrences at issue, and, indeed, the entire thrust of the Federal *Qui Tam* Action and Alabama Action are the same. Not only is Dey a defendant in both actions, the United States, the plaintiff in the Federal Action, is, at a minimum, a real party in interest in the Alabama Action since it paid more than 50% of the reimbursement on the allegedly false claims asserted in the two cases.[9]

The prior decisions remanding state AWP cases, to which Alabama cites, all involved the issue of whether a decision of the Supreme Court in *Grable*, 545 U.S. 308 (2005), that did not include any of the parties in the AWP cases, and where there was no overlap in any of the substantive issues, renewed a defendant's time to remove an action to federal court. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 431 F. Supp. 98, 107-09 (D. Mass. 2006); *Pennsylvania v. TAP Pharm. Prods., Inc.*, 415 F. Supp. 2d 516, 526-27 (E.D. Pa. 2005); *State of Wisconsin v. Abbott Labs.*, 390 F. Supp. 2d 815, 824-25 (W.D. Wis. 2005); *State of Minnesota v. Pharmacia Corp.*, No. 05-1394 (PAM/JSM), 2005 WL 2739297, at *2-3 (D. Minn. Oct. 24, 2005). None of these decisions concerned the circumstances presented here, where the Federal *Qui Tam* Complaint and the Order unsealing it relate to the same facts, the same legal issues, the same defendant, and the same claims.

A close reading of the prior AWP removal decisions relating to *Grable*, moreover, supports removal here. The absence of a nexus between the *Grable* case and the AWP case in the MDL clearly factored in Judge Saris' decision:

---

[9]       The National Association of Medicaid Fraud Control Units, which includes Alabama as a member and is active in coordinating these cases between the States and the United States, is funded by the federal government. *See United States ex rel. St. John LaCorte v. Merck & Co.*, No. 99-3807, 2004 U.S. Dist. LEXIS 4860, at * 20 (E.D. La. March 24, 2004).

> Unlike the situations in *Doe* and *Green*, *Grable* and the AWP
> MDL do not involve the same defendants or similar factual issues.
> *Grable* concerned a quiet title action between a former landowner
> and the tax sale purchaser, while the AWP MDL involves
> allegations against pharmaceutical companies for inflating their
> AWPs for prescription drugs. While there are policy arguments
> for permitting removal where a closely related case has been
> reversed on appeal, here the connection between the Supreme
> Court case and this litigation is too tenuous; *Grable* and the AWP
> MDL involve wholly different statutes and unrelated parties.
> Permitting removal in these circumstances would contravene the
> congressional policy of "not permitting interrup[tion] of the
> litigation of the merits of a removed case by prolonged litigation of
> questions of jurisdiction of the district court to which the cause is
> removed." *United States v. Rice*, 327 U.S. 742, 751, 66 S.Ct. 835,
> 90 L.Ed. 982 (1946).

*In re Pharm. Indus. Average Wholesale Price Litig.*, 431 F. Supp. 2d at 109. Likewise, in the

Wisconsin removal decision, Judge Crabb, in rejecting the *Grable* "other paper" argument, noted

that the "Defendants in the [Wisconsin AWP action] were not parties in *Grable*. *Grable* did not

involve a fact situation similar to the present case." *State of Wisconsin v. Abbott Labs.*, 390 F.

Supp. 2d at 825.

## B.    The Cases Upon Which Plaintiff Relies Are Inapposite

Alabama cites numerous cases for the proposition that the "order or other paper"

under section 1446(b) must arise from the state action.[10] However, the "other paper" at issue in

---

[10]    *See Burns v. Prudential Sec., Inc.*, No. 3:06CV748, 2006 WL 1932310 (N.D. Ohio July 10, 2006); *Allen v. Monsanto Co.*, 396 F. Supp. 2d 728, 731-32 (S.D.W.V. 2005); *Klink v. Metavante Corp.*, No. 02-73360, 2002 WL 31962610 (E.D. Mich. Dec. 16, 2002); *Morsani v. Major League Baseball*, 79 F. Supp. 2d 1331 (M.D. Fla. 1999); *Lozano v. G.P.E. Controls*, 859 F. Supp. 1036, (S.D. Texas 1994); *Kocaj v. Chrysler Corp.*, 794 F. Supp. 234 (E.D. Mich. 1992); *Johansen v. Employee Benefit Claims, Inc.*, 668 F. Supp. 1294, 1297 (D. Minn. 1987); *Sclafani v. Ins. Co. of N. America*, 671 F. Supp. 364, 365 (D. Md. 1987); *Avco Corp. v. Local 1010 of the Int'l Union*, 287 F. Supp. 132, 133 (D. Conn. 1968); *Elm v. Soo Line R.R.*, No. 06-1817, 2006 WL 1426594 (D. Minn. May 22, 2006); *Craft v. Philip Morris Cos., Inc.*, No. 4:05 CV 01531, 2006 WL 744415 (E.D. Mo. March 17, 2006); *Black v. Brown & Williamson Tobacco Corp.*, No. 4:05CV01544, 2006 WL 744414 (E.D. Mo. March 17, 2006). The one other case cited by Alabama to support this proposition, *Rose v. Beverly Health and Rehab. Svcs., Inc.*, No. 1:06CV0067, 2006 WL

(continued...)

those actions arose from unrelated cases. Indeed those cases more readily stand for the

proposition that "subsequent court decision[s] in wholly unrelated case[s], defining what

constitutes the basis for removal to the federal court", cannot constitute "other paper" under

section 1446. *See Avco Corp. v. Local 1010 of the Int'l Union*, 287 F. Supp. 132, 133 (D. Conn.

1968).

### C.    The "Voluntary Action" Rule Does Not Apply in This Case

The argument that removal is impermissible because the removal is not a result of

a voluntary act of the State overstates the rule and is wrong under the circumstances of this case.

Plaintiff uses an incomplete and misleading quote from Professor Moore's treatise to begin this

argument: "[t]o constitute 'other papers,' the paper must result from the voluntary act of plaintiff

. . . ." (Alabama Br. at 11.) Here is the complete text of what Professor Moore says:

> In general, to constitute "other paper," the paper must result
> from the voluntary act of a plaintiff and give the defendant notice
> of the changed circumstances that now support federal jurisdiction.
> However, although a majority of courts have held that a decision in
> an unrelated case does not constitute an "order or other paper," the
> Third and Fifth Circuits have held that, in limited circumstances,
> an unrelated decision may constitute an "order or other paper"
> when the cases involve similar factual situations and legal issues
> and the other case, . . . although not expressly authorizing removal,
> provides a basis for filing a second removal petition in the case at
> bar.

C. Moore, 16 *Moore's Federal Practice* § 107.30[3][e] (3d ed. 2006). Moreover, 28 U.S.C. §

1446(b) does not say "voluntary act of the plaintiff." The "general" rule is a gloss on the statute;

the rationale behind the rule dictates that it is inapplicable here.

---

(...continued)

2067060 (E.D. Cal. July 22, 2006), is irrelevant because it deals with removal based on informal discovery,
not an order from an unrelated case.

The rule grows out of the well-pleaded complaint principle in the context of diversity actions and addresses two potential policy problems: (i) a defendant should not be able to rewrite plaintiff's claim to enable removal, and (ii) that a subsequent state appellate decision could undermine the basis for a prior removal; the rule should not be followed when the rationale is inapplicable. *See Insinga v. LaBella*, 845 F.2d 249, 254-55 (11th Cir. 1988).[11]

Dey has not done anything to "rewrite" Alabama's claims. *Cf. City of Chicago v. International College of Surgeons*, 522 U.S. 156, 164 (1997). This is no different from a case where the plaintiff sues an out-of-state resident. Such a plaintiff does so with the risk that he might be removed on diversity grounds. The fact that this case was not removable by Dey until the United States elected to unseal the complaint does not bring this within the "voluntary/involuntary" rule in *Keating* because removal is not based on the acts of Dey or any defendant.

Plaintiff also misconstrues the legislative history in this respect. In the *Johansen* case relied on by the Plaintiff, the court, citing *Chesapeake Railway*, held the key factor was the defendant's conduct:

> [T]he House Report's citation to this decision supports defendants' argument that a defendant should be entitled to remove an initially non-removable case whenever the changed status is the result of circumstances beyond the defendant's control . . . . Dicta in some opinions support this position. *See, e.g., Potter v. Carvel Stores, Inc.*, 203 F.Supp. 462 (D. Md.1962) *aff'd.* 314 F.2d 45 (4th Cir.

---

[11]    See *People of the State of California v. Keating*, 986 F.2d 346, 348 (9th Cir. 1993) ("Here, this case was transformed into an action 'arising under' federal law not by the voluntary action of the plaintiff, but instead by action of a defendant."); *Dowd v. Alliance Mortgage Co.*, 339 F. Supp.2d 452, 454 (E.D.N.Y. 2004) ("The instant case, however, does not fall within the purview of § 1446(b) because Defendant's actions, and not Plaintiff's, created the basis for removability."); *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996) ("We find that an affidavit created by the defendant and based on the defendant's subjective knowledge cannot convert a non-removable action into a removable one.")

> 1963) ("other paper" had to emanate either from voluntary acts of
> plaintiff or events not the products of defendant's activity.)

*Johanson v. Employee Benefit Claims, Inc.*, 668 F. Supp. 1294, 1296 (D. Minn. 1987) (footnote

omitted). In *Davis v. Life Investors Ins. Co. of American, Inc.*, 214 F. Supp. 2d 691, 692 (S.D.

Miss. 2002), for example, the case was removed on the basis of the bankruptcy of a co-defendant

without any voluntary act of the plaintiff.

In *Weems v. Louis Dreyfus Corp.*, the Court of Appeals for the Fifth Circuit

discussed an alternate rationale for the "voluntary/involuntary" rule, noting:

> Although the rule has often been criticized for failing to explicate
> an underlying rationale it nevertheless had merit in that it prevents
> removal of those cases in which the issue of the resident
> defendant's dismissal has not been finally determined in the state
> courts. This avoids the duplication and expense which would result
> if a resident defendant was dismissed on an appealable ground, the
> nonresident was permitted to remove, and the plaintiff then
> obtained a reversal of the dismissal in the state appellate courts.

380 F.2d 545, 546 (5th Cir. 1967). Here, Alabama has no power to appeal or otherwise

challenge the pending federal *qui tam* action against Dey. Accordingly, this rationale for the rule

also is inapplicable here.

Section 3732(b) is an independent grant of jurisdiction, separate and apart from

federal question jurisdiction created by 28 U.S.C. § 1331. As the Supreme Court held in *Red

Cross*, the well-pleaded complaint rule does not apply to an independent grant of federal

jurisdiction. 505 U.S. at 258. The voluntary/involuntary rule, therefore, also should not apply

when removal is based on a grant of jurisdiction under a federal statute independent of federal

question jurisdiction under 28 U.S.C. § 1331 because the rule arises from the well-pleaded

complaint rule. *See Labella*, 845 F.2d at 254-55. For example, Section 1446(b) creates

jurisdiction over actions "related to" bankruptcy cases pending in the federal courts. Receipt of a

notice of a bankruptcy petition triggers the removal time period under 1446(b), even though the

bankruptcy is not the result of any voluntary act of the plaintiff. *See Davis*,214 F. Supp. 2d at

694; *see also In Re Asbestos Litigation*, No. CV01-1790, 2002 WL 649400, at *2 (D. Or. Feb. 1,

2002); *Thomson v. Able Supply Co.*, 179 F. Supp. 2d 693, 696 (W.D. Tex. 2002); *but see In Re*

*Donington, Karcher, Salmond, Ronan & Reinone, P.A.*, 194 B.R. 750, 755-56 (D.N.J. 1996).[12]

### D.    The Federal *Qui Tam* Action Against Dey Is A Ground for Removal Separate and Apart from the *Qui Tam* Action Against Abbott

Alabama argues that removal is improper because a different *qui tam* complaint

alleging claims under the FCA was first unsealed against Abbott Laboratories ("Abbott") on

May 16, 2006 (the "Abbott *Qui Tam* Action"), and Abbot did not remove.

It was the service upon Dey of the complaint in the Federal *Qui Tam* Action

against Dey that triggered its obligation "to participate in a civil action or forgo procedural or

substantive rights." *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 351

(1999). Dey's obligation to decide, based on the Federal *Qui Tam* Complaint, whether to remove

this action to federal court, and to persuade its co-defendants to join in the removal, began only

upon service on Dey of the complaint in the Federal *Qui Tam* Action. Indeed, Dey could not

have taken steps to remove the action before it was served because the complaint was sealed.

*See United States ex rel. LaCorte v. Merck & Co.*, 2004 U.S. Dist. LEXIS 4860, at *10-11

(holding that State of Louisiana's time to intervene in pending *qui tam* action under the FCA

only started to run when the *qui tam* complaint was unsealed).

Alabama's argument that Abbott waived its right of removal which now precludes

the other defendants from seeking removal ignores the fact that the basis for Dey's notice of

removal is separate and independent from any basis for removal Abbott may have had and relies

---

[12]    Jurisdiction over this action is appropriate under both 28 U.S.C. § 1331 and 31 U.S.C. § 3732(b). *See supra*, Point I.C.

on inapposite cases decided before *Murphy Brothers*. *See Krasnow v. Texaco, Inc.*, 773 F. Supp.

806, 809 (E.D. Va. 1991) (defendants could not remove based on diversity after the state court

decided one defendant's demurrer); *Crocker v. A.B. Chance Co.*, 270 F. Supp. 618, 618-19 (S.D.

Fla. 1967) (a new defendant could not remove a diversity action after the original defendant

waived the right to removal on diversity). More recently, the United States District Court for the

Northern District of Alabama held in *Fitzgerald v. Bestway Services, Inc.* that "the original

defendants' untimeliness should not be held against" the subsequently added defendant, and

"[s]tated differently, [the subsequently added defendant's] right to remove should not be

destroyed by the original defendants' delay." 284 F. Supp. 2d 1311, 1317 (N.D. Ala. 2003).

Since *Murphy Brothers*, the majority of courts acknowledge that with respect to

removal the inaction of one defendant should not waive the right of another. *Marano*

*Enterprises v. Z-Teca Restaurants, L.P.*, 254 F.3d 753, 757 (8th Cir. 2001) ("We hold that the

later-served defendants in this case had thirty days from the date of service on them to file a

notice of removal with the unanimous consent of their co-defendants, even though the first-

served co-defendants did not file a notice of removal within thirty days of service on them.");

*Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 ( 6th Cir. 1999); *Fitzgerald v.*

*Bestway Services, Inc* 284 F. Supp. 2d at 1317; *Collings v. E-Z Serve Convenience Stores, Inc.*,

936 F. Supp. 892, 895 (N.D. Fla. 1996). Moreover, a defendant who failed to remove is not

precluded from consenting to the later removal. As the Sixth Circuit in *Brierly* held:

> We conclude that a first-served defendant can consent to a later-
> served defendant's removal petition, despite having already failed
> in its own efforts to remove. Given the rule of unanimity, holding
> otherwise would vitiate the removal application of the later-served
> defendants and thereby nullify our holding that later-served
> defendants are entitled to 30 days to remove the case to district
> court.

184 F.3d at 533. Dey could not have removed this action until it was served with the Federal *Qui Tam* Complaint on September 11, 2006 because the action against Abbott did not assert any claims against Dey. Since the two actions are different, Dey is not precluded from removing.[13]

### E. Par Pharmaceutical has Timely Consented to Removal

Alabama's contention that defendant Par Pharmaceutical, Inc.'s ("Par") Notice of Consent is defective is flatly wrong. James David Martin, the signatory of Par's Notice of Consent, is a member of the law firm Copeland, Franco, Screws & Gill, P.A. ("Copeland, Franco"), attorneys of record for Par, and is admitted to practice in this Court. Mr. Martin's signature on Par's Notice of Consent is perfectly adequate. *See Goldstein v. Bear, Stearns & Co., Inc.*, No. 87CV149, 1988 WL 95135, at *6 n. 2 (E.D.N.Y. Sept. 7, 1988) ("It is this Court's reading of the relevant case law concerning signature of papers submitted pursuant to Federal Rules of Civil Procedure 7 and 11, that *a member* of the firm must sign all papers if the firm is the attorney of record.") (emphasis added). The cases cited by Alabama to support its contention are inapposite here. *See Beard v. Lehman Brothers Holdings, Inc.*, No. 2:06-CV-653, 2006 WL 2661170, at *4 n.1 (M.D. Ala. September 15, 2006). Alabama had no trouble reading Mr. Martin's signature and therefore could have learned this information by reviewing a bar directory, contacting Copeland, Franco's offices, or simply looking at Copeland, Franco's letterhead.

---

[13]    Some diversity cases in this district decided since *Murphy Brothers* have held that the failure of the first-served defendant to remove is binding on subsequently-served defendants. *See Adams v. Charter Communications VII, LLC*, 356 F. Supp. 2d 1268, 1272-73 (M.D. Ala. 2005). The Court of Appeals for the Eleventh Circuit has not resolved the inconsistent result between these cases and other cases in this circuit that have reached the opposite conclusion. The holdings in *Marano* and *Brierly* are consistent with the Supreme Court's decision in *Murphy Brothers*, and should be applied here.

-30-

## III.    PLAINTIFF'S SEVERANCE ARGUMENTS ARE MERE GAMESMANSHIP

The State has chosen to plead its claims as a single action in a single complaint. That action was removed by Dey.   Plaintiff now asks the Court to *sua sponte* sever the claims against all of the other Defendants and then remand those newly separated claims.  Aside from being inconsistent with Plaintiff's position before the Alabama state court – where it has affirmatively argued that its claims against all of the Defendants are sufficiently related to support multi-defendant trials – the request is irrelevant to the only issue now presented to the Court. The only issue before the Court is whether Dey's removal is proper.  As shown above, it is.  Accordingly, the motion to remand this action should be denied.  If Plaintiff wishes to reverse its prior position that its claims against all Defendants are related, the proper thing for it to do would be to move to sever its claims against each defendant from its claims against all others, and pursue individual actions against the individual defendants.  Plaintiff, however, has failed to do so.

## CONCLUSION

For the foregoing reasons, Defendant Dey, L.P. respectfully requests that Plaintiff's motion to remand, or alternatively to sever the claims against Dey from the claims against the remaining defendants, be denied in its entirety.

Sanctions, fees and costs are inappropriate here because statutes and case law plainly support removal of this case.  An award of costs and attorneys' fees here, moreover, is plainly inappropriate.  There is no binding precedent foreclosing removal under 31 U.S.C. § 3732(b).  *Cf. G.M. Sign, Inc. v. Global Sharp Solutions, Inc.*, 430 F. Supp. 2d 826, 829 n.4 (N.D. Ill. 2006).  The "other paper" authorities are in conflict in the circuits and the district courts; therefore, an award of costs or attorney's fees here would be unfair.  *See Breuer v. Jim's*

*Concrete of Brevard, Inc.*, 292 F.3d 1308, 1310 (11th Cir. 2002) (observing unfairness to

litigants occurring because of conflicting decisions).

Dated this __31st__ day of October, 2006.

<div style="margin-left: 40%;">

Respectfully Submitted,

_Darryn Londer_

Gary M. London (LON001)
Joseph W. Letzer (LET002)
BURR & FORMAN LLP
420 North 20th Street
Suite 3100 SouthTrust Tower
Birmingham, Alabama 35203-5206
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

Warren C. Matthews (MAT030)
BURR & FORMAN LLP
Suite 1950, RSA Tower
201 Monroe Street
Montgomery, Alabama 36104
Telephone: (334) 241-7000
Facsimile: (334) 262-0020

*Attorneys for Dey, L.P.*

</div>

Of Counsel:

Paul F. Doyle
William A. Escobar
Neil Merkl
Christopher C. Palermo
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178
Phone: (212) 808-7800
Facsimile: (212) 808-7897

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| STATE OF ALABAMA,<br><br>Plaintiff,<br><br>-against-<br><br>ABBOTT LABORATORIES, INC., et al.,<br><br>Defendant. | Civil Action No. 2:06cv00920-MHT |

## DECLARATION OF NEIL MERKL ON BEHALF OF DEY, INC.
## IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

NEIL MERKL, declares, pursuant to 28 U.S.C. § 1746 and under the penalties of perjury under the laws of the United States of America::

      1.    I am a member of Kelley Drye & Warren LLP, national counsel for Defendant Dey, Inc. ("Dey"). I am admitted *pro hac vice* in this action. Joseph W. Letzer, a member of Burr and Forman LLP, is Dey's Alabama counsel in this action.

      2.    I submit this Declaration on behalf of Dey and in opposition to the State of Alabama's ("Plaintiff") motion to remand. This Declaration is based on my personal knowledge and information provided to me by Dey and counsel for co-defendants in this action.

      3.    Dey is a small, specialty pharmaceutical company located in Napa, California that has traditionally focused on developing, manufacturing and marketing generic drugs used to treat respiratory ailments, such as asthma. Plaintiff's claims against Dey in this case concern the following drugs: generic forms of albuterol, cromolyn, ipratropium, and sodium chloride and the brand drugs DuoNeb, AccuNeb, Epipen, and Epipen Jr.

**Dey Promptly Responded To Plaintiff's Discovery Requests And Has Produced Over**
**515,000 Pages Of Responsive Documents And Emails And 10 CDs Of Electronic Sales Data**

      4.    Dey provided written responses to Plaintiff's requests for documents and interrogatories on September 9, 2005.

      5.    To date, Dey has produced approximately 515,600 pages of documents and emails and attachments in TIFF format and ten CDs of electronic sales transactional data (comprising millions of transactions over a twelve year period) in response to Plaintiff's discovery requests. Dey has also produced in response to plaintiff's requests the transcripts with exhibits of seven depositions of Dey's employees taken in other actions concerning drug pricing.

**Plaintiff Has Made No Effort To Produce Responsive Documents**

      6.    To date, Plaintiff has not produced any documents in response to Dey's discovery demands.

      I declare under the penalties of perjury under the laws of the United States of America that the foregoing is, to the best of my knowledge, true and correct.

Executed on October 31, 2006.

                                    NEIL MERKL

NY01/GIULA/1143370.2

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel.  I further certify that I have, on this day, served the foregoing on counsel of record shown on the attached Service List through the LexisNexis File and Serve system, pursuant to Case Management Order No. 2.

**SERVICE LIST**

Troy King
ATTORNEY GENERAL
STATE OF ALABAMA
300 State House
11 S. Union Street
Montgomery, Alabama 36130
(334) 242-7300

Jere L. Beasley (BEA020)
W. Daniel "Dee" Miles, III (MIL060)
Clinton C. Carter (CARL 12)
Roger L. Bates (BAT006)
Caine O'Rear III (ORE003)
Windy C. Bitzer (BJT005)
DEPUTY ATTORNEY GENERALS

BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
Post Office Box 4160 (36103-4160)
272 Commerce Street
Montgomery, Alabama 36104
(334) 269-2343
(334) 954-7555 – fax

HAND ARENDALL, L.L.C.
1200 Park Place Tower
2001 Park Place North
Birmingham, Alabama 35203
(205) 324-4400
(205) 322-1163 – fax

HAND ARENDALL, L.L.C.
Post Office Box 123
Mobile, Alabama 36601
(251) 432-5511
(251) 694-6375 – fax

*Attorneys for Plaintiff*

Toni-Ann Citera
JONES DAY
222 East 41st Street
New York, New York 10017-6702

James R. Daly
J. Ryan Mitchell
Daniel E. Reidy
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois 60601

Betsy Collins
Leah Pointer
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424

*Attorneys for Defendants Abbott Laboratories, Inc. and TAP Pharmaceutical Products, Inc.*

Philip H. Butler
George R. Parker
BRADLEY ARRANT ROSE & WHITE LLP
Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, Alabama 36104

John C. Dodds
Kimberly K. Heuer
MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103
Scott A. Stempel
MORGAN LEWIS & BOCKIUS LLP
111 Pennsylvania Avenue NW
Washington, DC 20004

*Attorneys for Defendants Agouron Pharmaceuticals, Inc. and G.D. Searle, LLC*

Archibald Reeves, IV
Edward S. Sledge, III
MCDOWELL KNIGHT ROEDDER & SLEDGE, L.L.C.
63 South Royal Street, Suite 900
Mobile, Alabama 36602

*Attorneys for Defendant Alcon Laboratories, Inc.*

Richard Raskin
Michael Doss
SIDLEY AUSTIN BROWN & WOOD
Bank One Plaza
10 South Dearborn Street
Chicago, Illinois 60603

Fred M. (Tripp) Hasten, III
BRADLEY ARANT LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203

*Attorneys for Defendants Allergan, Inc., Bayer Corporation, Bayer Pharmaceuticals Corporation, Bayer Healthcare, LLC, and Novo Nordisk Pharmaceuticals, Inc.*

John R. Fleder
HYMAN, PHELPS & MCNAMARA, P.C.
700 Thirteenth Street, N.W., Suite 1200
Washington, D.C. 20005

Steven F. Casey
Christopher F. Heinss
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, Alabama 35201-0306

Donald R. Jones, Jr.
ATTORNEY AT LAW
2000 Interstate Park Drive, Suite 104
Montgomery, Alabama 36109

*Attorneys for Defendants Alpharma, Inc. and PurePac Pharmaceutical Co.*

Andy Schau
PATTERSON BELKNAP WEBB
& TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710

James H. McLemore
Robert F. Northcutt
CAPELL HOWARD, PC
Post Office Box 2069

Montgomery, Alabama 36102-2069

*Attorneys for Defendant ALZA Corporation*


Joseph Hanison "Hank" Young
Steven F. Barley
HOGAN & HARTS ON LLP
111 S. Calvert Street, Suite 1600
Baltimore, Maryland 21202

Anthony A. Joseph
JOHNSTON BARTON PROCTOR & POWELL LLP
2900 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203-2618

*Attorneys for Defendant Amgen, Inc.*


James w. Matthews
Courtney A. Clark
Katy E. Koski
Robert J. Muldoon, Jr.
SHERIN LODGEN LLP
101 Federal Street
Boston, MA 02110

James H. Anderson
BEERS ANDERSON JACKSON
PATTY & VAN HEIST PC
Post Office Box 1988
Montgomery, Alabama 36102-1988

*Attorneys for Defendants Andrx Corporation and Andrx Pharmaceuticals, Inc.*


D. Scott Wise
Michael S. Flynn
Carlos M. Pelayo
Kimberly D. Harris
DAVIS POLK & WARD WELL
450 Lexington Avenue, Room 3055
New York, New York 10017

Thomas W. Christian

Sharon D. Stuart
CHRISTIAN & SMALL
1800 Financial Center
505 North 20th Street
Birmingham, Alabama 35203

*Attorneys for Defendants AstraZeneca Pharmaceuticals LP and AstraZeneca LP*


Carlos B. Provencio
SHOOK HARDY & BACON L.L.P.
Hamilton Square
600 14th Street, N.W., Suite 800
Washington, D.C. 20005-2004

Michael L. Koon
Nicola Heskett
Joseph G. Matye
SHOOK HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, Missouri 641081

Richard H. Gill
Charles N. Gill
COPELAND, FRANCO, SCREWS & GILL, P.A.
Post Office Box 347
Montgomery, Alabama 36101-0347

William D. Nussbaum
Jonathon T. Rees
Gregory M. Petouvis
HOGAN & HARTSON, LLP
555 Thirteenth Street, NW
Washington, DC 20004

*Attorneys for Defendant Aventis Pharmaceuticals, Inc.*


Karen N. Walker
Barak Cohen
Edwin John U
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, DC 20005

Bruce F. Rogers

BAINBRIDGE, MIMS, ROGERS & SMITH LLP
600 Luckie Drive
Post Office Box 530886
Birmingham, Alabama 35253

*Attorneys for Defendant Barr Laboratories, Inc.*


Merle M. DeLancey, Jr.
Jason D. Wallach
DICKSTEIN SHAPIRO MORN
 & OSHINSKY LLP
2101 L Street, N.W.
Washington, DC 20037-1 526

Julian R.. McClees
SIROTE & PERMUTE, P.C.
Post Office Box 55727
Birmingham, Alabama 35255-5727

*Attorneys for Defendants Baxter Healthcare Corporation and Baxter International. Inc.*


Fred M. "Tripp" Haston, III
BRADLEY ARANT ROSE & WHITE LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203

*Attorneys for Defendant Biovail Pharmaceuticals, Inc.*


Paul T. Coval
Alexandra T. Schimmer
VORYS SATER SEYMOUR & PEASE LLP
52 East Gay Street
Post Office Box 1008
Columbus, Ohio 43216-1008

Sandra G. Robinson
Jarrod J. White
CABANISS, JOHNSTON, GARDNER,
 DUMAS & O'NEAL
Post Office Box 2906
Mobile, Alabama 36652

*Attorneys for Defendants Boehringer Ingelheim Corporation, Boehringer Ingelheim Pharmaceuticals, Inc. and Roxane Laboratories, Inc.*

Lyndon M, Tretter
Steven M. Edwards
Thomas J. Sweeney, III
HOGAN & HARTSON LLP
875 Third Avenue, Suite 2600
New York, New York 10022

Harlan I. Prater, IV
Stephen J. Rowe
LIGHTFOOT, FRANKLIN & WHITE LLC
The Clark Building
400 20th Street North
Birmingham, Alabama 35203-3200

*Attorneys for Defendant Bristol-Myers Squibb Company*

Brien T. O'Connor
E. Abim Thomas
Eric Paul Christofferson
ROPES & GRAY LLP
One International Place
Boston, Massachusetts 02110

Julia B. Cooper
BRADLEY ARANT ROSE & WHITE LLP
One Federal Place
1819 Fifth Avenue North, Suite 1100
Birmingham, Alabama 35203

*Attorneys for Defendants Elsai, Inc. and Genzyme Corporation*

William A. Davis
MINTZ LEVIN COHN FERRIS, GLOVSKY & POPEO PC
701 Pennsylvania Avenue, N.W., Suite 900
Washington, DC 20004

Tabor R Novak, Jr.
BALL, BALL, MATTHEWS & NOVAK, P.A.
Post Office Box 2148
Montgomery Alabama 36102-2148

*Attorneys for Defendant Eli Lilly and Company*

Jonathan L. Stern
Nancy L. Perkins
David D. Fauver
Rebecca Lynne Dubin
Jessica Lynne Medina
Joel Ernest Richardson
ARNOLD & PORTER
Thurman Arnold Building
555 Twelfth Street, NW
Washington, DC 20004-1206

Robert S. Litt
Justin S. Antonipillai
Stephen S. Diamond
Emily N. Glatfelter
ARNOLD & PORTER
Thurman Arnold Building
555 Twelfth Street, NW
Washington, DC 20004-1206

Robert D. Eckinger
Lawrence B. Clark
Gilbert C. Steindorff, IV
ADAMS AND REESE/LANGE SIMPSON LLP
2100 Third Avenue, North, Suite 1100
Birmingham, Alabama 35203-3367

*Attorneys for Defendants Endo Pharmaceuticals, Inc., ETHEX Corporation, Gilead Sciences, Inc. and K- V Pharmaceutical Company*

Peter J. Venaglia
Brian Rafferty
DORNBUSH SCHAEFFER, STRONGIN & WEINSTEIN LLP
747 Third Avenue
New York, New York 10017

William H. Hardie, Jr.
JOHNS TONE, ADAMS, BAILEY,
GORDON & HARRIS
Post Office Box 1988
Mobile, Alabama 36633-1988

*Attorneys for Defendants Forest Laboratories. Inc. and Forest Pharmaceuticals. Inc.*

Andrew L. Hurst
REED SMITH LLP
1301 K Street, N.W.
Suite 1100, East Tower
Washington, DC 20005

Michael T. Scott
REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, Pennsylvania 19103-7301

Richard L. Sharff Jr.
BRADLEY ARANT LLP
One Federal Place
1819 5th Avenue North
Birmingham, Alabama 35203-2104

*Attorneys for Defendants Fujisawa Healthcare, Inc. and Fujisawa USA, Inc.*

Joseph P. H. Babington
Patrick C. Finnegan
Jason R. Watkins
HELMSING LEACH HERLONG
  NEWMAN ROUSE, PC
Post Office Box 2767
Mobile, Alabama 36652-2767

Ronald O. Dove, Jr.
Geoffrey D. Hobart
Mark H. Lynch
Jason R.. Litow
COVINGTON & BURLING
1201 Pennsylvania Avenue W
Washington, DC 2004

Frederick G. Herold
Valerie M. Wagner
DECHERT LLP
1117 California Avenue
Palo Alto, California 94304

Thomas H. Lee, III
DECHERT, LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, Pennsylvania 19103

Mark D. Seltzer
Sarah Anne Franklin
Mona M. Patel
HOLLAND & KNIGHT, LLP
Commercial Litigation Branch, Civil Div.
10 Saint James Avenue
Boston, MA 02116

*Attorneys for Defendants Glaxo Wellcome, Inc., GlaxoSmithKline, PLC and SmithKline Beecham Corporation d/b/a GlaxoSmithKline*


Graciela M. Rodriguez
Kevin R. Sullivan
John D. Shakow
KING & SPALDING LLP
1730 Pennsylvania Avenue, NW
Washington, DC 20006-4706

Edward S. Sledge, W.
Archibald T. Reeves, IV
MCDOWELL, KNIGHT, ROEDDEL & SLEDGE, LLC
Post Office Box 350
Mobile, Alabama 36601

*Attorneys for Defendants Hoffman-LaRoche, Inc. and Roche Laboratories, Inc.*


David J. Burman
Kathleen M. O'Sullivan
Zoe Philippides
PERKINS COIE LLP
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099

W. Stancil Stames
Laura Howard Peck
STARNES & ATCHISON LLP
Post Office Box 5.8512

Birmingham, Alabama 35259-8512

*Attorneys for Defendant Immunex Corporation*


Bruce Wessel
Brian D. Ledahl
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276

George W. Walker, III
COPELAND FRANCO SCREWS & GILL
Post Office Box 347
Montgomery, Alabama 36101-0347

*Attorneys for Defendants IVAX Corporation and IVAX Pharmaceuticals, Inc.*


Ortho Biotech Products, LP
James H. McLeinore
Robert F. Northcutt
CAPELL & HOWARD PC
Post Office Box 2069
Montgomery, Alabama 36102-2069

Andrew D. Schau
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of Americas
New York, New York 11215

*Attorneys for Defendants Janssen Pharmaceutica Products, LP, Johnson & Johnson and McNeil-PPC, Inc.*


Gary R. Greenberg.
Louis J. Scerra, Jr.
GREENBERG TRAURIG LLP
One International Place
Boston, MA 02110

Sam B. Blair, Jr.
John B. Starnes
Lisa W. Borden
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, P.C.
1600 South Trust Tower, 420 20th Street

Birmingham, Alabama 35203

*Attorneys for Defendants King Pharmaceuticals, Inc. and Monarch Pharmaceuticals, Inc.*


Steven M. Umin
James V. Hayes
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005-5901

Lee H. Copeland
COPELAND, FRANCO , SCREWS & GILL, P.A.
Post Office Box 347
Montgomery, Alabama 36101-0347

*Attorneys for Defendant Medimmune, Inc.*


John M. Townsend
Robert P. Reznick
Robert B. Funkhouser
HUGHES HUBBARD & REED LLP
1775 I Street N.W.
Washington, DC 20006-2401

Robert C. (Mike) Brock
Robert A. Huffaker
F. Chadwick Morriss
RUSHTON, STAKELY, JOHNSON & GARRETT, PA.
184 Commerce Street
Montgomery, Alabama 36104

*Attorneys for Defendant Merck & Co., Inc.*


Joseph W. Letzer, Esq.
BURR & FORMAN LLP
3100 Wachovia Tower
420 North 20th Street
South Trust Tower
Suite 3100
Birmingham, AL 35203
(205) 458-5272

William A. Escobar

Neil Merkl
Christopher C. Palermo
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
(212) 808-7800

*Attorneys for Defendants Mylan Laboratories, Inc., Mylan Pharmaceuticals, Inc. and UDL Laboratories, Inc.*


Saul P. Morgenstern
Jane W. Parver
Mark D. Godler
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022-3598

William D. Coleman
James N. Walter, Jr.
CAPELL & HOWARD, P.C.
Post Office Box 2069
Montgomery, Alabama 36102-2069

*Attorneys for Defendant Novartis Pharmaceuticals Corporation*


Edward S. Sledge, III
Archibald T. Reeves, IV
MCDOWELL, KNIGHT, ROEDDER & SLEDGE, LLC
Post Office Box 350
Mobile, Alabama, 36601

*Attorneys for Defendant Organon Pharmaceuticals USA, Inc.*


Richard M. Cooper
Paul K. Dueffert
Thomas J. Roberts
WILLIAMS & CONNOLLY LLP
725 12th Street, NW.
Washington, DC 20005

George W. Walker, III
COPELAND; FRANCO, SCREWS & GILL, P.A.
Post Office Box 347

Montgomery, Alabama 36101-0347

*Attorneys for Defendant Par Pharmaceutical, Inc.*

Scott A. Stempel
MORGAN LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004

John C. Dodds
Kimberly K. Heuer
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103

Philip H. Butler
George R. Parker
BRADLEY ARANT ROSE & WHITE LLP
Alabama Center for Commerce Bldg.
401 Adams Avenue, Suite 780
Montgomery, Alabama 36104

*Attorneys for Defendants Pfizer, Inc., Pharmacia Corporation and Pharmacia & Upjohn
Company*

Lori A. Schechter
Tiffany Cheung
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482

Harlan L Prater, IV
Derrick A. Mills
Stephen I. Rowe
LIGHTFOOT, FRANKLIN & WHITE L.L.C.
The Clark Building
400 20th Street North
Birmingham, Alabama 35203-3200

*Attorneys for Defendant Purdue Pharma, L.P.*

Wayne A. Cross
J. Michael Gallagher

Brendan Woodard
WHITE & CASE
1155 Avenue of the Americas
New York, New York 10036-2787

C. Clay Torbert, III
Chad W. Bryan
CAPELL & HOWARD, P.C.
Post Office Box 2069
Montgomery, Alabama 36102-2069

*Attorneys for Defendant Sandoz, Inc.*


Graciela M. Rodriguez
Kevin R. Sullivan
John D. Shakow
KING & SPALDING LLP
1730 Pennsylvania Avenue, N.W.
Washington, DC 20006-4706

Richard H. Gill
COPELAND, FRANCO, SCREWS & GILL P.A.
Post Office Box 347
Montgomery, Alabama 36101-0347

*Attorneys for Defendant Sanofi-Synthelabo, Inc.*


Brian T. O'Conner
John T. Montgomery
ROPES & GRAY LLP
One International Place
Boston, MA 02110

Christopher May
I. Steven Baughman
ROPES & GRAY LLP
One Metro Center
700 12th Street, NW
Washington, DC 20005

John A. Henig, Jr.
COPELAND, FRANCO, SCREWS & GILL, P.A.
Post Office Box 347.
Montgomery, Alabama 36101-0347

*Attorneys for Defendants Schering-Plough Corporation and Warrick Pharmaceuticals Corporation*

Robert R. Stauffer
Anthony C. Porcelli
JENNER & BLOCK LLP
1 IBM Plaza, Suite 4200
Chicago, Illinois 60611

Joseph C. Espy, III
MELTON, ESPY & WILLIAMS
Post Office Drawer 5130
Montgomery, Alabama 36103

*Attorneys for Defendant Takeda Pharmaceuticals North America, Inc.*

Elizabeth I. Hack
T. Reed Stephens
SONNBNSCHEIN NATH & ROSENTHAL LLP
B1301 K Street, NW, Suite 1600 North Tower
Washington, DC 20005

W. Joseph McCorkle, Jr.
BALCH & BINGHAM LLP
Post Office Box 78
Montgomery, Alabama 36101-0078

F. Inge Johnstone
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, Alabama 35201

*Attorneys for Defendant Teva Pharmaceuticals USA, Inc.*

Douglas B. Farquhar
HYMAN PHELPS & MCNAMARA, P.C.
700 Thirteenth Street, N.W., Suite 1200
Washington, DC 20005

Steven F. Casey
Christopher F. Heinss
BALCH & BINGHAM LLP

Post Office Box 306
Birmingham, Alabama 35201-0306

*Attorneys for Defendants Watson Laboratories, Inc., Watson Pharmaceuticals, Inc. and Watson Pharma, Inc.*

S. Craig Holden
Kelly J. Davidson
OBER, KALER, GRIMES & SHRIVER
120 East Baltimore Street
Baltimore, Maryland 21202-1643

Maibeth J. Porter
Lee E. Bains, Jr.
MAYNARD, COOPER & GALE, P.C.
2400 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203-2618

Alvin Latham (Peck) Fox, Jr.
MAYNARD, COOPER & GALE, P.C.
201 Monroe Street, Suite 1650
Montgomery, Alabama 36104-3720

*Attorneys for Defendants Wyeth, Inc. and Wyeth Pharmaceuticals, Inc.*

Richard H. Gill
Charles N. Gill
COPELAND, FRANCO, SCREWS & GILL, PA.
Post Office Box 347
Montgomery, Alabama 36101-0347

William D. Nussbaum
Jonathon T. Rees
Gregory M. Petouvis
HOGAN & HARTSON, LLP
555 Thirteenth Street, NW
Washington, DC 20004

*Attorneys for Defendant ZLB Behring, LLC*

Exhibit A

Westlaw.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3019193 (D.Mass.)
(Cite as: --- F.Supp.2d ----)

Page 1

**H**
Briefs and Other Related Documents
In re Pharmaceutical Industry Average Wholesale
Price LitigationD.Mass.,2006.Only the Westlaw
citation is currently available.
United States District Court,D. Massachusetts.
In re PHARMACEUTICAL INDUSTRY
AVERAGE WHOLESALE PRICE LITIGATION.
This Document Relates To:
State of Arizona
v.
Abbott Labs, Inc., et al.
MDL No. 1456.
Civil Action No. 01-12257-PBS.
Civ. Action No. 1:06-CV-11069-PBS.

Oct. 24, 2006.

**Background:** State of Arizona brought action in its
own capacity and as parens patriae on behalf of
Medicare beneficiaries, third-party payors, and other
state residents in state court against various
pharmaceutical companies, alleging that they violated
state law by fraudulently misrepresenting prescription
drug prices. Defendants removed. State moved to
remand.

**Holding:** The District Court, Saris, J., held that
Arizona's state-law claims based on the meaning of
"average wholesale prices" (AWP) in the federal
Medicare statute raised a substantial federal issue.

Motion denied.

[1] Removal of Cases 334 ☜0

334 Removal of Cases
A party seeking to remove a case to federal court has
the burden of demonstrating the existence of federal
jurisdiction.

[2] Removal of Cases 334 ☜0

334 Removal of Cases
Because the removal statute should be strictly
construed, any doubts about the propriety of removal
should be construed against the party seeking
removal.

[3] Removal of Cases 334 ☜0

334 Removal of Cases
Arizona's state-law claims on behalf of Medicare Part
B beneficiaries based on the meaning of "average
wholesale prices" (AWP) in the federal Medicare
statute raised a substantial federal issue that belonged
in the federal court; the government had a strong
national interest in prohibiting fraud upon Medicare
beneficiaries because fraudulent acts threaten
Medicare's integrity, and, once the meaning of AWP
was determined, it could be applied to the many
pending similar pharmaceutical drug pricing cases in
the Medicare context, impacting the viability and
effectiveness of the federal Medicare program. Social
Security Act, § 1842(o), 42 U.S.C.A. § 1395u(o);
A.R.S. § § 36-2901, 44-1522(A).

**MEMORANDUM AND ORDER**
SARIS, U.S.D.J.

**I. INTRODUCTION**

*1 The State of Arizona brought this action in its own
capacity and as parens patriae on behalf of Medicare
beneficiaries, third-party payors, and other state
residents in state court against various
pharmaceutical companies, alleging that they violated
state law by fraudulently misrepresenting prescription
drug prices. Defendants removed the suit on the
ground that plaintiff bases its claims on a specific
interpretation of the term "average wholesale price"
in the federal Medicare statute, 42 U.S.C. §
1395u(o). Arguing that there is no substantial and
disputed federal issue, plaintiff seeks remand to state
court. Plaintiff's motion to remand is **DENIED**.

**II. BACKGROUND**

The State of Arizona, through its Attorney General,
brought suit against more than twenty pharmaceutical
manufacturers, alleging that they fraudulently and
grossly inflated the prices of drugs to consumers by
misstating the "Average Wholesale Prices"
("AWPs") of their drugs in industry publications.
(Compl.¶  ¶ 1-2.) Plaintiff claims that the inflated
drug prices were used for repayment by Arizona's
Medicaid program, Medicare Part B beneficiaries,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3019193 (D.Mass.)
(Cite as: --- F.Supp.2d ----)

third-party payors and Arizona residents purchasing drugs outside these programs. (Compl.¶ 2.) Arizona asserts the claims on behalf of itself, Medicare beneficiaries and other Arizona residents. Plaintiff asserts two state law causes of action: a claim for violation of the Arizona Consumer Fraud Act, Ariz.Rev.Stat. § 44-1522(A) (2006); and racketeering under Arizona's Racketeering Act, Ariz.Rev.Stat. § 13-2301, et seq. (2006). (Compl.¶ ¶ 569-85.)

This Court has entertained many similar AWP claims since 2001, and has fully explained the operation of the drug reimbursement procedures in prior opinions with which the Court assumes familiarity. See, e.g., In re Pharm. Indus. Average Wholesale Price Litig., 230 F.R.D. 61 (D.Mass.2005).

To recap, Medicare is a purely federal program that provides health insurance to individuals age 65 and older, as well as other qualifying individuals. See 42 U.S.C. § 1395c (2006). Until 2005, Medicare Part B covered certain classes of prescription drugs. See id. § § 1395j-1395w. Under Part B, the federal government paid 80 percent of the allowable cost of covered drugs and the beneficiary was responsible for the remaining 20 percent. See id. § 1395l. From 1998 until 2004, the Medicare statute set reimbursement of covered drugs at the lesser of the actual charge on the Medicare claim form or 95 percent of AWP. 42 U.S.C. § 1395u(o); 42 C.F.R. § 405.517(b) (2006). In 2004, reimbursement under the statute was reduced to 85 percent of AWP. 42 U.S.C. § 1395u(o); 42 C .F.R. § 414.707. As of January 1, 2005 the reimbursement rate no longer depends upon AWP. See 42 C.F.R. § 414.904.

Defendant pharmaceutical manufacturers set the AWP for each of their drugs. The manufacturers send their AWPs to industrial publications, such as First DataBank or Red Book, that compile and publish a list of the AWPs for most available drugs. Pursuant to the statute, Medicare reimbursed providers, such as pharmacies and doctors, for a drug based on its published AWP. When the price paid by a provider to the wholesaler or drug manufacturer was less than the reimbursement the provider received, the provider pocketed the difference, or "spread." By creating large spreads, the pharmaceutical companies marketed their drugs to providers, who have great discretion in determining which drugs to administer. Arizona Medicare Part B beneficiaries bore part of the burden of this spread by paying a 20 percent co-payment of a grossly inflated AWP.

*2 Arizona, as well as third-party payors (primarily private insurers and health and welfare plans) reimburse physicians and pharmacies for certain drugs based upon AWP. This includes contractors under Arizona's Medicaid program, the Arizona Health Care Cost Containment System ("AHCCCS"). See Ariz.Rev.Stat. § 36-2901, et seq. (2006). The AHCCCS Administration contracts with health plans and other contractors to provide eligible low-income Arizona residents with a range of health care services, including prescription drugs. Additionally, the AHCCCS Administration directly pays for health care services, including prescription drugs, for persons receiving benefits through the Indian Health Service, the Federal Emergency Services program, Qualified Medicare Beneficiary programs, and the State Emergency Services program. Plaintiff alleges that both the state Medicaid contractors and the AHCCCS Administration paid inflated reimbursement prices for prescription drugs based upon defendants' reported AWPs.

Plaintiff filed this complaint in Arizona state court on December 6, 2005. Arizona seeks to return to its residents the increased medication costs caused by defendants' wrongful conduct, to disgorge defendants "excessive profits" and to enjoin further violations of Arizona law. Defendants removed the case on January 5, 2006 to the District Court for the District of Arizona. On January 30, 2006, the Judicial Panel on Multidistrict Litigation ("JPML") issued a conditional transfer order, which was opposed by plaintiffs. On June 16, 2006, the JPML denied plaintiff's motion to vacate the conditional transfer order and ordered the case to be transferred to this Court. Plaintiff filed a timely motion to remand the case on August 11, 2006.

### III. DISCUSSION

[1][2] A party seeking to remove a case to federal court has the burden of demonstrating the existence of federal jurisdiction. See BIW Deceived v. Local 56, 132 F.3d 824, 831 (1st Cir.1997). Because the removal statute should be strictly construed, any doubts about the propriety of removal should be construed against the party seeking removal. See, e.g., Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir.1999). Jurisdiction must be evident from the basis of the well-pleaded complaint; a defense based in federal law is inadequate to confer jurisdiction on this Court. Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) ("Merrell Dow").

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3019193 (D.Mass.)
(Cite as: --- F.Supp.2d ----)

Page 3

The Supreme Court's recent decision in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005) explains the method for determining federal question jurisdiction when, as in this case, a federal question is embedded in state-law claims. Clarifying conflicting interpretations of *Merrell Dow,* the Supreme Court held that a claim need not be brought under federal law for there to be valid federal question jurisdiction. *Id.* at 317-18; *McCready v. White,* 417 F.3d 700, 702-03 (7th Cir.2005) (noting that *Grable* put the "kibosh" on the possibility that a federal cause of action was necessary to establish federal question jurisdiction). The Court laid out a three part inquiry for determining the existence of federal question jurisdiction: "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable,* 545 U.S. at 314. The Court guided lower courts to engage in a "contextual inquiry" that examines "the importance of having a federal forum for the issue, and the consistency of such a forum with Congress's intended division of labor between state and federal courts." *Id.* at 318-19.

*3 Plaintiff alleges that the pharmaceutical companies intentionally inflated the AWP for their drugs, knowing that those inflated figures would be used as the basis for prescription drug co-payments by Arizona Medicare beneficiaries in violation of the Arizona Consumer Fraud Act and the Arizona Racketeering Act, and that these state law claims do not raise any federal issues. Defendants argue that the plaintiff's theory of recovery necessarily raises the substantial federal issue of the meaning of AWP under the Medicare statute, which affects both liability and damages.

This is not the first time that this court has addressed the meaning of "AWP" under Medicare in the context of a motion to remand. In *State of Montana v. Abbott Labs.,* 266 F.Supp.2d 250 (D.Mass.2003), the state alleged that its Medicare beneficiaries overpaid based on defendant drug manufacturers' overstatements of AWP. Agreeing with the defendants that an essential element of the parens patriae claim was proof of a discrepancy between the AWPs reported by the pharmaceutical companies and the meaning of AWP under the Medicare statute, the Court held: "The adjudication of whether the term 'average wholesale price' in the Medicare statute embraces a 'spread' could have broad implications

for Medicare reimbursements and co-payments." *Id.* at 255. That case, however, was decided before the *Grable* decision. At that time, under First Circuit precedent, I interpreted *Merrell Dow* to preclude the exercise of federal jurisdiction where the federal statute did not provide a private remedy. *Id.* at 257; *see also Minnesota v. Pharmacia Corp.,* 278 F.Supp.2d 101, 103 (D.Mass.2003) ("[T]he First Circuit and a number of other courts read *Merrell Dow* as an instruction to remand state-law claims like Minnesota's, where the right to relief depends on the application of a federal statute that does not provide a private remedy."). Because the Medicare statute did not have a private cause of action, this court therefore remanded the case back to the state court.

[3] It is now clear under *Grable* that the lack of a private federal cause of action does not preclude jurisdiction. This court, recently reviewing the *Montana* decision, reaffirmed that the meaning of the term AWP under the federal Medicare statute is a "weighty federal question." *In re Pharm. Indus. Average Wholesale Price Litig.,* 2006 U.S. Dist. LEXIS 63655, at *24 (Sept. 6, 2006). However, in that case, I remanded the state-law action which sought relief solely under the state Medicaid statute. While that state statute used the term "Average Wholesale Price" there was no indication in the statute, legislative history or caselaw that it should be construed in sync with the federal statute.

Using *Grable* eyes in analyzing this parens patriae action, I (again) conclude that the meaning of AWP in the federal Medicare statute is a substantial federal issue that properly belongs in federal court. The government has a strong national interest in prohibiting fraud upon Medicare beneficiaries because fraudulent acts threaten Medicare's integrity. *Fischer v. United States,* 529 U.S. 667, 681, 120 S.Ct. 1780, 146 L.Ed.2d 707 (2000); *see Grable,* 545 U.S. at 315 (noting that the meaning of the federal tax provision is an "important issue of federal law" because the government has a "strong interest" in the prompt collection of taxes). The interpretation of AWP under the statute determines whether the Arizona Medicare beneficiaries, by definition the sick and elderly, overpaid on their drug co-payments. Furthermore, once the meaning of AWP is determined, it can be applied to the many pending similar pharmaceutical drug pricing cases in the Medicare context. *See Empire HealthChoice Assur., Inc. v. McVeigh,* --- U.S. ----, ----, 126 S.Ct. 2121, 2137, 165 L.Ed.2d 131 (2006) (noting that in *Grable* an important factor favoring jurisdiction was that the resolution of the embedded federal question would

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3019193 (D.Mass.)
(Cite as: --- F.Supp.2d ----)

control numerous similar tax cases). This directly impacts the viability and effectiveness of the federal Medicare program. Arizona's state-law claims on behalf of Medicare Part B beneficiaries based on the meaning of AWP in the federal statute therefore raise a substantial federal issue.

*4 Under *Grable*, the federal issue must also be "actually disputed" in the litigation. *Grable*, 545 U.S. at 314. The Medicare statute does not define the term AWP. *See* 42 U.S.C. § 1395u(o); *id.* § 1395x ("Definitions" section). For plaintiff to succeed on the asserted theory of liability, the AWPs reported by defendants must be different from the AWP required under the Medicare statute. From day one of the litigation, defendants have vigorously protested that Congress understood that AWP did not represent the actual cost that providers paid for drugs. The determination of the actual meaning of AWP under the Medicare statute has been hotly disputed in the multi-district litigation and is a crucial component of plaintiff's theory of liability.

The final question under *Grable* is whether granting federal jurisdiction will disturb "any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. Federal jurisdiction over a matter should not "materially affect, or threaten to affect, the normal currents of litigation." *Id.* at 319. Here, "raising Arizona" from state to federal jurisdiction is unlikely to upset any balance because of the substantial number of similar cases that are already pending in federal courts. The claims that Arizona brings on behalf of its Medicare Part B beneficiaries raise the same issues that are currently before this court in a multi-district litigation that involves over ninety similar pharmaceutical pricing cases. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 66-67 (D.Mass.2005). Medicare Part B beneficiaries make up the first class of plaintiffs in that litigation. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 233 F.R.D. 229, 230 (D.Mass.2006). Finally, as one district court aptly stated: "There is ... no congressionally approved balance of judicial responsibilities in this arena. During the approximately 13 years that the price controls have been in place, both state and federal courts have heard cases related to the statutes directly governing them." *County of Santa Clara v. Astra USA, Inc.*, 401 F.Supp.2d 1022, 1029 (N.D.Cal.2005).

It is true that other district courts reached contrary post-*Grable* decisions in similar cases involving a state's parens patriae claims on behalf of Medicare

Part B beneficiaries. *See Commonwealth of Pennsylvania v. Tap Pharm. Prods.*, 415 F.Supp.2d 516, 524-25 (E.D.Pa.2005) (remanding under *Grable* upon finding that (1) "the term 'average wholesale price' is not 'actually disputed' because the Commonwealth does not premise its parens patriae claim on the construction of these words as they appear in the applicable Medicare statute and regulations" and (2) there is no substantial federal question because "AWP is no longer the standard for reimbursement under Medicare" and "a court would not need to construe the term 'average wholesale price' beyond its plain meaning"); *Wisconsin v. Abbott Labs.*, 390 F.Supp.2d 815, 823 (W.D.Wis.2005) (remanding under *Grable* upon finding that granting jurisdiction would disturb the federal and state court balance because "[a]t best the federal and state interests are equivalent" and "shifting all of these [state filed pharmaceutical pricing cases] ... into federal court would work a significant disruption in the division of labor between federal and state courts"). As the judge assigned the massive multi-district litigation, involving class actions and numerous attorney general suits, I conclude that the issue of the meaning of AWP under the federal Medicare statute has national significance. A federal forum provides experience, solicitude and uniformity on this important federal issue. *See Grable*, 545 U.S. at 312.

*5 Citing *Grable* and *Merrell Dow*, plaintiff also argues that the absence of both a federal cause of action and of federal preemption of state remedies weighs heavily against a finding of federal jurisdiction. *See Grable*, 545 U.S. at 318; *Merrell Dow*, 478 U.S. at 811-14. While the presence of a federal cause of action is a welcome mat, its absence is not a deadbolt. Rather, the absence of a federal cause of action or of federal preemption of state remedies is "an *important clue* to Congress's conception of jurisdiction." *Grable*, 545 U.S. at 318 (emphasis added). In *Merrell Dow*, the Court was concerned that the exercise of federal jurisdiction in those circumstances "would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues." *Id.* As explained above, granting federal jurisdiction in this case does not open the door to a horde: the horde has already stormed the border. Arizona's state law claims on behalf of Medicare Part B beneficiaries raise a substantial, actually disputed federal issue that does not threaten the balance of judicial responsibilities.

The Court has supplemental jurisdiction over

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3019193 (D.Mass.)
(Cite as: — F.Supp.2d ——)

Arizona's claims on behalf of the third-party payors, private payors and state Medicaid contractors making drug payments outside of the Medicare Part B program. *See* 28 U.S.C. § 1367(a) (2006) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."); *see also* *City of Chi. v. Int'l College of Surgeons,* 522 U.S. 156, 165, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) ("[Section 1367(a) ] applies with equal force to cases removed to federal court as to cases initially filed there.").

### *ORDER*

The motion to remand (Docket No. 2974) is *DENIED.*

D.Mass.,2006.
In re Pharmaceutical Industry Average Wholesale Price Litigation
--- F.Supp.2d ----, 2006 WL 3019193 (D.Mass.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 2688940 (Trial Motion, Memorandum and Affidavit) United States' Opposition to Abbott Laboratories, Inc.'s Motion to Dismiss (Sep. 15, 2006) Original Image of this Document (PDF)
• 2006 WL 2688941 (Verdict, Agreement and Settlement) Stipulation for Dismissal of Action Against Hospira, Inc. (Sep. 15, 2006) Original Image of this Document (PDF)
• 2006 WL 2688942 (Trial Motion, Memorandum and Affidavit) United States' Opposition to Abbott Laboratories, Inc.'s Motion to Dismiss (Sep. 15, 2006) Original Image of this Document (PDF)
• 2006 WL 2546094 (Trial Filing) Status Report September 1, 2006 (Sep. 1, 2006) Original Image of this Document (PDF)
• 2006 WL 2546089 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to the Track 1 Defendants' Motion for Summary Judgment with Respect to Class 3 (Aug. 30, 2006) Original Image of this Document (PDF)
• 2006 WL 2546090 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to the Johnson & Johnson Defendants' Motion for Summary Judgment on Class 3 (Aug. 30, 2006) Original Image of this Document (PDF)
• 2006 WL 2546091 (Trial Motion, Memorandum

and Affidavit) Plaintiffs' Memorandum in Opposition to BMS Defendants' Motion for Summary Judgment as to Class 3 (Aug. 30, 2006) Original Image of this Document (PDF)
• 2006 WL 2546092 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Schering-Plough's Individual Motion for Summary Judgment as to Class 3 (Aug. 30, 2006) Original Image of this Document (PDF)
• 2006 WL 2546086 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Defendants' Opposition to Plaintiff State of Arizona's Motion for Remand (Aug. 25, 2006) Original Image of this Document (PDF)
• 2006 WL 2546085 (Trial Motion, Memorandum and Affidavit) Defendants' Reply to the State of Nevada's Opposition to Defendants' Third Motion to Compel Discovery (Aug. 24, 2006) Original Image of this Document (PDF)
• 2006 WL 2400084 (Trial Motion, Memorandum and Affidavit) Class Plaintiffs' Memorandum of Law in Support of Joint Motion for Preliminary Approval of Proposed Nationwide GSK Class Settlement, Certification of Settlement Class and Approval of Notice Plan (Aug. 10, 2006) Original Image of this Document (PDF)
• 2006 WL 2400085 (Proposed Order, Agreement and Settlement) Settlement Agreement and Release of the Glaxosmithkline Defendants (Aug. 10, 2006) Original Image of this Document (PDF)
• 2006 WL 2546088 (Trial Motion, Memorandum and Affidavit) Track Two Defendants' Memorandum in Opposition to Class Certification Redacted Version" (Jun. 15, 2006) Original Image of this Document (PDF)
• 2006 WL 2544681 () Expert Report of Zachary Dyckman in Support of Track 2 Defendants' Opposition to Class Certification (Jun. 14, 2006) Original Image of this Document (PDF)
• 2006 WL 1372573 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Memorandum in Support of Motion for Partial Summary Judgment Against all Track 1 Defendants (Apr. 28, 2006) Original Image of this Document (PDF)
• 2006 WL 1372574 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Schering-Plough Corporation's and Warrick Pharmaceuticals Corporation's Motion for Summary Judgment as to Class 2 Claims (Apr. 28, 2006) Original Image of this Document (PDF)
• 2006 WL 1372575 (Trial Motion, Memorandum and Affidavit) The BMS Defendants' Reply Memorandum of Law in Support of Their Motion for Summary Judgment (Apr. 28, 2006) Original Image of this Document (PDF)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3019193 (D.Mass.)
(Cite as: — F.Supp.2d —)

Page 6

• 2006 WL 1372576 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Further Support of Track 1 Defendants' Joint Motion for Summary Judgment (Apr. 28, 2006) Original Image of this Document (PDF)

• 2006 WL 1372569 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Defendant Chiron Corporation's Motion to Dismiss (Apr. 24, 2006) Original Image of this Document (PDF)

• 2006 WL 1372570 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Individual Memorandum of Purdue Pharma L.P., Purdue Frederick Company, and Purdue Pharma Company in Support of Motion to Dismiss (Apr. 24, 2006) Original Image of this Document (PDF)

• 2006 WL 1372571 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Eli Lilly and Company's Separate Memorandum in Support of Motion to Dismiss (Apr. 24, 2006) Original Image of this Document (PDF)

• 2006 WL 1372572 (Trial Motion, Memorandum and Affidavit) Plaintiff Ven-a-Care of the Florida Keys, Inc.'s Opposition to Defendant Bristol-Myers Squibb Company's Motion to Compel (Apr. 24, 2006) Original Image of this Document (PDF)

• 2006 WL 1372568 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Consolidated Opposition Todefendants' Motion to Dismiss (1) the Consolidated Complaint of the City of New York and New York Counties and (2) Nassau County's Second Amended Complaint (Apr. 20, 2006) Original Image of this Document (PDF)

• 2006 WL 1372565 (Trial Motion, Memorandum and Affidavit) Opposition to Bayer Corporation's First Motion to Compel Plaintiff the State of Montana to Produce a Rule 30(B)(6) Witness (Apr. 18, 2006) Original Image of this Document with Appendix (PDF)

• 2006 WL 1372566 (Trial Motion, Memorandum and Affidavit) Oxford Health Plans, Llc's Memorandum of Law in Opposition to Defendants' Motion to Compel (Apr. 18, 2006) Original Image of this Document (PDF)

• 2006 WL 1372567 (Trial Motion, Memorandum and Affidavit) Opposition to Bayer Corporation's First Motion to Compel Plaintiff the State of Montana to Produce a Rule 30(b)(6) Witness (Apr. 18, 2006) Original Image of this Document with Appendix (PDF)

• 2006 WL 1372563 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Defendant Wyeth's Supplemental Memorandum in Support of Motion to Dismiss (Apr. 17, 2006) Original Image of this Document (PDF)

• 2006 WL 1372564 (Trial Motion, Memorandum

and Affidavit) New York Counties Consolidated Opposition to Defendants' Motion to Dismiss the Mnycc (Apr. 17, 2006) Original Image of this Document (PDF)

• 2006 WL 1372579 (Trial Motion, Memorandum and Affidavit) Plaintiffs Opposition to Individual Memorandum of Bayer Corporation in Support of Motion to Dismiss (Apr. 17, 2006) Original Image of this Document (PDF)

• 2006 WL 1372580 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Biogen Idec Inc.'s Separate Memorandum of Law in Support of Motion to Dismiss (Apr. 17, 2006) Original Image of this Document (PDF)

• 2006 WL 1372581 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Separate Memorandum of Defendant Boehringer Ingelheim Corporation in Support of Motion to Dismiss (Apr. 17, 2006) Original Image of this Document (PDF)

• 2006 WL 1372582 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Individual Memorandum of Law in Defendant EMD, Inc. In Support of Motion to Dismiss (Apr. 17, 2006) Original Image of this Document (PDF)

• 2006 WL 1372583 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Defendant Endo Pharmaceutical Inc's Individual Memorandum of Law in Support of Motion to Dismiss (Apr. 17, 2006) Original Image of this Document (PDF)

• 2006 WL 1372584 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Defendants Forest Laboratories Inc. and Forest Pharmaceuticals, Inc.'s Memorandum of Law in Support of Motion to Dismiss (Apr. 17, 2006) Original Image of this Document (PDF)

• 2006 WL 1372585 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Defendant Medimmune, Inc.'s Memorandum of Law in Support of Motion to Dismiss (Apr. 17, 2006) Original Image of this Document (PDF)

• 2006 WL 1372586 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Separate Memorandum of Merck & Co. In Support of Motion to Dismiss (Apr. 17, 2006) Original Image of this Document (PDF)

• 2006 WL 1372587 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to the Mylan Defendants' Individual Memorandum of Law in Support of Motion to Dismiss (Apr. 17, 2006) Original Image of this Document (PDF)

• 2006 WL 1372588 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Defendant Novartis Pharmaceuticals Corporation's Memorandum of Law in Support of Moton to Dismiss (Apr. 17, 2006) Original Image of this

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3019193 (D.Mass.)
(Cite as: --- F.Supp.2d ----)

Document (PDF)
• 2006 WL 1372589 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Individual Memorandum of Defendants Par Pharmaceutical Companies, Inc. and Par Pharmaceutical, Inc. In Support of Motion to Dismiss (Apr. 17, 2006) Original Image of this Document (PDF)
• 2006 WL 1372590 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Separate Memorandum of the ""Pfizer Defendants" in Support of Motion to Dismiss (Apr. 17, 2006) Original Image of this Document (PDF)
• 2006 WL 1372591 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to the Roche Defendants' Supplemental Memorandum of Law in Support of Motion to Dismiss (Apr. 17, 2006) Original Image of this Document (PDF)
• 2006 WL 1372592 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Sanofi-Synthelabo's Individual Memorandum of Law in Support of Motion to Dismiss (Apr. 17, 2006) Original Image of this Document (PDF)
• 2006 WL 1372593 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Defendant Tap Pharmaceutical Products Inc.'s Supplemental Memorandum in Support of Defendants's Joint Motion to Dismiss (Apr. 17, 2006) Original Image of this Document (PDF)
• 2006 WL 1372594 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Defendant Sandoz Inc's Supplemental Memorandum of Law Regarding Multiple Source Generic Drug Products in Support of Defendants' Motion to Dismiss (Apr. 17, 2006) Original Image of this Document (PDF)
• 2006 WL 1372718 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Sur-Reply to Defendants' Motion to Dismiss the First Amended Complaint (Apr. 17, 2006) Original Image of this Document (PDF)
• 2006 WL 1372719 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Astrazeneca Defendants' Individual Memorandum of Law in Support of Motion to Sismiss (Apr. 17, 2006) Original Image of this Document (PDF)
• 2006 WL 1372720 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Defendant Amgen Inc's Individual Memorandum in Support of Motion to Dismiss (Apr. 17, 2006) Original Image of this Document (PDF)
• 2006 WL 983924 (Trial Motion, Memorandum and Affidavit) Opposition of Plaintiff Blue Cross and Blue Shield of Massachusetts, Inc. to Defendants' Motion to Compel (Apr. 4, 2006) Original Image of this Document (PDF)
• 2006 WL 983922 (Trial Motion, Memorandum and

Affidavit) Defendants' Opposition to Plaintiffs' Objections Pursuant to Rule 201(e) of the Federal Rules of Evidence to Judicial Notice of Facts and Conclusions Set Forth in Defendants' Motion to Dismiss (Apr. 3, 2006) Original Image of this Document (PDF)
• 2006 WL 983923 (Trial Motion, Memorandum and Affidavit) Defendants' Reply to Plaintiffs' Memorandum in Opposition to Defendants' Joint Motion to Dismiss the First Amended Complaint-in-Intervention (Apr. 3, 2006) Original Image of this Document (PDF)
• 2006 WL 983921 (Trial Motion, Memorandum and Affidavit) Class Plaintiffs' Opposition to Track 2 Defendants' Motion to Strike Portions of the Fourth Amended Master Complaint and Notice of Errata (Mar. 28, 2006) Original Image of this Document (PDF)
• 2006 WL 3025490 () Merits Report and Declaration of Gregory K. Bell, Ph.D., on Behalf of Track 1 Defendants (Mar. 22, 2006) Original Image of this Document (PDF)
• 2006 WL 900609 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Aventis' Motion to Compel and in Support of United States' Cross-Motion to Quash Subpoena of Nhic Employee (Mar. 17, 2006) Original Image of this Document (PDF)
• 2006 WL 900610 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendants' Motion to Compel Third Party Oxford Health Plans to Produce Documents and Witnesses for Deposition Pursuant to Subpoena and for Recovery of Attorney Fees and Costs (Mar. 17, 2006) Original Image of this Document (PDF)
• 2006 WL 900611 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Plaintiffs' Second Motion to Compel Production By Amgen Inc. (Mar. 17, 2006) Original Image of this Document (PDF)
• 2006 WL 900612 (Trial Motion, Memorandum and Affidavit) Non-Party National Heritage Insurance Company's Memorandum in Opposition to Defendants' Motion to Compel Production of Documents and Witnesses Pursuant to Subpoenas, and in Support of its Cross-Motion to Quash Subpoenas (Mar. 17, 2006) Original Image of this Document (PDF)
• 2006 WL 900605 (Trial Motion, Memorandum and Affidavit) Class Plaintiffs' Motion for Partial Summary Judgment on Defendants' Affirmative Defenses (Mar. 15, 2006) Original Image of this Document (PDF)
• 2006 WL 900606 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Schering-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3019193 (D.Mass.)
(Cite as: --- F.Supp.2d ----)

Plough Corporation's and Warrick Pharmaceuticals Corporation's Motion for Summary Judgment as to Class 2 Claims (Mar. 15, 2006) Original Image of this Document (PDF)
• 2006 WL 900607 (Trial Motion, Memorandum and Affidavit) Class Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment on Defendants' Affirmative Defenses (Mar. 15, 2006) Original Image of this Document (PDF)
• 2006 WL 900608 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Support of Motion for Partial Summary Judgment Against All Track 1 Defendants ÝRedacted Version" (Mar. 15, 2006) Original Image of this Document (PDF)
• 2006 WL 900603 (Trial Motion, Memorandum and Affidavit) Opposition of Plaintiff Blue Cross and Blue Shield of Massachusetts, Inc. to Track Two Defendants' Motion to Compel (Mar. 14, 2006) Original Image of this Document (PDF)
• 2006 WL 900604 (Trial Motion, Memorandum and Affidavit) Track Two Defendants' Motion to Strike Portions of the Fourth Amended Master Consolidated Class Action Complaint and Notice of Errata (Mar. 13, 2006) Original Image of this Document (PDF)
• 2006 WL 900602 (Trial Motion, Memorandum and Affidavit) Non-Party National Heritage Insurance Company's Opposition to Defendants' Emergency Motion to Expedite the Briefing and Hearing on Their Motion to Compel Production of Documents and Witnesses Pursuant to Subpoena (Mar. 8, 2006) Original Image of this Document (PDF)
• 2006 WL 900601 (Trial Motion, Memorandum and Affidavit)          Sanofi-Synthelabo's          Individual Memorandum of Law in Support of Motion to Dismiss (1) the Consolidated Complaint of New York City and Plaintiff New York Counties Other Than Nassau and (2) the Second Amended Complaint of Nassau County (Mar. 6, 2006) Original Image of this Document (PDF)
• 2006 WL 690405 (Trial Motion, Memorandum and Affidavit) Separate Memorandum of the ""Pfizer Defendants" in Support of Their Motion to Dismiss (1) the Consolidated Complaint of New York City and Plaintiff New York Counties Other Than Nassau and (2) the Second Amended Complaint of Nassau County (Mar. 3, 2006) Original Image of this Document (PDF)
• 2006 WL 690406 (Trial Motion, Memorandum and Affidavit) Defendant Tap Pharmaceutical Products Inc.'s Supplemental Memorandum in Support of Defendants' Joint Motion to Dismiss (Mar. 3, 2006) Original Image of this Document (PDF)
• 2006 WL 690407 (Trial Motion, Memorandum and Affidavit) Defendants Forest Laboratories, Inc. and Forest Pharmaceuticals, Inc.'s Memorandum of Law

of in Support of Motion to Dismiss (1) the Consolidated Complaint of New York City and New York Counties Other Than Nassau and (2) the Second Amended Complaint of Nassau County (Mar. 3, 2006) Original Image of this Document (PDF)
• 2006 WL 690408 (Trial Motion, Memorandum and Affidavit)     Astrazeneca     Defendants'     Individual Memorandum of Law In Support of Their Motion to Dismiss the Consolidated Complaint of New York City and New York Counties other than Nassau and the Second Amended Complaint of Nassau County (Mar. 3, 2006) Original Image of this Document (PDF)
• 2006 WL 690409 (Trial Motion, Memorandum and Affidavit) Defendant Endo Pharmaceuticals Inc.'s Individual Memorandum of Law in Support of Its Motion to Dismiss the Consolidated Complaint of New York City and Plaintiff New York Counties Other than Nassau (Mar. 3, 2006) Original Image of this Document (PDF)
• 2006 WL 690410 (Trial Motion, Memorandum and Affidavit) Separate Memorandum of Defendant Boehringer Ingelheim Corporation in Support of Its Motion to Dismiss (Mar. 3, 2006) Original Image of this Document (PDF)
• 2006 WL 690411 (Trial Motion, Memorandum and Affidavit)      Defendant      Medimmune,      Inc.'s Memorandum of Law in Support of Motion to Dismiss (1) the Consolidated Complaint of New York City and Plaintiff New York Counties Other Than Nassau and (2) the Second Amended Complaint of Nassau County%n1%n (Mar. 3, 2006) Original Image of this Document (PDF)
• 2006 WL 690412 (Trial Motion, Memorandum and Affidavit) Defendant Sandoz Inc's Supplemental Memorandum of Law Regarding Multiple Source Generic Drug Products in Support of Defendants' Motion to Dismiss the Corrected Consolidated Complaint and the Second Amended Complaint of Nassau County (Mar. 3, 2006) Original Image of this Document (PDF)
• 2006 WL 690413 (Trial Motion, Memorandum and Affidavit) The Mylan Defendants' Individual Memorandum of Law in Support of Their Motion to Dismiss (Mar. 3, 2006) Original Image of this Document (PDF)
• 2006 WL 690414 (Trial Motion, Memorandum and Affidavit) Individual Memorandum of Purdue Pharma L.P., Purdue Frederick Company, and Purdue Pharma Company in Support of Their Motion to Dismiss (1) the Consolidated Complaint of New York City and Plaintiff New York Counties Other Than Nassau and (2) the Secon d Amended Complaint of Nassau County (Mar. 3, 2006) Original Image of this Document (PDF)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3019193 (D.Mass.)
(Cite as: --- F.Supp.2d ----)

• 2006 WL 690415 (Trial Motion, Memorandum and Affidavit) Defendants'%n1%n Joint Memorandum of Law in Support of Motion to Dismiss (1) the Consolidated Complaint of New York City and Plaintiff New York Counties Other Than Nassau and (2) the Second Amended Complaint of Nassau County (Mar. 3, 2006) Original Image of this Document (PDF)

• 2006 WL 690416 (Trial Motion, Memorandum and Affidavit) Separate Memorandum of Merck & Co., Inc. in Support of Its Motion to Dismiss (Mar. 3, 2006) Original Image of this Document (PDF)

• 2006 WL 690417 (Trial Motion, Memorandum and Affidavit) The Roche Defendants' Supplemental Memorandum of Law in Support of Motions to Dismiss (1) the Consolidated Complaint of New York City and Plaintiff New York Counties Other Than Nassau and (2) the Second Amended Complaint of Nassau County (Mar. 3, 2006) Original Image of this Document (PDF)

• 2006 WL 690418 (Trial Motion, Memorandum and Affidavit) Biogen Idec Inc.'s Separate Memorandum of Law in Support of Its Motion to Dismiss (1) the Consolidated Complaint of New York City and Plaintiff New York Counties Other Than Nassau and (2) the Second Amended Complaint of Nassau County (Mar. 3, 2006) Original Image of this Document (PDF)

• 2006 WL 690401 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to Defendants' Joint Motion to Dismiss the First Amended Complaint in Intervention (Mar. 2, 2006) Original Image of this Document (PDF)

• 2006 WL 690402 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to Defendant B. Braun of America, Inc.'s Separate Motion to Dismiss the First Amended Complaint (Mar. 2, 2006) Original Image of this Document (PDF)

• 2006 WL 690403 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to Defendant Abbott Laboratories, Inc.'s Separate Motion to Dismiss the First Amended Complaint (Mar. 2, 2006) Original Image of this Document (PDF)

• 2006 WL 690420 (Trial Pleading) Fourth Amended Master Consolidated Class Action Complaint Amended to Comply With Court's Class Certification Order Redacted Version (Mar. 1, 2006) Original Image of this Document (PDF)

• 2006 WL 900615 (Trial Pleading) Fourth Amended Master Consolidated Class Action Complaint Amended to Comply With Court's Class Certification Order Unredacted Version (Mar. 1, 2006) Original Image of this Document (PDF)

• 2006 WL 690400 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Track Two Defendants' Motion to Compel Plaintiff Blue Cross Blue Shield of Massachusetts, Inc. and Third-Party National Heritage Insurance Company in Their Capacities as the Medicare Part B Carriers for Massachusetts t o Produce Documents and Witnesses for Deposition Pursuant to Subpoena (Feb. 28, 2006) Original Image of this Document (PDF)

• 2006 WL 690399 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Plaintiffs' Second Motion to Compel Production by Amgen, Inc., with Request for Expedited Briefing and Disposition (Feb. 27, 2006) Original Image of this Document (PDF)

• 2006 WL 372092 (Trial Motion, Memorandum and Affidavit) Defendants' Second Motion to Compel Discovery from Plaintiffs the State of Nevada and the State of Montana (Jan. 31, 2006) Original Image of this Document (PDF)

• 2006 WL 372090 (Trial Motion, Memorandum and Affidavit) Non-Party Fallon Community Health Plan, Inc.'s Memorandum of Law in Support of its Motion to Quash the Subpoena of Defendant Dey, Inc. (Jan. 27, 2006) Original Image of this Document (PDF)

• 2006 WL 372089 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply to Track 1 Defendants' Response to Plaintiffs' Proposed Consolidated Order Re: Motion for Class Certification (Jan. 26, 2006) Original Image of this Document (PDF)

• 2006 WL 372087 (Trial Motion, Memorandum and Affidavit) Defendant Dey, Inc.'s Memorandum of Law in Opposition to Non-Party Fallon Community Health Plan, Inc.'s Motion to Stay Discovery (Jan. 23, 2006) Original Image of this Document (PDF)

• 2006 WL 372085 (Trial Motion, Memorandum and Affidavit) Abbott Laboratories Inc.'s Individual Memorandum in Support of Motion to Dismiss California's First Amended Complaint (Jan. 17, 2006) Original Image of this Document (PDF)

• 2006 WL 372086 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Their Motion to Dismiss the First Amended Complaint-In-Intervention (Jan. 17, 2006) Original Image of this Document (PDF)

• 2006 WL 353283 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Opposition to Plaintiffs' Motion to Participate in January 27th Hearing (Jan. 12, 2006) Original Image of this Document (PDF)

• 2006 WL 372084 (Trial Motion, Memorandum and Affidavit) Brief of Amici Curiae in Opposition to Motion by State of Florida and Ven-A-Care to Participate in January 27th Hearing Regarding Remand (Jan. 12, 2006) Original Image of this

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----, 2006 WL 3019193 (D.Mass.)
**(Cite as: --- F.Supp.2d ----)**

Document (PDF)

• 2006 WL 372083 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to the Joint Memorandum of the Attorneys General of Illinois, Kentucky, Wisconsin and Idaho Regarding Plaintiffs' Motion for Class Certification (Jan. 9, 2006) Original Image of this Document (PDF)

• 2006 WL 372082 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Brief in Support of Their Emergency Motion for an Order Holding Plaintiffs in Contempt, for Preservation of Potentially Relevant Documents, and for an Accounting of Spoliated Documents (Jan. 6, 2006) Original Image of this Document (PDF)

• 2006 WL 372091 (Trial Motion, Memorandum and Affidavit) Non-Party Fallon Community Health Plan, Inc.'s Objections to the Subpoena Issued by Dey, Inc. (Jan. 5, 2006) Original Image of this Document (PDF)

• 2005 WL 3534250 (Trial Pleading) Schering-Plough Corporation's Answer to Plaintiffs' Third Amended Master Consolidated Class Action Complaint (Nov. 3, 2005) Original Image of this Document (PDF)

• 2005 WL 3534251 (Trial Pleading) Warrick Pharmaceuticals Corporation's Answer to Plaintiffs' Third Amended Master Consolidated Class Action Complaint (Nov. 3, 2005) Original Image of this Document (PDF)

• 2005 WL 2122060 (Trial Pleading) First Amended Complaint in Intervention for Money Damages and Civil Penalties for Violations of the California False Claims Act (Aug. 24, 2005)

• 2005 WL 4705055 (Trial Deposition and Discovery) Deposition Upon Oral Examination of Marsha Peterson (Apr. 13, 2005) Original Image of this Document (PDF)

• 2005 WL 3979850 () Report of Independent Expert Professor ERNST R. BERNDT (Feb. 9, 2005) Original Image of this Document (PDF)

• 2003 WL 24251803 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Plaintiffs' Motion for a Protective Order Regarding Subpoenas to Putative Class Members (Dec. 3, 2003) Original Image of this Document (PDF)

• 2003 WL 24251801 (Trial Motion, Memorandum and Affidavit) Consolidated Reply Memorandum in Support of Defendants' Motion to Dismiss the State of Montana's Second Amended Complaint and the State of Nevada's Amended Complaint (Nov. 7, 2003) Original Image of this Document (PDF)

• 2003 WL 24251802 (Trial Motion, Memorandum and Affidavit) Defendants' Supplemental Brief in Support of Opposition to Motion for Remand (Nov. 7, 2003) Original Image of this Document (PDF)

• 2003 WL 24251800 (Trial Motion, Memorandum and Affidavit) Suffolk County's Opposition to the Defendant-Specific Memoranda in Support of Motion to Dismiss (Oct. 30, 2003) Original Image of this Document (PDF)

• 2003 WL 24251875 (Trial Motion, Memorandum and Affidavit) Suffolk's Memorandum of Law in Opposition to Defendants' Consolidated Motion to Dismiss (Oct. 30, 2003) Original Image of this Document (PDF)

• 2003 WL 24251799 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Surreply Brief in Opposition to the Together Rx Defendants' Motion to Dismiss Counts V. VI, VII, VIII and X of the Amended Master Consolidated Class Action Complaint (Oct. 17, 2003) Original Image of this Document (PDF)

• 2003 WL 24251805 (Trial Motion, Memorandum and Affidavit) State of Montana's and State of Nevada's Memorandum in Opposition to Defendant-Specific Memoranda on Motions to Dismiss (Oct. 10, 2003) Original Image of this Document (PDF)

• 2003 WL 24251797 (Trial Motion, Memorandum and Affidavit) The Together Rx Defendants' Reply Brief in Support of Their Motion to Dismiss Counts V, VI, VII, VIII, and X of the Amended Complaint (Sep. 30, 2003) Original Image of this Document (PDF)

• 2003 WL 24251798 (Trial Motion, Memorandum and Affidavit) Plaintiff Robert J. Swanston's Supplemental Memorandum in Support of Motion for Remand (Sep. 30, 2003) Original Image of this Document (PDF)

• 2003 WL 24251795 (Trial Motion, Memorandum and Affidavit) Plaintiffs Rice and Thompsons' Memorandum of Law in Support of Joint Opposition to Motion to Compel Jurisdictional Discovery (Sep. 26, 2003) Original Image of this Document (PDF)

• 2003 WL 24251796 (Trial Motion, Memorandum and Affidavit) Lead Counsel's Reply to Defendant Tap Pharmaceutical Products Inc.'s Motion for Protective Order (Sep. 26, 2003) Original Image of this Document (PDF)

• 2003 WL 24251794 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Opposition to Montana and Nevada's Joint Motion to Compel Discovery and in Support of Case Management Order Coordinating Discovery. (Sep. 15, 2003) Original Image of this Document (PDF)

• 2003 WL 24251793 (Trial Motion, Memorandum and Affidavit) The State of California's and Relator's Supplemental Memorandum of Law in Support of Motion to Remand (Aug. 28, 2003) Original Image of this Document (PDF)

• 2003 WL 24251792 (Trial Motion, Memorandum and Affidavit) The Together Rx Defendants' Brief in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3019193 (D.Mass.)
(Cite as: --- F.Supp.2d ----)

Support of Their Motion to Dismiss Counts V, VI, VII, VIII, and X of the Amended Complaint (Aug. 1, 2003) Original Image of this Document (PDF)

• 2003 WL 24251804 (Trial Motion, Memorandum and Affidavit) Individual Memorandum of Fujisawa Healthcare, Inc. and Fujisawa USA, Inc. in Support of The Motion to Dismiss The Amended Master Consolidated Class Action Complaint (Aug. 1, 2003) Original Image of this Document (PDF)

• 2003 WL 24251791 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Support of Motion to Compel Discovery and in Support of Plaintiffs' Proposed CMO No. 7 (Jul. 31, 2003) Original Image of this Document (PDF)

• 2003 WL 24251790 (Trial Motion, Memorandum and Affidavit) Plaintiff Congress of California Senior's Memorandum of Law in Support of Motion to Remand (Jul. 22, 2003) Original Image of this Document (PDF)

• 2003 WL 24251789 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Plaintiffs' Motion to Remand Actions to California Superior Court (Jul. 18, 2003) Original Image of this Document (PDF)

• 2003 WL 24251788 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Further Support of Motion for Reconsideration or, in the Alternative, for Certification of an Interlocutory Appeal (Jun. 30, 2003) Original Image of this Document (PDF)

• 2003 WL 24258450 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Further Support of Motion for Reconsideration or, in the Alternative, for Certification of an Interlocutory Appeal (Jun. 30, 2003) Original Image of this Document (PDF)

• 2003 WL 24251785 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Motion for Reconsideration, or in the Alternative, for Certification of an Interlocutory Appeal (Jun. 18, 2003) Original Image of this Document (PDF)

• 2003 WL 23675674 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion for Leave to Amend the Master Consolidated Class Action Complaint (Jun. 12, 2003)

• 2003 WL 24251784 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss by Defendant Fujisawa USA, Inc. (Apr. 18, 2003) Original Image of this Document (PDF)

• 2002 WL 32968805 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Motion to Strike Paragraphs 155-56 of the Master Complaint and Motion for a More Definite Statement from Certain Paragraphs of the

Master Complaint (Dec. 5, 2002) Original Image of this Document (PDF)

• 2002 WL 32968804 (Trial Motion, Memorandum and Affidavit) Abbott Laboratories' Memorandum of Law in Support of Its Motion to Dismiss (Nov. 4, 2002) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.